IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. |
| UNKNOWN CHICAGO POLICE OFFICERS individually and in their official capacity as police officers for the City of Chicago, and the CITY OF CHICAGO, ILLINOIS, a municipal corporation and a body politic, | ) ) ) ) ) ) ) | Hon. Judge Presiding. Hon. Magistrate Judge. |
| Defendants. | ) | JURY DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, by and through his attorneys, John P. DeRose & Associates and Franco N. Carone, and complains of Defendants Unknown Chicago Police Officers, and the CITY OF CHICAGO, ILLINOIS as follows:

## JURISDICTION

1. The jurisdiction of this Honorable Court is invoked pursuant to 42 U.S.C. § 1983 and supplemental jurisdiction is requested over state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

2. Jose Lopez, at all relevant times hereinafter mentioned, was a resident of the City of Summit, the County of Cook, and the State of Illinois.

3. The Unknown Chicago Police Officers, at all relevant times hereinafter mentioned, were Police Officers employed with the City of Chicago Police Department.

1

4. The City of Chicago, at all relevant times hereinafter mentioned, was and is a municipal corporation and body politic in the State of Illinois.

5. The Unknown Chicago Police Officers, at all relevant times herein mentioned, were acting under the color of law.

## FACTS

6. On July 22, 2011, at approximately 3:20 AM Plaintiff, who had a history and previous hospitalization because of heart problems, began to experience chest pains.

7. Plaintiff was walking and talking just fine, but he was complaining of chest pains.

8. When Plaintiff's friend suggested that she was going to call 911 for emergency medical assistance, Plaintiff said that he would be fine and did not want any medical assistance.

9. As Plaintiff went walking down the sidewalk in the 2500 block of South Albany Avenue in the City of Chicago, his friend placed an emergency call to 911 asking for an ambulance to tend to Plaintiff.

10. Plaintiff's friend told the emergency dispatch operator that Plaintiff was conscious, walking, and talking, but was complaining of chest pains.

11. The 911 Emergency Operator dispatched a Chicago Fire Department ambulance to tend to Plaintiff's needs.

12. A Chicago Fire Department truck arrived first on the scene in response to the emergency dispatch.

13. Unknown Chicago Police Officers, whose identities are unknown but will be ascertained during the course of discovery in this cause, also went in response to the emergency dispatch.

14. At least three or four squad cars of the Chicago Police Department arrived on the scene before or simultaneous with the arrival of the Chicago Fire Department ambulance.

15. Upon their arrival and before the arrival of the Chicago Fire Department ambulance, the Unknown Chicago Police Officers observed Plaintiff walking in the 2400 block of South Albany Avenue in the City of Chicago.

16. When the Unknown Chicago Police Officers ordered Plaintiff to stop and come to them, Plaintiff told them he did not want their help and said he was just fine.

17. As the Unknown Chicago Police Officers continued to order Plaintiff to come to them, Plaintiff was unarmed and non-combative, but told the police that he did not want their assistance.

18. Plaintiff disregarded their order, turned, continued to retreat in a direction away from them, and started walking toward his car.

19. Plaintiff did not have the keys to his car, and Plaintiff's friend advised Unknown Chicago Police Officers of that fact.

20. As is their want, custom, and practice to so do, when a citizen of the community refuses an order to stop and continues to walk away, Unknown Chicago Police Officers draw and use their Taser Guns to force compliance.

21. There were more than an ample number of Unknown Chicago Police Officers and Chicago Fire Department Personnel on the scene to exert sufficient and adequate physical force against Plaintiff as he continued to walk away to seize and restrain him without the use of the Taser Gun.

22. Plaintiff was surrounded by Unknown Chicago Police Officers and Chicago Fire Department Personnel, was unarmed, had all his avenues of retreat blocked and secured, and was verbally refusing any treatment by or attention from them.

23. Because Plaintiff had not heeded their order to stop and come to them, the Unknown Chicago Police Officers drew their Taser Guns, and without any right or reason to so do, immediately tased Plaintiff, sending an electric shock through Plaintiff's body strong enough to cause him to crash violently to the ground, crack open his head, and cry out with horrible sounds of pain.

24. The Unknown Chicago Police Officers immediately rushed Plaintiff, violently turned him facedown on the sidewalk, and, without any right to so do, handcuffed him behind his back.

25. The Unknown Chicago Police Officers lacked probable cause, did not have any right to effect an arrest of Plaintiff, and acted unreasonably because they responded overzealously and with little concern for the safety of him.

26. Plaintiff posed no threat to the safety of the Unknown Chicago Police Officers or others, was not actively resisting an arrest or attempting to evade arrest by flight, and would have posed no danger to the community or to the Unknown Chicago Police Officers if he had been just left unattended as he requested.

27. The Unknown Chicago Police Officers tased Plaintiff to enable behavioral control over him, not because he was an imminent threat to anyone.

28. Although each and every one of them had an ample and realistic opportunity to intervene, the Unknown Chicago Police Officers failed to stop the use of excessive force in tasing Plaintiff and the infringement of his constitutional rights under the Fourth Amendment.

29. Even though they made no effort to mitigate and temper the degree and severity of the force used when apprehending and restraining Plaintiff in order to render unwanted medical aid to him, immediately after he was handcuffed, the Unknown Chicago Police Officers denied that

they had done anything wrong to anyone who would listen, including the ambulance paramedics and the bystanders who gathered at the scene.

30.     Immediately thereafter, Plaintiff was secured to the ambulance stretcher with restraints.

31.     The City of Chicago has failed to adequately train and supervise its police officers to appreciate a commonsense need to mitigate force or make efforts to temper the severity of the force when apprehending a detainee or rendering aid to a citizen, particularly when the detainee or citizen is known or suspected of having diminished capacity and/or may be physically unable to comply with police commands.

32.     As is its custom and practice, the City of Chicago has failed to adequately train and supervise its police officers in the appropriate circumstances under which they are authorized and allowed to discharge their Taser Guns into detainees or citizens of the community.

33.     As is its custom and practice, the City of Chicago has failed to discipline its officers in any way for the use of excessive force on citizens of the community and, in particular, the inappropriate use of the Taser Gun against Plaintiff.

34.     After the ambulance paramedics had tended to Plaintiff as best they could on the streets of the City of Chicago, Plaintiff was transferred unconscious to Mount Sinai Hospital Emergency Room.

35.     Since the moment of the tasing of him by the Unknown Chicago Police Officers, Plaintiff suffered severe head injuries.

36.     Since moments after the tasing of Plaintiff by the Unknown Chicago Police Officers, Plaintiff was rendered unconscious and has been and remains in a coma.

37.     Upon arrival at Mount Sinai Hospital Emergency Room, Plaintiff was found to have suffered a traumatic brain injury with subdural hematoma as well as a left temporal lobe contusion.

38.     After being evaluated by neurosurgery at Mount Sinai Hospital, Plaintiff underwent a subdural hematoma evacuation and craniotomy and right temporal lobectomy.

39.     Following that surgical procedure, Plaintiff was admitted to the surgical intensive care unit of Mount Sinai Hospital where he remained unresponsive while on a ventilator.

40.     Postoperatively, the Plaintiff was given a tracheotomy and a tube placement was performed on him on August 8, 2011 at Mount Sinai Hospital.

41.     Plaintiff was transferred to and remains in the Kindred Hospital Chicago North Intensive Care Unit with continued ventilator support, remains unconscious, and now suffers from a seizure disorder.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1983
## FALSE SEIZURE

42.     The Plaintiff repeats and re-alleges paragraphs 1 through 41 of this Complaint as paragraphs 1 through 41 of Count I as though fully set forth herein.

43.     Defendant Unknown Officers of the Chicago Police Department violated the civil rights of Plaintiff when they illegally seized Plaintiff against his will and falsely restrained his freedom of movement by tasing him without probable cause.

44.     The Defendant Unknown Chicago Police Officers were, at all times, acting under color of state law, in their capacity as Chicago Police Officers.

45.     The actions of Defendant Unknown Chicago Police Officers were intentional.

46. Plaintiff suffered severe physical and mental injuries due to the false seizure of his person by tasing him.

47. The City of Chicago has a custom and practice consistent with the actions of its Police Officers.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

A. Compensatory damages in the amount of one million dollars ($1,000,000), including, but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

B. Costs of this suit;

C. Reasonable attorneys' fees;

D. Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

E. Other such relief as this Honorable Court deems proper and just.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983
## EXCESSIVE FORCE

48. The Plaintiff repeats and re-alleges paragraphs 1 through 47 of this Complaint as paragraphs 1 through 47 of Count II as though fully set forth herein.

49. The Defendants and each of them violated the civil rights of Plaintiff when he was subjected to the use of excessive, unreasonable, and unjustified force, and subjected to great duress and injury.

50. Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure when excessive force was used against Plaintiff.

51. Defendant Unknown Chicago Police Officers, without any legal justification, willfully and maliciously tased Plaintiff, causing him severe physical, mental, and emotional pain.

52. Thereafter, the Defendant Unknown Chicago Police Officers without any legal justification willfully, forcefully, and maliciously restrained Plaintiff.

53. The Defendants and each of them conspired together to use excessive force against Plaintiff and restrain him.

54. As a result of the Defendants' use of excessive force and restraint against him, Plaintiff suffered physical and emotional injuries as herein set forth.

55. The Defendants and each of them knew or should have known that their actions were violative of rights guaranteed to the Plaintiff.

56. The Defendants' actions were the direct and proximate cause of the injuries suffered by Plaintiff.

57. The Defendant Police Officers were at all times, acting under the color of state law, in their individual and official capacities as members of the Chicago Police Department.

58. The actions of the Defendants and of each of them, acting in conspiracy with each other, were willful and malicious and showed a wanton disregard for the constitutional rights of Plaintiff and his safety.

59. The Defendants used a degree of force that was objectively unreasonable in light of the facts and circumstances at the time.

60. By reason of the acts of the Defendants, Plaintiff has suffered great anxiety and pain of mind and body and will continue to suffer, all to his damage.

61.     The City of Chicago maintains a custom and practice of allowing its Police Department to foster and encourage activities consistent with the actions of Defendant Unknown Chicago Police Officers.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

A.      Compensatory damages in the amount of one million dollars ($1,000,000), including but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

B.      Costs of this suit;

C.      Reasonable attorney's fees;

D.      Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

E.      Other such relief as this Honorable Court deems proper and just.

## COUNT III
## ASSAULT and BATTERY

62.     The Plaintiff repeats and re-alleges paragraphs 1 through 61 of this Complaint as paragraphs 1 through 61 of Count III as though fully set forth herein.

63.     The Defendants and each of them conspired together to restrain and tase Plaintiff against his will on July 22, 2011.

64.     Plaintiff did present a medical emergency at the time that he was energized by the Taser Gun shot at him by the defendant Unknown Chicago Police Officers.

65.     That medical emergency under which Plaintiff labored at the time was only exacerbated by the actions of the defendants.

9

66. Defendants, by virtue of their aforementioned conduct, intentionally assaulted and battered Plaintiff, causing him severe physical and mental pain and suffering.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

A. Compensatory damages in the amount of one million dollars ($1,000,000), including but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

B. Costs of this suit;

C. Reasonable attorney's fees;

D. Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

E. Other such relief as this Honorable Court deems proper and just.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. The Plaintiff repeats and re-alleges paragraphs 1 through 66 of this Complaint as paragraphs 1 through 66 of Count IV as though fully set forth herein.

68. The actions of the Defendants were extreme and outrageous.

69. The Defendants actions were done in consort and conspiracy to intentionally and maliciously cause severe emotional distress to Plaintiff.

70. Defendants knew or reasonably should have known that their actions had a high probability of causing severe emotional distress to the Plaintiff.

71. Defendants actions were intentional and malicious and demonstrated a willful and wanton disregard for the rights of Plaintiff and had a high probability of causing severe emotional distress to him.

72. Plaintiff has suffered and continues to suffer from severe emotional distress.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

    A.    Compensatory damages in the amount of one million dollars ($1,000,000), including but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

    B.    Costs of this suit;

    C.    Reasonable attorney's fees;

    D.    Punitive damages against the individual Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

    E.    Other such relief as this Honorable Court deems proper and just.

Respectfully submitted,

S/ John P. DeRose
John P. DeRose
One of Plaintiff's Lawyers

| | |
|---|---|
| John P. DeRose & Associates | Franco N. Carone |
| 15 Spinning Wheel Road | Carone Law Offices |
| Suite 428 | 2227 North Mannheim Road |
| Hinsdale, Illinois 60521 | Melrose Park, IL 60164 |
| (630) 920-1111 Office | (708) 870-4878 |
| (630) 920-1170 Fax | fcarone@aol.com |
| jdrlaw@sbcglobal.net | |