# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, | ) ) ) | Case No. 12 CV 05751 |
| Plaintiff, | ) ) ) | HON. JOHN R. BLAKEY |
| v. | ) ) | |
| STEVAN VIDLJINVOVIC, Star No, 4051, JOHN D. GUETTLER, Star No. 5174, JOSE VALDOVINOS, Star No. 11820, ANTONIO J. VALENZUELA, Star No. 14123, MANUEL GONZALEZ, JR., Star No. 11733, JOSE F. VALDOVINOS, Star No. 11820, ARMANDO ALAMILLO, Star No. 106912, JOSEPH DE MONICA, Empl. No 27496, DANIEL LOPEZ, Star No. 3477, SUPERVISING SERGEANT MARK E. KEARNS, Star No. 1811, and WATCH COMMANDER ROBERT H. DUBIEL, Star No. 194, individually and in their official capacities as police officers for the City of Chicago, PARAMEDIC SANDRA CHEATAM, PARAMEDIC JULIO MENDOZA, individually, and in their official capacities as paramedics for the City of Chicago, and the CITY OF CHICAGO ILLINOIS a municipal corporation and a body politic, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Brown<br><br><br><br>**JURY DEMANDED** |
| Defendants. | ) | |

### DEFENDANT DUBIEL'S RULE 56.1(a)(3) STATEMENT OF UNDISPUTED FACTS

Defendant Watch Commander Robert H. Dubiel, by one of his attorneys, Kevin R. Gallardo, Assistant Corporation Counsel of the City of Chicago, submits the following statement of material undisputed facts pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

**JURIDICTION & VENUE**

1.Jurisdiction over Plaintiff's federal and state claims is proper under 28 U.S.C. §§ 1331, 1343, and 1367. (Def. Officers' Ans. to Pl.'s Fourth Am. Compl., Docket Entry 66, attached hereto as Ex. A, at ¶ 1).

2.Venue is proper under 28 U.S.C. § 1391(b). (*Id.*)

**PARTIES**

3.Plaintiff alleges that at all relevant times he was a resident of the City of Summit, Illinois. (Pl.'s Fourth Am. Compl., Docket Entry 56, attached hereto as Ex. B, at ¶ 2).

4.At all times mentioned herein, the named Defendant Officers and Paramedics were employed by the City of Chicago as police officers or paramedics and acted in that capacity. (Ex. A at ¶¶ 3-13; Def. Paramedics' Ans. to Pl.'s Fourth Am. Compl., Docket Entry 65, attached hereto as Ex. C, at ¶¶ 14-15.)

**UNCONTESTED FACTS**

5.At approximately 3:23 a.m. on July 22, 2011, Plaintiff's girlfriend, Guadalupe Guzman, called 911 to report that Plaintiff was having trouble breathing. (Dep. of Guadalupe Guzman, attached hereto as Ex. D, at 100:17-101:4, 102:23-103:3; Dep. of Frank J. Albarran, attached hereto as Ex. E, at 52:11-14).

6.The 911 call requested assistance at 2451 S. Albany Ave., Chicago, Illinois. (Ex. D at 103:6-7).

7.In response to the call, Chicago Fire Department personnel arrived on scene. (*Id.* at 109:22-110:3; Dep. of Julio Mendoza, attached hereto as Ex. F, at 43:10-44:7).

2

8. An ambulance carrying Defendant Paramedics Mendoza and Cheatham arrived on scene a few minutes later. (Ex. F at 39:8-41:12; Dep. of Sandra Cheatham, attached hereto as Ex. G, at 54:18-20).

9. The Fire Department personnel eventually made a request for police assistance over the radio. (Dep. of Daniel Kairis, attached hereto as Ex. H, at 95:10-96:9)

10. Defendant Officers Armando Alamillo and Jose Valdovinos responded to the call for assistance. (Dep. of Armando Alamillo, attached hereto as Ex. I, at 13:14-16; 36:19-22; 39:9-18; 47:12-21.)

11. Officer Alamillo later requested that an officer with a taser respond to the scene, based on his perception of Plaintiff's actions. (*Id.* at 88:20-89:8, 99:16-100:4).

12. Defendant Officers Vidljinovic, Guettler, Gonzalez, Valenzuela, Lopez, De Monica, and Sergeant Kearns later responded to the scene. (Ex. A at ¶ 30).

13. Officer Vidljinovic was carrying a taser and eventually tased Plaintiff.[1] (Dep. of Stevan Vidljinovic, attached hereto as Ex. J, at 51:17-52:3, 143:18-145:3).

14. Plaintiff was then placed in an ambulance and taken to Mt. Sinai Hospital. (Ex. F at 87:15-88:13; Ex. J at 305:10-17).

15. At the time that the officers interacted with Plaintiff, Defendant Watch Commander Robert H. Dubiel was working inside of the 10th District Chicago Police station located at 3315 W. Ogden Ave., Chicago, Illinois. (Aff. of Lt. Robert H. Dubiel, attached hereto as Ex. K, at ¶ 3; Dep. of Robert Dubiel, attached hereto as Ex. L, at 87:14-88:1).

16. Watch Commander Dubiel was not out on the street and was not at the scene of the incident with Plaintiff. (Ex. K at ¶¶ 3-5; Ex. L at 108:5-6).

---

[1] Plaintiff's actions leading up to the request for an officer with a taser and the tasing itself are in dispute. Nonetheless, those actions are immaterial for purposes of the instant motion for summary judgment.

3

17. Watch Commander Dubiel did not personally witness Plaintiff's interaction with police officers. (Ex. K at ¶ 5).

18. At approximately 3:45 a.m. on July 22, 2011, Watch Commander Dubiel was in the 10th District Chicago Police station when he overheard a call over the police radio regarding a Taser deployment. (*Id.* at ¶ 4; Ex. L at 70:15-18, 87:14-88:5).

19. Upon hearing the dispatch, Watch Commander Dubiel believed that the radio call was made after the Taser had already been deployed. (Ex. K at ¶ 4).

20. Given that he was inside of the station at the time, Watch Commander Dubiel did not personally witness Officer Vidljinovic tase Plaintiff. (*Id.* at ¶ 5).

21. No one requested over the radio that Watch Commander Dubiel respond to the scene, so he remained in the station. (*Id.* at ¶ 6; Ex. L at 88:20-89:5).

22. When a taser is deployed by a police officer, as Watch Commander, Dubiel must review and approve reports related to the incident. (Ex. L at 72:9-18).

23. As a Watch Commander in the district of occurrence, when a police officer deploys a taser, Watch Commander Dubiel was charged with interviewing the involved officer regarding the incident, downloading the Taser information from the device that the officer deployed, ensuring that the involved officer completed a Tactical Response Report, interviewing the person tased, if available, and ensuring compliance with the Chicago Police Department's use of force policy and electronically signing and approving the Tactical Response/Officer Battery Reports. (Ex. K at ¶ 7).

24. Watch Commander Dubiel met with Officer Vidljinovic (the tasing officer) and Sergeant Kearns (the supervising officer on scene) at the 10th District police station after they returned following the incident to discuss what occurred. (*Id.* at ¶ 9; Ex. L at 82:5-14).

25. Watch Commander Dubiel's purpose in conducting these interviews was to determine if the taser deployment was consistent with the Chicago Police Department's use of force policy. (Ex. K at ¶ 9).

26. Sergeant Kearns told Watch Commander Dubiel that there was a taser deployment by Officer Vidljinovic in an incident that began as an assist to the Chicago Fire Department. (*Id.* at ¶ 10; Dep. of Mark Kearns, attached hereto as Ex. M, at 64:10-65:4, 199:3-5; Ex. L at 84:3-19, 89:21-90:8).

27. Officer Vidljinovic also spoke with Watch Commander Dubiel about the incident. (Ex. K at ¶ 11; Def. Stevan Vidljinovic's Ans. to Pl.'s First Set of Interrogatories, attached hereto as Ex. N, No. 23).

28. Watch Commander Dubiel recalls that Officer Vidljinovic told him that he was called to the scene to assist the Chicago Fire Department in dealing with an uncooperative subject. (Ex. K at ¶ 11).

29. Watch Commander Dubiel further recalls that Officer Vidljinovic told him that upon his arrival to the scene, he encountered Plaintiff who did not respond to his presence or verbal commands. (*Id.*)

30. Watch Commander Dubiel recalls Officer Vidljinovic telling him that Plaintiff continued to walk away and pace about the area, was mumbling incoherently, and nothing he said made sense. (*Id.*)

31. Watch Commander Dubiel recalls Officer Vidljinovic further telling him that Plaintiff eventually clenched his fists and moved at the officers in an aggressive manner. (*Id.*)

32. Based on these actions, Officer Vidljinovic told Watch Commander Dubiel that he believed Plaintiff was about to batter him, so he yelled out "taser, taser, taser" and then tased Plaintiff. (*Id.*)

33. Officer Vidljinovic told Watch Commander Dubiel that Plaintiff was then taken into custody without further incident and was placed in an ambulance and taken to Mt. Sinai Hospital. (*Id.* at ¶¶ 11, 14; Ex. L at 108:12-19).

34. Watch Commander Dubiel was unaware of Plaintiff being seriously injured as a result of his interaction with the officers. (Ex. L at 81:22-82:4).

35. Officer Vidljinovic further told Watch Commander Dubiel that once Plaintiff went to the hospital, he was believed to be under the influence of drugs and alcohol. (Ex. K at ¶ 11; Ex. L at 122:17-123:3).

36. Given that he was hospitalized, Watch Commander Dubiel did not interview Plaintiff. (Ex. K at ¶ 8).

37. Neither Sergeant Kearns nor Officer Vidljinovic told Watch Commander Dubiel that they observed Plaintiff refuse any medical assistance or that they ignored any such refusal that he made. (*Id.* at ¶ 12).

38. Based on the information that he received from the officers, Watch Commander Dubiel believed that Plaintiff was under the influence of drugs or alcohol, not speaking coherently, and, therefore, not able to accept or refuse medical attention. (*Id.* at ¶ 12; Ex. L at 85:2-7, 116:13-117:6).

39. Neither Sergeant Kearns nor Officer Vidljinovic told Watch Commander Dubiel that Plaintiff was tased simply because he refused medical treatment and did not comply with orders to get into the ambulance. (*Id.* at ¶ 13).

40. The officers informed Watch Commander Dubiel that after Plaintiff was tased, he continued being uncooperative and was shouting and screaming. (*Id.* at ¶ 15; Ex. L at 109:10-21).

41. Watch Commander Dubiel also downloaded the data from the taser and printed a copy of the report to be included with paperwork related to the underlying incident. (Ex. K at ¶ 18).

42. On July 22, 2011, Watch Commander Dubiel was not aware of any prior tasing involving Officer Vidljinovic or any of the other officers involved in this matter. (*Id.* at ¶ 20).

43. Further, on July 22, 2011, Watch Commander Dubiel was not aware of Officer Vidljinovic using a taser to force people to comply with orders of Chicago Fire Department personnel to receive unwanted medical treatment or to force people to get into an ambulance. (*Id.* at ¶¶ 21-22).

44. Based on the information that Watch Commander Dubiel received, he believed that Plaintiff was tased because he moved towards officers with clenched fists, placing them in fear of receiving a battery. (*Id.* at ¶ 16).

45. Based on the information that Sergeant Kearns and Officer Vidljinovic provided Watch Commander Dubiel, he approved Officer Vidljinovic's Tactical Response/Officer Battery Report and concluded that his actions complied with the Chicago Police Department's use of force policy. (*Id.* at ¶ 17).

46. Watch Commander Dubiel did not receive any complaint from any source regarding Officer Vidljinovic's use of a taser at the time. (*Id.* at ¶ 19; Ex. L at 134:2-5).

Respectfully submitted,

/s/ Kevin R. Gallardo
KEVIN R. GALLARDO
Assistant Corporation Counsel

30 North LaSalle Street
Suite 900
Chicago, Illinois 60602
(312) 744-0742 Office
(312) 744-6566 Fax
Attorney No. 6296545

## CERTIFICATE OF SERVICE

I, Kevin R. Gallardo, certify that on December 29, 2015, I caused a copy of **DEFENDANT DUBIEL'S RULE 56.1(a)(3) STATEMENT OF UNDISPUTED FACTS** to be sent via e-filing to all individuals who have filed an appearance in this case pursuant to Case Management/Electronic Case Files in accordance with the rules on electronic filing of documents.

    /s/ Kevin R. Gallardo
    KEVIN R. GALLARDO