**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, | ) ) ) | Case No. 12 cv 5751 |
| Plaintiff, | ) ) | Hon. John Robert Blakey |
| v. | ) ) | Hon. Geraldine Soat Brown |
| STEVAN VIDLJINOVIC, Star No. 4051, et al. | ) ) | JURY DEMANDED |
| | ) ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S LOCAL RULE 56.1(a)**
**STATEMENT OF UNDISPUTED FACTS**

Defendant City of Chicago (the "City") by its attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, submits this statement of undisputed material facts[1] pursuant to Local Rule 56.1(a) of the United States District Court for the Northern District of Illinois, Eastern Division:

1.    This court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and § 1343(a). Plaintiff brings this action under 42 U.S.C. § 1983. **Plaintiff's Fourth Amended Complaint, attached hereto as Exhibit A, at ¶ 1.**

2.    Venue is proper under 28 U.S.C. § 1391(b). **Ex. A at ¶ 1.**

3.    Defendants Stevan Vidljinovic, John D. Guettler, Jose Valdovinos, Antonio J. Valenzuela, Manuel Gonzalez Jr., Armando Alamillo, Jose De Monica, Daniel Lopez, Supervising Sergeant Mark E. Kearns, Watch Commander Robert H. Dubiel,

---

[1]These facts are only deemed admitted for the purpose of the City's Motion for Summary Judgment. The City reserves the right to dispute these facts for all other purposes, including trial. Moreover, the City's Local Rule 56.1(a) Statement assumes as true, for the purposes of the City's motion for summary judgment only, plaintiff's factual allegations concerning the underlying incident. The City's motion focuses primarily on plaintiff's municipal liability claims under Section 1983 brought against it in Plaintiff's Complaint.

Paramedic Sandra Cheatham and Paramedic Julio Mendoza (collectively, "Individual Defendants") were at all relevant times City employees acting under color of law. **Ex. A at ¶¶ 3-15.**

4.      Plaintiff's friend called 911 after Plaintiff experienced chest pains on July 22, 2011. **Ex. A at ¶¶ 17-21.**

5.      Plaintiff alleges the Individual Defendants who responded to the 911 call ignored his repeated statements that he did not need any medical help.  **Ex. A at ¶¶ 23-35, 37.**

6.      Plaintiff alleges that Defendant Vidljinovic tased Plaintiff in order to get him into an ambulance. **Ex. A at ¶¶ 43-50.**

7.      Plaintiff brings claims of false seizure, excessive force, failure to intervene, assault and battery, and intentional infliction of emotional distress against the Individual Defendants.  **Ex. A at ¶¶ 91-128.**

8.      As to the City, Plaintiff appears to seek liability under *Monell* for the federal claims. **Ex. A at ¶¶ 91-116.**

9.      Plaintiff alleges in part that the City's Municipal Code "allows its police officers and paramedics to forcibly seize and compel a citizen's compliance with their directions to be transported to a medical facility despite the citizen's clear and steadfast refusal of any assistance whatsoever." **Ex. A at ¶ 96-97.**

10.     Plaintiff further alleges that the City has drafted part of its Municipal Code that encouraged excessive force. **Ex. A at ¶¶ 64, 111.**

11.     Plaintiff further claims a number of customs and practices caused

him constitutional harms, including, but not limited to, a failure to train its police officers and paramedics, overuse of tasers, a "code of silence," a failure to investigate allegations of misconduct against police officers and paramedics, a failure to supervise police officers and paramedics, a failure to discipline police officers and paramedics, and a practice of refusing citizens' refusal of unwanted medical attention and compelling the citizen to submit to it. **Ex. A at ¶¶ 43-45, 58, 60-63, 65-70.**

12.     In response to the City's contention interrogatories seeking to determine what specific evidence Plaintiff had about customs or practices that allegedly caused him harm, Plaintiff repeatedly answered: "The City of Chicago and the policy making members of its Police Department promulgate a policy, practice, and procedure which completely ignores an appreciation of a commonsense need to mitigate the use of force or make efforts to temper the severity of that force when apprehending a detainee or rendering aid to a citizen, particularly when the detainee or citizen is known or suspected of having diminished capacity and/or may be physically unable to comply with police commands. Compare G.O. 02-08 Use of Force Guidelines, G.O. 02-08-01A Use of Force Model, G.O. 02-08-02 Force Options (Revision regarding Tasers), G.O. 02-08-03 Deadly Force (Use of Force to Prevent Escape), Special Order S03-08 Assisting Chicago Fire Department Paramedics, Special Order S04-20-02 Persons Subject to Involuntary or Voluntary Admission Non Arrestees, Special Order S04-20 Handling Persons in Need of Mental Treatment. Consider also the training given to officers of the City of Chicago Police Department regarding the use and

application of the Taser weapon which is completely silent concerning the appropriate time such a weapon and consideration of its forbearance when dealing with a citizen who is known or suspected of having diminished capacity and/or may be physically unable to comply with police commands. Compare the training films from the Chicago Police Academy regarding the use and application of the Taser weapon." **Plaintiff's Answers to Defendant City of Chicago's First Set of Interrogatories to Plaintiff, attached hereto as Exhibit B.**

13.     In response to another of the City's contention interrogatories, Plaintiff alleges that the City has had the custom and practice of summarily finding citizen complaints of excessive force to be unfounded and closed those complaints without exerting discipline. **Ex. B at p. 3.**

14.     In response to the City's other contention interrogatories, Plaintiff stated reiterated theories about failure to train and theories about misconduct of the Individual Defendants, without any citation to the record. **Ex. B.**

15.     The City has denied liability for Plaintiff's constitutional claims. **Defendant City's Answer to Plaintiff's Fourth Amended Complaint, attached hereto as Exhibit C.**

16.     Plaintiff's Initial Rule 26(a)(1) Disclosures do not name any individuals with policymaking authority, nor do they list any documents related to any of Plaintiffs' policy claims. **Plaintiff's Initial Rule 26(a)(1) Disclosures, attached hereto as Exhibit D.**

17.     Plaintiff disclosed three expert witnesses: Philip Hayden as a witness in the use of force, Gary Yarkony as a witness on a life care plan for Plaintiff, and Stan

Smith as a witness on Plaintiff's economic losses and damages. **Letter from Plaintiff's counsel, attached hereto as Exhibit E.**

18.     Mr. Hayden's expert report makes no mention of any alleged deficiencies in the City's policies, customs or practices other than a possibility that the Chicago Police Department failed to train its force with regard to the use of tasers or the officers ignored their training. **Report of Mr. Hayden, attached as Exhibit F.**

19.     At his deposition, Mr. Hayden stated that "[f]rom the training material I saw, the material is there to train the police officers properly." **Deposition of Philip P. Hayden, attached hereto as Exhibit G, p. 162, lines 6-12.**

20.     G.O. 02-08, entitled "Use of Force Guidelines," was at the relevant time to this lawsuit the Chicago Police Department's express policy on the use of force by officers. **G.O. 02-08, attached hereto as Exhibit H.**

21.     G.O. 02-08 states in part, "When a Department member engages a member of the public, the member will do so in such a manner which affords that person the respect and dignity to which all persons are entitled. The use of excessive force or unwarranted physical force or unprofessional conduct by a Department member will not be tolerated under any circumstances." **Ex. H, p. 1-2.**

22.     G.O. 02-08 further states in part, "Department members will use an amount of force reasonably necessary based on the totality of the circumstances to perform a lawful task, effect an arrest, overcome resistance, control a subject, or protect themselves or others from injury. **Ex. H, p. 2.**

23.     G.O. 02-08 cites to the U.S. Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386 (1989) as to the reasonableness of force. **Ex. H, p. 2**

24.     G.O. 02-08 further states that "All Department members are obligated to ensure compliance with all laws and Department regulations. If a member knows that another Department member is using excessive force against a subject, the member will take appropriate action." **Ex. H, p. 2-3.**

25.     G.O. 02-08-01A, entitled The Use of Force Model" is another Chicago Police Department express policy in effect at the time of the incident. **G.O. 02-08-01A, attached hereto as Exhibit I.**

26.     G.O. 02-08-01A  provides a graphic representation of the appropriate use of force, as established in G.O. 02-08. **Ex. I.**

27.     G.O. 02-08-02 and G.O. 02-08-02A, each entitled "Force Options," are other Chicago Police Department express policies in effect at the time of the incident. **G.O. 02-08-02 and G.O. 02-08-02A, attached hereto as Exhibit J.**

28.     G.O. 02-08-02 and G.O. 02-08-02A explain when officers may use various tools and weapons, including Tasers. **Ex. J.**

29.     G.O. 02-08-03, entitled "Deadly Force," was another Chicago Police Department express policy in effect at the time of the incident. **G.O. 02-08-03, attached hereto as Exhibit K.**

30.     G.O. 02-08-03 pertains to the use of firearms. **Ex. K.**

31.     Special Order S03-08, entitled "Assisting Chicago Fire Department Paramedics," is another Chicago Police Department express policy in effect at the time of the incident. **Special Order S03-08, attached hereto as Exhibit L.**

32.     Special Order S03-08 states in part, "It is the policy of the Department to assist CFD paramedics in transporting a patient to a hospital whenever a CFD paramedic

declares that the situation constitutes a medical emergency and requires police assistance." **Ex. L at p. 1.**

33.     Special Order S03-08 further cites to Illinois's Emergency Medical Services Systems Act and a section of the City's Municipal Code. **Ex. L at p. 1.**

34.     Special Order S03-08 further states "In most life threatening situations, the patient is not actively resisting. However, members are authorized to employ the minimum force necessary to overcome the amount of force exerted by the patient resisting medical assistance or transportation." **Ex. L at p. 1.**

35.     Special Orders S04-20 and S04-20-02, entitled "Handling Persons in Need of Mental Treatment" and "Persons Subject to Involuntary or Voluntary Admission Non-Arrestees" are also express Chicago Police Department policies in effect at the time of the incident. **Special Order S04-20 and S04-20-02, attached hereto as Exhibit M.**

36.     Special Order S04-20 states, "The Department is committed to the dignified treatment and safety of arrestees and other persons requiring assistance from the Department to obtain mental health evaluation, treatment, or hospitalization. **Ex. M at FCRL000127.**

37.     Special Order S04-20-02 cites repeatedly to state laws concerning involuntary admissions. **Ex. M at FCRL 000124.**

38.     Special Order S04-20-02  states in relevant part that a n officer may take someone into custody and transport him or her to a mental health facility when the officer has reasonable grounds to believe that the person is subject to involuntary admission and in need of immediate hospitalization to protect such person or others from physical harm. **Ex. M at FCRL000124.**

39.     The Chicago Police Department's express policies comport with contemporary law enforcement policies, including the International Association of Chiefs of Police, the Police Executive Research Forum, Electronic Control Weapons guidelines and the Illinois Law Enforcement Training and Standards Board force training guidelines. **Report of Darrell L. Ross, attached hereto as Exhibit N, p. 8-9.**

40.     The Chicago Police Department has provided officers training that is commensurate with their duties in both the use of force generally and the use of Tasers. **Ex. N, p. 9-14.**

41.     Chicago Municipal Code Section 4-68-110 authorizes police to assist EMS personnel when they are informed of an emergency as defined in the Emergency Medical Services Systems Act and that the person is in need of immediate hospitalization. **Report of Frank W. Nagorka, attached hereto as Exhibit O, p. 5.**

42.     Section 3.5 of the Emergency Medical Services Systems Act defines an emergency as "a medical condition of recent onset and severity that would lead a prudent layperson, possessing an average knowledge of medicine and health, to believe that urgent or unscheduled medical care is required." **Ex. O, p. 5-6; 210 ILCS 50/3.5.**

43.     The Region XI Chicago EMS Systems Policies and Procedures and its Paramedic Standing Orders were developed by a consortium of four Chicago Hospitals, consistent with the Emergency Medical Services Systems Act and consistent with nationally accepted EMS standards. **Ex. O, p. 3.**

44.     According to the EMS Policies, incompetent patients are not allowed to make health care decisions and paramedics are directed to attempt to carry out medical treatment in the best interest of the patient. **Ex. O, p. 5**

45. Pursuant to the EMS Policies and Procedures, paramedics may call police to assist them when they encounter situations where it is unsafe for them to perform their duties, or when they encounter a patient who is combative and potentially violent. **Ex. O, p. 5**

46.     Fact discovery closed on July 15, 2015.  **Dkt. 88**.

Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel for the City of Chicago

By:     **/s/ Raoul Vertick Mowatt**
Raoul Vertick Mowatt
Assistant Corporation Counsel

30 North LaSalle Street, Suite 900
Chicago, Illinois  60602
(312) 744-3283
Attorney No. 6302587

## CERTIFICATE OF SERVICE

I hereby certify that on  December 30, 2015, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

    /s/ Raoul Vertick Mowatt