**TAB 45**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE LOPEZ, by his wife and next best<br>friend, Sandra Cardiel,<br><br>                Plaintiff,<br><br>v.<br><br>STEVAN VIDLJINOVIC, Star No. 4051,<br>JOHN D. GUETTLER, Star No. 5174,<br>JOSE VALDOVINOS, Star No. 11820,<br>ANTONIO J. VALENZUELA, Star No. 14123,<br>MANUEL GONZALEZ, Jr, Star No. 11733,<br>JOSE F. VALDOVINOS, Star No. 11820,<br>ARMANDO ALAMILLO, Star No. 106912,<br>JOSEPH DE MONICA, Empl. No. 27496,<br>DANIEL LOPEZ, Star No. 3477,<br>SUPERVISING SERGEANT MARK E. KEARNS,<br>Star No. 1811, and<br>WATCH COMMANDER ROBERT H. DUBIEL,<br>Star No. 194, individually and in their official<br>capacities as police officers for the City of Chicago,<br>PARAMEDIC SANDRA CHEATAM,<br>PARAMEDIC JULIO MENDOZA,<br>individually and in their official  capacities as<br>paramedics for the City of Chicago, and the<br>CITY OF CHICAGO, ILLINOIS, a municipal<br>corporation and a body politic,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 12 cv 5751<br><br><br>Hon. Harry D. Leinenweber,<br>Judge Presiding.<br><br><br>Hon. Geraldine Soat Brown,<br>Magistrate Judge.<br><br><br>JURY DEMANDED |

**FOURTH AMENDED COMPLAINT**

NOW COMES the Plaintiff, JOSE LOPEZ, by his wife and next best friend, Sandra

Cardiel, by and through his attorneys, John P. DeRose & Associates and Franco N. Carone, and

as and for a Fourth Amended Complaint against Defendants STEVAN VIDLJINOVIC, Star No.

4051, JOHN D. GUETTLER, Star No. 5174, JOSE VALDOVINOS, Star No. 11820, ANTONIO

J. VALENZUELA, Star No. 14123, MANUEL GONZALEZ, Jr., Star No. 11733, JOSE F.

VALDOVINOS, Star No. 11820, ARMANDO ALAMILLO, Star No. 106912, JOSEPH DE

MONICA, Empl. No. 27496, DANIEL LOPEZ, Star No. 3477, SUPERVISING SERGEANT

MARK E. KEARNS, Star No. 1811, WATCH COMMANDER ROBERT H. DUBIEL, Star No.

194, PARAMEDIC SANDRA CHEATHAM, PARAMEDIC JULIO MENDOZA, and the CITY

OF CHICAGO, ILLINOIS states as follows:

## JURISDICTION

1.      Subject matter jurisdiction over Plaintiff's federal civil rights claims pursuant to 42

U.S.C. § 1983 is provided by 28 U.S.C. §§ 1331 and 1343(a)(3). This court has supplemental

jurisdiction over the state law intentional infliction of emotional distress claim pursuant to 28

U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b) because the events that gave rise to

Plaintiff's claims occurred in this district.

## PARTIES

2.      Jose Lopez, at all relevant times hereinafter mentioned, was a resident of the City of

Summit, the County of Cook, and the State of Illinois.

3.      STEVAN VIDLJINOVIC, Star No. 4051, at all relevant times hereinafter mentioned,

was a Police Officer employed with the City of Chicago Police Department, acting under the

color of law.

4.      JOHN D. GUETTLER, Star No. 5174, at all relevant times hereinafter mentioned, was a

Police Officer employed with the City of Chicago Police Department, acting under the color of

law.

5.      JOSE VALDOVINOS, Star No. 11820, at all relevant times hereinafter mentioned, was a

Police Officer employed with the City of Chicago Police Department, acting under the color of

law.

6.     ANTONIO J. VALENZUELA, Star No. 14123, at all relevant times hereinafter mentioned, was a Police Officer employed with the City of Chicago Police Department, acting under the color of law.

7.     MANUEL GONZALEZ, Jr., Star No. 11733, at all relevant times hereinafter mentioned, was a Police Officer employed with the City of Chicago Police Department, acting under the color of law.

8.     JOSE F. VALDOVINOS, Star No. 11820, at all relevant times hereinafter mentioned, was a Police Officer employed with the City of Chicago Police Department, acting under the color of law.

9.     ARMANDO ALAMILLO, Star No. 106912, at all relevant times hereinafter mentioned, was a Police Officer employed with the City of Chicago Police Department, acting under the color of law.

10.     JOSEPH DE MONICA, Employee No. 27496, at all relevant times hereinafter mentioned, was a Police Officer employed with the City of Chicago Police Department, acting under the color of law.

11.     DANIEL LOPEZ, Star No. 3477, at all relevant times hereinafter mentioned, was a Police Officer employed with the City of Chicago Police Department, acting under the color of law.

12.     SUPERVISING SERGEANT MARK E. KEARNS, Star No. 1811, at all relevant times hereinafter mentioned, was a Police Sergeant employed with the City of Chicago Police Department, acting under the color of law.

13.   WATCH COMMANDER ROBERT H. DUBIEL, Star No. 194, at all relevant times hereinafter mentioned, was a Commander employed with the City of Chicago Police Department, acting under the color of law.

14.   PARAMEDIC SANDRA CHEATHAM, at all relevant times hereinafter mentioned, was a Paramedic employed with the City of Chicago Fire Department, acting under the color of law.

15.   PARAMEDIC JULIO MENDOZA, at all relevant times hereinafter mentioned, was a Paramedic employed with the City of Chicago Fire Department, acting under the color of law.

16.   The CITY of CHICAGO, ILLINOIS, at all relevant times hereinafter mentioned, was and is a municipal corporation and body politic in the State of Illinois.

### FACTS

17.   On July 22, 2011, at approximately 3:00 AM Plaintiff, who had a history and previous hospitalization because of heart problems, began to experience chest pains.

18.   Plaintiff was walking and talking just fine, but he was complaining of chest pains.

19.   When Plaintiff's friend suggested that she was going to call 911 for emergency medical assistance, Plaintiff said that he would be fine and did not want any medical assistance.

20.   At about 3:20 AM as Plaintiff went walking down the sidewalk in the 2500 block of South Albany Avenue in the City of Chicago, his friend placed an emergency call to 911 asking for an ambulance to tend to Plaintiff.

21.   Plaintiff's friend told the emergency dispatch operator that Plaintiff was conscious, walking, and talking, but was complaining of chest pains.

22.   The 911 Emergency Operator dispatched a Chicago Fire Department ambulance to tend to Plaintiff's needs.

23.   In response to the emergency dispatch, a Chicago Fire Department truck with a full complement of Firefighters on it arrived first on the scene at 3:27 AM.

24.   Plaintiff refused any help from or assistance by the Chicago Firefighters and no physical contact with or physical violence on Plaintiff was initiated by any of them.

25.   Although they had been dispatched at the same time as the fire truck, approximately 10 minutes later, at approximately 3:38 AM the Chicago Fire Department ambulance and its paramedics, Defendants SANDRA CHEATAM and JULIO MENDOZA finally arrived on the scene.

26.   Again Plaintiff indicated that he did not need any help, did not want any attention from the paramedics, wanted to be left alone, and continued walking away from them.

27.   Less than a minute after the arrival of the paramedics and Plaintiff's continued refusal of any assistance from them, Defendants SANDRA CHEATAM and JULIO MENDOZA made a call for assistance from the Chicago Police Department.

28.   Like the Chicago firefighters who had arrived before them, Defendants SANDRA CHEATAM and JULIO MENDOZA were fully cognizant of the fact that plaintiff was steadfastly refusing any attention, assistance, or aide whatsoever.

29.   At least five squad cars of the Chicago Police Department arrived on the scene in response to the emergency dispatch.

30.   Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, went in response to the emergency dispatch.

31.    Upon their arrival Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, observed Plaintiff walking in the 2400 block of South Albany Avenue in the City of Chicago.

32.    Like the Chicago firefighters and paramedics who had arrived before them, Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS were fully cognizant of the fact that plaintiff was steadfastly refusing any attention, assistance, or medical aide whatsoever.

33.    When Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS directed Plaintiff to stop and come to them and get into the Chicago Fire Department ambulance, Plaintiff told them he did not want their help, said he was just fine, and leave him alone.

34.    As Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS continued to direct Plaintiff to get into the Chicago Fire Department ambulance, Plaintiff was unarmed and non-combative.

6

35.     Plaintiff steadfastly told the police, firefighters, and paramedics of Defendant CITY OF CHICAGO that he did not want their assistance or any medical aid as is his right.

36.     As is their wont, custom, and practice to so do, and in accordance with their training with the Police Department and the Fire Department of Defendant CITY OF CHICAGO, Defendant Paramedics and Defendant Police Officers ignored Plaintiff's refusal of the assistance being offered and continued to insist that Plaintiff get into the ambulance in order to transport him for unwanted medical attention.

37.     Plaintiff continued to refuse the offer of any assistance whatsoever and indicated that he did not want to get into the ambulance.

38.     Instead, Plaintiff turned, continued to retreat in a direction away from the Defendant Paramedics and Defendant Police Officers and started walking down the street toward his car.

39.     Plaintiff did not have the keys to his car, and Plaintiff's friend advised Defendant Police Officers of that fact.

40.     As is their wont, custom, and practice to so do, and in accordance with their training with the Police Department of Defendant CITY OF CHICAGO, when a citizen of the community refuses their directions and continues to walk away, Chicago Police Officers draw and use their Taser Guns to force compliance and control behavior.

41.     There were more than an ample number of Chicago Police Officers and Chicago Fire Department Personnel on the scene, including Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, to exert sufficient and adequate physical force against Plaintiff as he continued to walk away from them to seize and restrain him

7

and force him to get in the Chicago Fire Department ambulance without the use of the Taser
Gun.

42.     Plaintiff was completely surrounded by Defendants STEVAN VIDLJINOVIC, JOHN D.
GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ,
Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL
LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS and Chicago Fire Department
Personnel, was unarmed, had all his avenues of retreat blocked and secured, and was verbally
refusing to get in the Chicago Fire Department ambulance and accept any treatment by or
attention from any of them.

43.     Because Plaintiff had not heeded the directions of Defendant Paramedics and Defendant
Police Officers to get in the Chicago Fire Department ambulance, as is their wont, custom, and
practice, and according to their training, Defendants STEVAN VIDLJINOVIC, JOHN D.
GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ,
Jr., ADRIAN VALADEZ, JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE
MONICA, DANIEL LOPEZ, LUIS C. LUQUE-ROSALES, with the approval and consent of
SUPERVISING SERGEANT MARK E. KEARNS, used their Taser Guns to control his
behavior and compel compliance with their directions.

44.     According to his training with the Police Department of Defendant CITY OF CHICAGO,
ILLINOIS, within three minutes of his arrival on the scene, Defendant STEVAN VIDLJINOVIC
drew his Taser Gun, and without any right or reason to so do, immediately tasered Plaintiff,
sending an electric shock through Plaintiff's body strong enough to cause him to crash to the
ground, striking his head violently on the sidewalk, and to cry out with horrible sounds and
groans of pain.

8

45.     Although they had Plaintiff completely surrounded and adequately contained, as is their

wont, custom, and practice, and according to their training respectively with the Police

Department and/or the Chicago Fire Department of Defendant CITY OF CHICAGO, Defendants

JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL

GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA,

DANIEL LOPEZ, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO

MENDOZA ignored Plaintiff's clear and steadfast refusal of any assistance or attention from

them, and took no action to intervene and stop the use of the Taser Gun by Defendant STEVAN

VIDLJINOVIC to control Plaintiff's behavior and compel his compliance with their directions to

get in the ambulance.

46.     Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS,

ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS,

ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, and  SUPERVISING

SERGEANT MARK E. KEARNS immediately rushed Plaintiff, violently turned him face down

on the sidewalk, and, without any right to so do, handcuffed him behind his back.

47.     Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS,

ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS,

ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, and SUPERVISING

SERGEANT MARK E. KEARNS lacked probable cause, did not have any right to effect an

arrest or seizure of Plaintiff, and acted unreasonably because they responded overzealously and

with little concern for his safety.

48.     Plaintiff posed no threat to the safety of Defendants STEVAN VIDLJINOVIC, JOHN D.

GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ,

Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL

LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, PARAMEDIC SANDRA

CHEATAM, PARAMEDIC JULIO MENDOZA, or others, and was retreating and walking away

as he refused any offer of assistance from them.

49.     Plaintiff was not actively resisting an arrest or attempting to evade arrest by flight, and

would have posed no danger to the community or to the Defendant Police Officers, firefighters,

the paramedics, or anyone else if he had been just left unattended as he requested.

50.     To enable behavioral control over Plaintiff and to compel compliance with the direction

that he enter the ambulance to be transported for unwanted medical attention that he was

steadfastly refusing, and not because he was an imminent threat to anyone, Defendant STEVAN

VIDLJINOVIC tasered JOSE LOPEZ causing him to fall face first and his head to strike with

such violent force that he sustained a skull fracture.

51.     Plaintiff could have been and, if necessary, should have been easily controlled by

Defendant Police Officers without resort to the use of the Taser gun.

52.     Although each and every one of them had an ample and realistic opportunity to intervene,

Defendants JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA,

MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE

MONICA, and DANIEL LOPEZ sought beforehand the approval of the use of a Taser gun and

receive such approval from SUPERVISING SERGEANT MARK E. KEARNS.

53.     Although each and every one of them had an ample and realistic opportunity to intervene,

Defendants JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA,

MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE

MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS,

10

PARAMEDIC SANDRA CHEATAM, and PARAMEDIC JULIO MENDOZA, failed to stop the use of excessive force by Defendant STEVAN VIDLJINOVIC in tasering Plaintiff and the infringement of his constitutional rights under the Fourth Amendment.

54.     Fully cognizant of Plaintiff's steadfast refusal of any assistance from them whatsoever, SUPERVISING SERGEANT MARK E. KEARNS actually approved and supervised the use of excessive force by Defendant STEVAN VIDLJINOVIC in tasering Plaintiff and the infringement of his constitutional rights under the Fourth Amendment and failed to stop it.

55.     Even though they made no effort to mitigate and temper the degree and severity of the force used when apprehending and restraining Plaintiff in order to render unwanted medical aid to him, immediately after he was handcuffed, the Police Officer Defendants denied that they had done anything wrong to anyone who would listen, including the ambulance Paramedics, the Firefighters and the bystanders who gathered at the scene.

56.     The Defendants actions were done in consort and conspiracy to intentionally, recklessly and maliciously cause severe physical injury to Plaintiff when he steadfastly refused their offer of assistance.

57.     Immediately thereafter, Plaintiff was secured to the ambulance stretcher with restraints.

58.     Although he was the Supervising Sergeant who observed the actions of the Defendant Police Officers and paramedics on the scene, SUPERVISING SERGEANT MARK E. KEARNS, commensurate with his training to control a citizen's behavior and compel compliance with directions from the paramedics and police, and according to the customs and practices of the Police Department of Defendant CITY OF CHICAGO, ILLINOIS, took no action to intervene and stop the excessive use of force against Plaintiff to compel his compliance with the direction to get in the ambulance, ignoring his steadfast refusal of any assistance whatsoever.

11

59.    Although he was the Command Officer that evening to whom the actions of Defendant Police Officers were reported, WATCH COMMANDER ROBERT H. DUBIEL, Star No. 94, commensurate with his training by the Police Department and in accordance with the customs and practices of Defendant CITY OF CHICAGO, ILLINOIS, took no action to reprimand, correct, or discipline the excessive use of force against Plaintiff to compel his compliance with the direction to get into the ambulance, ignoring his steadfast refusal of any assistance whatsoever.

60.    Instead, as is the wont and custom of the higher command of the Chicago Police Department, when advised of the tasing of Plaintiff and the infringement of his constitutional rights under the Fourth Amendment, Defendant WATCH COMMANDER ROBERT H. DUBIEL quickly dismissed the use of the Taser Gun as a reasonable use of force and investigated the matter no further.

61.    As is its custom and practice, the Defendant CITY OF CHICAGO failed to adequately train and supervise its police officers and paramedics, including  STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, and WATCH COMMANDER ROBERT H. DUBIEL, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA to appreciate a commonsense need to mitigate the use of force or make efforts to temper the severity of that force when apprehending a detainee or rendering aid to a citizen, particularly when the detainee or citizen is known or suspected of having diminished capacity and/or may be physically unable to comply with police directions and/or commands.

12

62.     As is its custom and practice, the Defendant CITY OF CHICAGO failed to adequately train and supervise its police officers and paramedics, including Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, and WATCH COMMANDER ROBERT H. DUBIEL, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA in the appropriate circumstances under which they are authorized and allowed to discharge their Taser Guns into detainees or citizens of the community who decline their attention and transport to medical aid.

63.     As is its custom and practice, the Defendant CITY OF CHICAGO has failed to discipline its Police Officers and Paramedics, including Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, WATCH COMMANDER ROBERT H. DUBIEL, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA in any way for the use of excessive force on citizens of the community and, in particular, the inappropriate use of the Taser Gun against Plaintiff who was steadfastly refusing and declining any assistance whatsoever or transport to or for medical aid.

64.     Contrary to the law and the constitutional rights of citizens, the Municipal Code of Defendant CITY OF CHICAGO allows a "peace officer to assist an emergency medical technician in transporting a person to a hospital... when the officer is informed by an emergency medical technician that the situation constitutes an emergency... and that person is in need of immediate hospitalization to protect such person or others from physical harm...",

13

notwithstanding the person's clear and steadfast refusal of any assistance whatsoever and/or transport to medical attention or aid.

65.     Defendants have a well-settled, widespread practice, custom, and municipal "law" of ignoring the clear and steadfast refusal by a citizen of unwanted assistance and of forcibly compelling or failing to intervene when the citizen is seized and transported to coerce unwanted medical aid.

66.     As is its custom and practice, the Defendant CITY OF CHICAGO allows its Police Department's and Fire Department's broken disciplinary and supervisory systems to flourish by enabling its Police Officers and Paramedics to abuse the most vulnerable among its citizens with impunity, and has delayed any investigation at all of the actions and behavior of the Defendant Police Officers and Paramedics in this case and of the excessive force used until this civil suit was brought.

67.     Defendant CITY OF CHICAGO has a well-settled, widespread practice and custom of impeding and interfering with police and paramedic misconduct investigations.

68.     There is an attendant "code of silence" that exists within the Chicago Police Department and the Chicago Fire Department, whereby police officers and paramedics conceal each other's misconduct in contravention of their sworn duties.

69.     The practice and custom of impeding and interfering with police officer and paramedic misconduct investigations and the code of silence are evidenced and caused by the Chicago Police Department's and the Chicago Fire Department's failure to: (a) sufficiently investigate allegations of police and paramedic misconduct; (b) promptly interview suspected officers, firefighters, and paramedics or take witness statements and preserve evidence; (c) properly and

14

sufficiently discipline police officers and paramedics; and (d) maintain accurate and complete records of complaints and investigations of misconduct.

70.     The practice and custom of impeding and interfering with police and paramedic misconduct investigations and the code of silence encourage Chicago police officers and paramedics to engage in misconduct with impunity and without the fear of official consequences.

71.     After Plaintiff had been illegally tasered, seized, manaculed, and strapped to a stretcher to force him into the ambulance against his will and against his clear and steadfast refusal of any medical assistance whatsoever, the ambulance paramedics tended to Plaintiff as best they could on the streets of the City of Chicago, and transferred him unconscious to Mount Sinai Hospital Emergency Room.

72.     Since the moment of the tasing of him by Defendant STEVAN VIDLJINOVIC and the failure to intervene by the other Defendant Police Officers and Paramedics, Plaintiff suffered severe head injuries.

73.     Since moments after the tasing of Plaintiff by Defendant STEVAN VIDLJINOVIC, Plaintiff was rendered unconscious and had been in a coma.

74.     Upon arrival at Mount Sinai Hospital Emergency Room, Plaintiff was found to have suffered a blunt traumatic brain injury with subdural hematoma as well as a right temporal lobe contusion.

75.     After being evaluated by neurosurgery at Mount Sinai Hospital and because of the skull fracture, intracranial trauma, bleeding, multiple hemorrhagic contusions in the right temporal lobe and midline shift that was discovered, Plaintiff underwent an emergency subdural hematoma evacuation and a right-sided temporal hemicraniotomy to relieve intracranial pressure.

76.     During that surgical procedure, a portion of plaintiff's skull was removed and embedded into his right abdomen, hopefully for later reattachment to his skull after swelling of his brain would subside.

77.     Following that surgical procedure, Plaintiff was admitted to the surgical intensive care unit of Mount Sinai Hospital where he remained unresponsive while on a ventilator.

78.     Plaintiff was given a tracheotomy and a tube placement was performed on him on August 8, 2011 at Mount Sinai Hospital.

79.     Postoperatively, the Plaintiff endured and continues to endure additional emergency brain surgeries due to parenchymal brain swelling, epidural clotting, continued and repeated intracranial hematoma, and infection.

80.     On December 2, 2011 while in a "stupor, sleep like state",  Plaintiff was taken back to the emergency room at Mount Sinai Hospital for the removal of the skull bone flap from his right lower abdominal wall.

81.     In approximately January 2012 Plaintiff began to speak and sit up in his hospital bed.

82.     In approximately March 2012 Plaintiff suffered a relapse, lost his ability to communicate verbally, but on occasion is observed to be able to lightly squeeze the hand of those persons he recognizes.

83.     On one occasion Plaintiff was able to open his eyes to acknowledge the presence of his teenage son.

84.     Plaintiff now suffers from a grand mal seizure disorder with tonic-clonic movement of his right side, among many other serious medical complications.

85.     Plaintiff was transferred with continued ventilator support to the Kindred Hospital
Chicago North Intensive Care Unit, later to the Intensive Care Unit of RML Specialty Hospital,
and most recently to Glencrest Nursing Home.

86.     Plaintiff has endured several emergency surgical intervention at Mount Sinai Hospital
and Rush Medical Center.

87.     On June 24, 2012 while "comatose, with no response", Plaintiff was returned to the
Mount Sinai Hospital Operating Room where he underwent a right cerebral craniotomy with
evacuation of the hematoma, because there was "massive intraparenchymal hemorrhage into the
scar of the previous right cerebral hemispheric infarction causing right cerebral hemispheric
herniation across the pre-existing right temporal craniotomy defect."

88.     On July 13, 2012 while "comatose with no response",  Plaintiff was returned to Mount
Sinai Hospital Operating Room for a Ventriculostomy so that a hole could be made and a shunt
placed within the cerebral ventricle of his brain for drainage.

89.     On October 23, 2012 Plaintiff underwent a right cranioplasty at Rush University Medical
Center.

90.     Plaintiff was discharged from Rush University Medical Center with "no meaningful
movement" being observed.

### COUNT I
### VIOLATION OF 42 U.S.C. § 1983
### FALSE SEIZURE

91.     The Plaintiff repeats and re-alleges paragraphs 1 through 90 of this Complaint as
paragraphs 1 through 90 of Count I as though fully set forth herein.

92.     Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS,
ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS,

ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA violated the civil rights of Plaintiff when they illegally seized Plaintiff against his will because he would not enter the ambulance and forcibly restrained his freedom of movement by tasing and manacling him with handcuffs and strap restraints and without probable cause.

93.    Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, WATCH COMMANDER ROBERT H. DUBIEL, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA were, at all times, acting under color of state law, in their capacity as Chicago Police Officers and Paramedics.

94.    The actions of Defendants STEVAN VIDLJINOVIC, JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, LUIS C. LUQUE-ROSALES, SUPERVISING SERGEANT MARK E. KEARNS, WATCH COMMANDER ROBERT H. DUBIEL, PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA were intentional.

95.    Plaintiff suffered severe physical and mental injuries due to the forcible and false seizure of his person by tasing him.

96.    The City of Chicago has drafted, promulgated, and enforced a provision of its Municipal Code which is in violation of the law and allows its police officers and paramedics to forcibly

seize and compel a citizen's compliance with their directions to be transported to a medical facility despite the citizen's clear and steadfast refusal of any assistance whatsoever.

97.     The City of Chicago has drafted, promulgated, and enforced a provision of its Municipal Code and has a custom and practice consistent with the actions of its Police Officers and Paramedics in this case.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

A.     Compensatory damages in the amount of one million dollars ($1,000,000), including, but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

B.     Costs of this suit;

C.     Reasonable attorneys' fees;

D.     Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

E.     Other such relief as this Honorable Court deems proper and just.

## COUNT II
### VIOLATION OF 42 U.S.C. § 1983
### EXCESSIVE FORCE

98.     The Plaintiff repeats and re-alleges paragraphs 1 through 97 of this Complaint as paragraphs 1 through 97 of Count II as though fully set forth herein.

99.     The Defendants and each of them violated the civil rights of Plaintiff when he was subjected to the use of excessive, unreasonable, and unjustified force, and subjected to great duress and injury.

100. Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure when excessive force was used against Plaintiff.

101. Defendant STEVAN VOLINOVIC, without any legal justification, willfully and maliciously tasered Plaintiff, causing him severe physical, mental, and emotional pain while the other Defendants stood by and failed to intervene in any way to avoid or mitigate the damage to Plaintiff.

102. Thereafter, the Defendants without any legal justification willfully, forcefully, and maliciously restrained Plaintiff.

103. The Defendants and each of them conspired together to use excessive force against Plaintiff and restrain him.

104. As a result of the Defendants' use of excessive force and restraint against him, Plaintiff suffered physical and emotional injuries as herein set forth.

105. The Defendants and each of them knew or should have known that their actions were violative of rights guaranteed to the Plaintiff.

106. The Defendants' actions were the direct and proximate cause of the injuries suffered by Plaintiff.

107. The Defendant Police Officers and Paramedics were at all times, acting under the color of law, in their individual and official capacities as members of the Chicago Police Department and the Chicago Fire Department.

108. The actions of the Defendants and of each of them, acting in conspiracy with each other, were willful and malicious and showed a wanton disregard for the constitutional rights of Plaintiff and his safety.

20

109.    The Defendants used a degree of force that was objectively unreasonable in light of the facts and circumstances at the time.

110.    By reason of the acts of the Defendants, Plaintiff has suffered great anxiety and pain of mind and body and will continue to suffer, all to his damage.

111.    Defendant CITY OF CHICAGO has drafted, promulgated, and enforced a provision of its Municipal Code and has a custom and practice consistent with the actions of its Police Officers and Paramedics in this case

112.    Defendant CITY OF CHICAGO maintains a custom and practice of allowing its Police Department and Fire Department to train, foster and encourage activities consistent with the actions of the Defendant Chicago Police Officers and Paramedics and to cover up their false seizure and use of excessive force.

        WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

        A.      Compensatory damages in the amount of one million dollars ($1,000,000), including but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

        B.      Costs of this suit;

        C.      Reasonable attorney's fees;

        D.      Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

        E.      Other such relief as this Honorable Court deems proper and just.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1983
## FAILURE TO INTERVENE

113.     The Plaintiff repeats and re-alleges paragraphs 1 through 112 of this Complaint as paragraphs 1 through 112 of Count III as though fully set forth herein.

114.     Although they had plaintiff completely surrounded with no way to flee or resist them, Defendants JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, and PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA  took no action to intervene and stop the use of the Taser Gun by Defendant STEVAN VIDLJINOVIC to control Plaintiff's behavior and compel his compliance with their directions to enter the ambulance.

115.     Although each and every one of them had an ample and realistic opportunity to intervene, Defendants JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, and DANIEL LOPEZ sought beforehand the approval of the use of a Taser gun by Defendant STEVAN VIDLJINOVIC and received such approval from SUPERVISING SERGEANT MARK E. KEARNS.

116.     Although each and every one of them had an ample and realistic opportunity to intervene, Defendants JOHN D. GUETTLER, JOSE VALDOVINOS, ANTONIO J. VALENZUELA, MANUEL GONZALEZ, Jr., JOSE F. VALDOVINOS, ARMANDO ALAMILLO, JOSEPH DE MONICA, DANIEL LOPEZ, SUPERVISING SERGEANT MARK E. KEARNS, and PARAMEDIC SANDRA CHEATHAM and PARAMEDIC JULIO MENDOZA failed to stop

the use of excessive force by Defendant STEVAN VIDLJINOVIC in tasing Plaintiff and the infringement of his constitutional rights under the Fourth Amendment.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

A.  Compensatory damages in the amount of one million dollars ($1,000,000), including but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

B.  Costs of this suit;

C.  Reasonable attorney's fees;

D.  Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

E.  Other such relief as this Honorable Court deems proper and just.

**COUNT IV**
**ASSAULT and BATTERY**

117.  The Plaintiff repeats and re-alleges paragraphs 1 through 116 of this Complaint as paragraphs 1 through 116 of Count IV as though fully set forth herein.

118.  The Defendants and each of them conspired together to tase, grapple, and restrain Plaintiff against his will on July 22, 2011 and to cover up the use of excessive force against him.

119.  At the time that Plaintiff was energized by the Taser Gun shot at him by Defendant STEVAN VIDLJINOVIC, the other Defendant Police Officers looked on and failed to intervene in the use of the unwanted contact with and excessive force against him.

120.  Any medical emergency under which Plaintiff may have been laboring at the time was only exacerbated by the actions of the Defendants who knew that he steadfastly declined and refused any assistance from defendants whatsoever.

23

121.    Defendants, by virtue of their aforementioned conduct, intentionally assaulted and battered Plaintiff, causing him severe physical and mental pain and suffering.

122.    The City of Chicago is liable for all these actions of its agents and employees, the individually named defendants under the theory of Respondeat Superior.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each of them as follows:

A.    Compensatory damages in the amount of one million dollars ($1,000,000), including but not limited to, physical injury and disability, pain and suffering, and medical expenses which were incurred as a result of Defendants' actions;

B.    Costs of this suit;

C.    Reasonable attorney's fees;

D.    Punitive damages against the Unknown Defendant Chicago Police Officers in the amount of one million dollars ($1,000,000); and

E.    Other such relief as this Honorable Court deems proper and just.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

123.    The Plaintiff repeats and re-alleges paragraphs 1 through 122 of this Complaint as paragraphs 1 through 122 of Count V as though fully set forth herein.

124.    The actions of the Defendants were extreme and outrageous.

125.    The Defendants actions were done in consort and conspiracy to intentionally and maliciously cause severe emotional distress to Plaintiff.

126.    Defendants knew or reasonably should have known that their actions had a high probability of causing severe emotional distress to the Plaintiff.

24

127.    Defendants actions were intentional and malicious and demonstrated a willful and

wanton disregard for the rights of Plaintiff and had a high probability of causing severe

emotional distress to him.

128.    Plaintiff has suffered and continues to suffer from severe emotional distress.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants and each

of them as follows:

A.      Compensatory damages in the amount of one million dollars ($1,000,000),

including but not limited to, physical injury and disability, pain and suffering, and medical

expenses which were incurred as a result of Defendants' actions;

B.      Costs of this suit;

C.      Reasonable attorney's fees;

D.      Punitive damages against the individual Unknown Defendant Chicago Police

Officers in the amount of one million dollars ($1,000,000); and

E.      Other such relief as this Honorable Court deems proper and just.


Respectfully submitted,

S/ John P. DeRose
John P. DeRose

John P. DeRose & Associates          Franco N. Carone
15 Spinning Wheel Road               Carone Law Offices
Suite 428                            2227 North Mannheim Road
Hinsdale, Illinois  60521            Melrose Park, IL 60164
(630) 920-1111 Office                (708) 870-4878
(630) 920-1170 Fax                   (708) 856-8310 Fax
john@johnderoselaw.com               fcarone@aol.com