# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Jose Lopez, by his wife and next best friend, Sandra Cardiel,<br><br>   Plaintiff,<br><br>   v.<br><br>Stevan Vidljinovic, Star No. 4051, et al.,<br><br>   Defendants. | Case No. 1:12-cv-5751<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

  Plaintiff Jose Lopez, by his wife and next best friend Sandra Cardiel, sued defendants Chicago Police Officers Stevan Vidljinovic, John Guettler, Jose Valdovinos, Antonio Valenzuela, Manuel Gonzalez, Armando Alamillo, Joseph DeMonica and Daniel Lopez, Supervising Sergeant Mark Kearns, Watch Commander Robert Dubiel, Paramedics Sandra Cheatam and Julio Mendoza, and the City of Chicago. Plaintiff alleges five causes of action: (1) unlawful seizure in violation of 42 U.S.C. § 1983; (2) excessive force in violation of 42 U.S.C. § 1983; (3) failure to intervene in violation of 42 U.S.C. § 1983; (4) assault and battery; and (5) intentional infliction of emotional distress. Fourth Am. Compl. [54] ¶¶ 91-128. Defendant City of Chicago has moved for summary judgment. Chi. Mot. Summ. Judg. [117]. This Court grants that motion.

## I. Background[1]

On July 22, 2011, at approximately 3:00 a.m., Plaintiff Jose Lopez began having chest pains. CSOF [119] ¶ 4. Lopez's friend, Guadalupe Guzman, called 911 shortly thereafter. PSOF [128] ¶ 1. Firefighters and paramedics arrived on the scene at approximately 3:30 a.m. *Id.* ¶¶ 1, 3. Paramedics Sandra Cheatam and Julio Mendoza attempted to administer medical treatment to Lopez. DSOF [115] ¶ 8. Personnel at the scene determined that the situation was a medical emergency and called the Chicago Police Department ("CPD") for assistance. *Id.* Defendant CPD Officers Stevan Vidljinovic, John Guettler, Antonio Valenzuela, Manuel Gonzalez, Jose Valdovinos, Armando Alamillo, Joseph De Monica, Daniel Lopez, and Mark Kearns ("Defendant CPD Officers") all responded to the call for CPD assistance. *Id.* ¶¶ 10-13.

The parties dispute what happened after the Defendant CPD Officers arrived. Lopez asserts that the Defendant CPD Officers ignored his refusals of medical treatment. CSOF [119] ¶ 5. CPD Officer Vidljinovic asserts that Lopez moved towards him with his fists clenched, in an aggressive manner. DSOF [115] ¶ 31. The parties do not dispute that Officer Vidljinovic eventually tased Lopez. *Id.* ¶ 13. After he was tased, Lopez was transported to Mt. Sinai Hospital. *Id.* ¶ 14.

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "CSOF" refers to the City of Chicago's statement of undisputed facts [119], with Plaintiff's responses where applicable [127]. "PSOF" refers to Plaintiff's statement of undisputed facts [128], with the City of Chicago's responses where applicable [146]. "DSOF" refers to Defendant Robert Dubiel's statement of undisputed facts [115], filed in support of his parallel motion for summary judgment, with Plaintiff's responses where applicable [133].

With regard to the City of Chicago, Lopez alleges liability pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). More specifically, Lopez alleges that four explicit policies were the cause of his injuries: (1) Municipal Code Sec. 4-68-110; (2) Chicago EMS Policies and Procedures; (3) CPD Special Order S03-08; and (4) CPD Special Order S02-01-04. Municipal Code Sec. 4-68-110 provides that CPD officers may assist an emergency medical technician in transporting a person to a hospital when the officer is informed by an emergency medical technician that the situation constitutes an emergency and that person is in need of immediate hospitalization. PSOF [128] ¶ 7. Chicago EMS Policies and Procedures provide that CFD paramedics and EMS personnel are required to seek police assistance if a citizen will not cooperate with them by allowing either examination or transportation to a medical facility. *Id.* ¶ 6. CPD Special Order S03-08 requires CPD officers to assist paramedics in the transportation of a citizen for medical attention, unless that citizen refuses transportation on religious grounds. *Id.* ¶ 11. CPD Special Order S02-01-04 provides that citizens believed to be under the influence of drugs or alcohol may be assisted to a treatment facility if they consent. *Id.* ¶ 13.[2]

Lopez also alleges that the City of Chicago failed to train its personnel regarding the use of force. To support this claim, Lopez has identified five discrete categories of purported evidence: (1) a newspaper article chronicling the increase in

---

[2] The City of Chicago claims that its expert witness, Frank Nagorsky, testified that the City's express policies regarding the transportation of patients in emergency situations are similar to both the standards set forth by other area hospitals and the national standard of care. Chi. Mem. Supp. Mot. Summ. Judg. [118] at *10. The evidence cited by the City, however, does not exactly support this general proposition. *See* CSOF [119] ¶¶ 41-44.

3

taser use by the CPD, PSOF [128] ¶ 15; (2) reports commemorating the dismissal of Independent Police Review Authority ("IPRA") investigations into allegations of excessive force, *id.* ¶¶ 16-17; (3) statements by Mayor Rahm Emanuel acknowledging a "code of silence" within the CPD, *id.* ¶¶ 27-30; (4) letter requests from prominent politicians encouraging the United States Department of Justice ("DOJ") to investigate the CPD, *id.* ¶ 35; and (5) the alleged failure of the IPRA to investigate Lopez's own case, *id.* ¶ 19-25.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District,* 743 F.3d 524, 528 (7th Cir. 2014).

### III. *Monell* Claims

A plaintiff may bring a claim against a municipality for a federal civil rights violation under 42 U.S.C. § 1983. *Monell v. New York City Dept. of Social Serves.*, 436 U.S. 658, 690 (1978). To succeed on such a claim, however, a plaintiff must show that he suffered "a constitutional injury resulting from a municipal policy, custom, or practice." *Lewis v. Cnty. of Cook*, No. 10-cv-1313, 2011 WL 839753, at *13 (N.D. Ill. Feb. 24, 2011). A plaintiff must also show that the municipal policy, custom, or practice "not only caused the constitutional violation, but was the moving force behind it." *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). An official policy or custom may be established via three different methods of proof: "[1] by means of an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs*, 675 F.3d 650, 675 (7th Cir. 2012). Under each of the foregoing theories, the burden is on the plaintiff to demonstrate the existence of the policy or custom at issue. *Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142, 1149 (7th Cir. 1999) (citing *Board of Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 379 (1997)). Here, Lopez does not assert that a person with final policymaking authority caused his alleged constitutional injury.

The Court therefore must determine whether Lopez's injuries can be reasonably ascribed to either an explicit policy or an established custom or practice.

### A. Explicit Policy

There are actually two varieties of "express policy" claims under *Monell*. The first variation applies "where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsay*, 408 F.3d 375, 379 (7th Cir. 2005). Under this type of claim, one application of the offensive policy resulting in a constitutional violation is sufficient to establish municipal liability. *Id.*

A second way of attacking an "express policy" is to object to "omissions in the policy." *Hughes v. City of Chicago*, No. 08-cv-627, 2011 WL 5395752, at *5 (N.D. Ill. Nov. 8, 2011). To prevail under this variation of the express policy theory, a plaintiff must adduce "more evidence than a single incident" of unconstitutional behavior. *Id.* at *5.

In his response to the City's motion for summary judgment, Lopez claims four explicit policies were the cause of his alleged constitutional injury: (1) Municipal Code Sec. 4-68-110; (2) Chicago EMS Policies and Procedures; (3) CPD Special Order S03-08; and (4) CPD Special Order S02-01-04.[3] However, Lopez never identifies specific language in any of these polices which is "explicitly" violative of a person's constitutional rights when applied. Accordingly, the Court analyzes his

---

[3] In an answer to an interrogatory propounded by the City, Lopez also identified General Order 02-08 and General Order 02-08-03 as policies which gave rise to his alleged constitutional injury. CSOF [119] Ex. B. Lopez, however, failed to respond to the City's arguments regarding these policies. Pl.'s Resp. Chi. Mot. Summ. Judg. [129]. This failure to respond constitutes waiver. *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 594 (7th Cir. 2010).

6

claims under the "second" variation of the "express policy" test. *See Calhoun*, 408 F.3d at 381 (analyzing plaintiff's claims under the "second" variation "[b]ecause he cannot point to any language in the jail's policy that is constitutionally suspect").

*Calhoun* flows from established Supreme Court precedent. In *City of Canton v. Harris*, 489 U.S. 378 (1989), plaintiff challenged a policy that forced patients to go to the hospital in certain situations. More specifically, the policy provided that the city jailer "**shall** . . . have [a person needing medical care] **taken** to a hospital for medical treatment." *Harris*, 489 U.S. at 386-87 (emphasis added). The Supreme Court determined that this formulation, despite its coercive tone, was constitutional: "There can be little doubt that on its face the city's policy regarding medical treatment for detainees is constitutional." *Id*. *Canton* also held that "without more," a city would not be liable under § 1983 "if one of its employees happened to apply the policy in an unconstitutional manner." *Id.* at 387.

Given the lack of facially suspect language in this case, Lopez was obligated to present evidence suggesting that the regulations at issue gave rise to a substantial number of impermissible applications. *Calhoun*, 408 F.3d at 381 ("Because he cannot point to any language in the jail's policy that is constitutionally suspect, he must provide enough evidence of custom and practice to permit an inference that the County has chosen an impermissible way of operating."); *Hughes*, 2011 WL 5395752, at *5 (a claim that an express policy, by omission, fails to address certain issues "requires more evidence than a single incident to establish liability").

7

Lopez has failed to meet his burden on this score. He has not provided any evidence of similar incidents of forced medical care resulting from the use of a taser; in fact, he has not adduced any evidence of similar incidents resulting from compliance with these policies at all. Accordingly, Lopez may not pursue a *Monell* claim against the City on an "express policy" theory.

B.  **Custom or Practice**

Lopez also asserts that the City has a custom or practice of failing to train its EMS and CPD employees on the use of force. Pl.'s Resp. Chi. Mot. Summ. Judg. [129] at 6-7. He claims that this failure to train was the moving force behind his alleged constitutional injuries. *Id.* To prevail on this "custom or practice" theory, a plaintiff must establish that a pattern of similar deprivations is so "permanent, well-settled, and widespread as to constitute custom or usage." *Wragg v. Village of Thorton*, 604 F.3d 464, 468 (7th Cir. 2010). "[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except it must be more than one instance, or even three." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009). When the moving force behind the injury "is at least as likely to be the [City]'s one-time negligen[ce] . . . peculiar to" the instance at hand, then the plaintiff has not established a practice or custom. *Wragg*, 604 F.3d at 468 (internal quotation omitted).

Under the custom or practice theory, a plaintiff must also establish the requisite culpability of the municipality and a causal link between the alleged custom and the alleged constitutional injury. *Harris*, 489 U.S. at 385. To establish

8

the requisite culpability of the municipality, a plaintiff must show that the alleged municipal practices were carried out with "deliberate indifference" to their known and obvious consequences. *Id.* at 388. When establishing deliberate indifference, a showing of simple, or even heightened, negligence will not suffice. *Id.* To establish causation, a plaintiff must show that the alleged custom or practice was "the *moving* force behind the constitutional violation." *Thomas*, 604 F.3d at 306 (citing *Woodward v. Corr. Med. Services of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)).

### 1. Failure to Train

To prove a custom or practice for a failure to train specifically, a plaintiff must show that the failure to train was carried out with deliberate indifference to its known and obvious consequences. *Harris*, 489 U.S. at 388. Indeed, the defendant's conduct must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)); *see also Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir. 1989) ("Nor can plaintiffs prevail merely by proving that an accident or injury could have been avoided had an officer received enhanced training forestalling the particular conduct resulting in the injury. Even adequately trained officers sometimes err, and such error says little about their training program or the legal basis for liability."). Typically, a "pattern of similar constitutional violations by untrained

9

employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Bryan County, Oklahoma v. Brown*, 520 U.S. 379, 409 (1997) (internal quotation omitted).

As previously discussed, *see supra* at *8, Lopez has failed to adduce evidence of "[a] pattern of similar constitutional violations," and thus, his claim fails. *Bryan County, Oklahoma*, 520 U.S. at 409; *see also Thomas*, 604 F.3d at 303 (observing that in order for the allegedly unconstitutional conduct to amount to a custom or practice it must have occurred more than once). Lopez has not even shown that his injury would have been avoided if the Defendant CPD Officers had received more advanced training (and any such evidence, standing alone, would be insufficient). *See Erwin*, 872 F.2d at 1298 (holding that a plaintiff cannot establish liability under *Monell* "merely by proving that that an accident or injury could have been avoided had an officer received advanced training").

### 2. Deliberate Indifference

To be sure, Lopez does proffer some "material" in support of his claim that the City's behavior reflects the requisite deliberate indifference. As noted above, he points to: (1) a newspaper article chronicling the increase in taser use by the CPD, PSOF [128] ¶ 15; (2) reports commemorating the dismissal of IPRA investigations into allegations of excessive force, *id.* ¶¶ 16-17; (3) statements by Mayor Rahm Emanuel acknowledging a "code of silence" within the CPD, *id.* ¶¶ 27-30; (4) letter requests from prominent politicians encouraging the DOJ to investigate the CPD, *id.* ¶ 35; and (5) the alleged failure of the IPRA to investigate Lopez's own case, *id.* ¶

19-25. Taking each category of material in turn, we conclude that the evidence is "so one-sided that one party must prevail as a matter of law." *Walkers v. Peters*, 863 F.Supp. 671, 672 (N.D. Ill. 1994).

Lopez first argues that a recent increase in the use of tasers by the CPD shows deliberate indifference to repeated complaints of constitutional violations. Pl.'s Resp. Chi. Mot. Summ. Judg. [129] at *8. However, a simple increase in the use of tasers does not imply that there has been a similar increase in constitutional violations. Nor does Lopez adduce evidence of any such connection. There is simply no evidentiary basis in this record for a potential factfinder to infer that there has been an increase in *unconstitutional* conduct correlated with an increase in the use of tasers. Similarly, nothing in the record suggests a need for more or different training that is so obvious that policymakers at the City can "reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 389. Finally, we note that the "evidence" Lopez presents on the increase in taser use is "inadmissible hearsay." *Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001).

Likewise, based upon the record presented here, the purported lay opinions and hearsay statements of Mayor Rahm Emanuel concerning an alleged "code of silence" within the CPD are inadmissible. *Id.* Ostensibly, these alleged statements were made in an op-ed in the *Chicago Tribune*, in a press release, during a television interview, and in a statement to the City Council. PSOF [128] ¶¶ 27-30. In addition to being inadmissible, the Mayor's statements are simply not probative

11

of the questions at hand or the defendants at issue. *See Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (plaintiffs may not introduce generalized evidence of a "code of silence"); *see also Smith v. City of Joliet*, 965 F.2d 235, 237 (7th Cir. 1992) ("[Plaintiff's] accounts of these incidents are almost exclusively based on hearsay and are unsupported by affidavits or depositions of any kind; they are simply bald allegations.").

The requests made by political leaders to the DOJ are similarly unavailing. The requests are inadmissible, do not concern the specific matter at hand, and were written years after Lopez's tasing. PSOF [128] ¶ 35.

Lopez also attempts to prove deliberate indifference by showing that the City of Chicago "fail[ed] to act in response to repeated complaints of constitutional violations by its officers." Pl.'s Resp. Chi. Mot. Summ. Judg. [129] at *8 (quoting *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029-30 (7th Cir. 2006)). More specifically, he asserts that the repeated dismissal of excessive force investigations by the IPRA is evidence of deliberate indifference on the part of the City. *Id.* Lopez's only support on this point comes in the form of statistics that indicate that 2% of excessive force investigations result in a sustained finding against individual police officers. *Id.* at *9. Without any evidence regarding whether the 2% sustain rate accurately reflects the actions of each officer in each case, Lopez jumps to the conclusion that the 2% rate, by itself, somehow proves that the City is choosing not to punish officer misconduct. In a further illogical jump, Lopez also claims that this general failure to punish police misconduct, in turn, specifically caused his alleged

constitutional injury.[4] *Id.* Here again, Lopez has failed to take the necessary step of presenting cognizable evidence of a causal connection between this data point and his tasing. For example, he offers no evidence that any of the officers at the scene had a history of using excessive force. Nor does he suggest that additional or more thorough IPRA investigations would have revealed that any of the officers involved here actually possessed a history of using excessive force. There is simply no "causal link" between Lopez's injury and the data he cites. Thus, this evidence does not help Lopez resist the City's motion for summary judgment.

Finally, Lopez suggests that the IPRA's alleged failure to investigate Lopez's own case is evidence of deliberate indifference. This argument is divorced from logic and the undisputed timeline in this case. Any alleged failure to investigate Lopez's own incident necessarily happened after he was injured, such that this failure cannot be used to prove deliberate indifference at the time of the injury. Lopez has not presented any evidence that "require[s] submission to a jury." *Walkers v. Peters*, 863 F. Supp. 671, 672 (N.D. Ill. 1994).

## IV. Alternative Claims

In his response to the City's motion for summary judgment, Lopez for the first time seems to allege that the City was liable for its employees' violation of a duty not to harm. Pl.'s Resp. Chi. Mot. Summ. Judg. [129] at 3. This argument is more thoroughly addressed in the Court's ruling on Defendant Dubiel's motion for

---

[4] As an aside, this Court notes that Lopez fails to reckon with the fact that Illinois law mandates that all complaints for excessive force "must [be] supported by a sworn affidavit." *See* Illinois Uniform Peace Officers' Act, 50 ILCS 725/3.8(b). In order to resolve the pending motion, however, this Court need not address (in light of the record as a whole) Plaintiff's failure to address the implications of this legal requirement.

summary judgment, entered contemporaneously with this Order. For the purposes here, it suffices to note that: (1) Plaintiff's argument on this point is so underdeveloped that it has been waived, *De v. City of Chicago*, 912 F. Supp. 2d 709, 734 (N.D. Ill. 2012) ("Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments."); (2) the undisputed facts here remain facially inconsistent with the traditional "duty not to harm" analysis; and (3) Plaintiff has failed to tie any such violation to any custom, policy or practice of the City. Accordingly, any related *Monell* claim must fail.

## V.     Conclusion

For the foregoing reasons, the City of Chicago's motion for summary judgment is granted in full.


IT IS SO ORDERED

Dated: August 22, 2016                               Entered:

_____
John Robert Blakey
United States District Court Judge

14