# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Jose Lopez, by his wife and next best friend, Sandra Cardiel,<br><br>    Plaintiff,<br><br>v.<br><br>Stevan Vidljinovic, Star No. 4051, et al.,<br><br>    Defendants. | Case No. 1:12-cv-5751<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Lopez, by his wife and next best friend Sandra Cardiel, sued Chicago Police Officers Stevan Vidljinovic, John Guettler, Jose Valdovinos, Antonio Valenzuela, Manuel Gonzalez, Armando Alamillo, Joseph DeMonica and Daniel Lopez, Supervising Sergeant Mark Kearns, Watch Commander Robert Dubiel, Paramedics Sandra Cheatam and Julio Mendoza, and the City of Chicago. Plaintiff alleges five causes of action: (1) unlawful seizure in violation of 42 U.S.C. § 1983; (2) excessive force in violation of 42 U.S.C. § 1983; (3) failure to intervene in violation of 42 U.S.C. § 1983; (4) assault and battery; and (5) intentional infliction of emotional distress. Fourth Am. Compl. [54] ¶¶ 91-128. Defendant Watch Commander Robert Dubiel ("Dubiel") moved for summary judgment on all counts. Dubiel Mot. For Summ. Judg. [114]. That motion is granted in full.

I. Background[1]

On July 22, 2011, at approximately 3:00 a.m., Plaintiff Jose Lopez began having chest pains. CSOF [119] ¶ 4. Lopez's friend, Guadalupe Guzman, called 911 shortly thereafter. PSOF [128] ¶ 1. Firefighters and paramedics arrived on the scene at approximately 3:30 a.m. *Id.* ¶¶ 1, 3. Paramedics Sandra Cheatam and Julio Mendoza attempted to administer medical treatment to Lopez. DSOF [115] ¶ 8. Personnel at the scene determined that the situation was a medical emergency and called the Chicago Police Department ("CPD") for assistance. *Id.* Defendant CPD Officers Stevan Vidljinovic, John Guettler, Antonio Valenzuela, Manuel Gonzalez, Jose Valdovinos, Armando Alamillo, Joseph De Monica, Daniel Lopez, and Mark Kearns ("Defendant CPD Officers") all responded to the call for CPD assistance. *Id.* ¶¶ 10-13.

The parties dispute what happened after the Defendant CPD Officers arrived. Lopez asserts that the Defendant CPD Officers ignored his refusals of medical treatment. CSOF [119] ¶ 5. CPD Officer Vidljinovic asserts that Lopez moved towards him with his fists clenched, in an aggressive manner. DSOF [115] ¶ 31. The parties do not dispute that Officer Vidljinovic eventually tased Lopez. *Id.* ¶ 13. After he was tased, Lopez was transported to Mt. Sinai Hospital. *Id.* ¶ 14.

At the time of the tasing, Robert Dubiel was the Watch Commander working inside the 10th District CPD station. *Id.* ¶ 15. Dubiel was not at the scene of the

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to Defendant Robert Dubiel's statement of undisputed facts [115], with Plaintiff's responses where applicable [133]. "CSOF" refers to the City of Chicago's statement of undisputed facts [119], filed in support of its parallel motion for summary judgment, with Plaintiff's responses where applicable [127]. "PSOF" refers to Plaintiff's statement of undisputed facts [143].

2

tasing and did not personally witness the incident. *Id.* ¶¶ 16-17. At approximately 3:45 a.m., Dubiel heard a call over the radio about a taser deployment. By the time Dubiel heard the call regarding the incident with Lopez, the taser had already been deployed. *Id.* Ex. L at 70. Pursuant to CPD policy, as a Watch Commander, Dubiel was required to interview the officer involved, download the taser information from the device, ensure the officer involved completed a tactical response report, interview the person tased if available, ensure compliance with the CPD's use of force policy and approve of the tactical response report. *Id.* ¶ 23. Consistent with that policy, after the incident, Dubiel interviewed Officer Vidljinovic (the tasing officer) and Sergeant Kearns (the on-site supervising officer). *Id.* ¶ 26-27. Dubiel recalls that Officer Vidljinovic told him that Lopez was not responding to verbal commands, was not making sense and eventually clenched his fists and moved at the officers in an aggressive manner. *Id.* ¶ 29-31. Officer Vidljinovic also told Dubiel that he had mistakenly filed a battery report but was not touched in any way by Lopez. PSOF [143] ¶ 26. Dubiel did not seek to interview Lopez, given that he was hospitalized after he was tased. DSOF [115] ¶ 36.

Based on the information he received from the officers who were present, Dubiel believed that Lopez was under the influence of drugs or alcohol and therefore unable to accept or refuse medical treatment. *Id.* ¶ 38. As part of his duties, Dubiel also downloaded the information from the taser; at that time, Dubiel was not aware of any other alleged excessive force incidents involving Officer

3

Vidljinovic and had no reason to suspect any red flags about the incident.[2] *Id.* ¶¶ 41-43. Dubiel then approved the tactical response report completed by Vidljinovic and concluded that Vidljinovic's actions complied with the CPD's use of force policy. *Id.* ¶ 45. Dubiel was not required to (and in fact did not) check to see if the incident had been recorded on any available dashcams. *Id.* ¶ 23.

II. **Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir.2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District,* 743 F.3d 524, 528 (7th Cir. 2014).

III. **Analysis**

Lopez has brought claims for: (1) unlawful seizure in violation of 42 U.S.C. § 1983; (2) excessive force in violation of 42 U.S.C. § 1983; (3) failure to intervene in violation of 42 U.S.C. § 1983; (4) assault and battery; and (5) intentional infliction of

---

[2] Nor has Lopez offered any evidence of previous misconduct (or even complaints of misconduct) by Vidljinovic.

4

emotional distress. Fourth Am. Compl. [54] ¶¶ 91-128. Lopez argues that Dubiel is liable for all five counts pursuant to a theory of supervisory liability, given that: (1) he was the active Watch Commander at the time of the incident; (2) he approved Officer Vidljinovic's use of force report; and (3) he failed to adequately investigate the incident. The Court addresses each argument in turn.

A. **Supervisory Liability**

To be liable under § 1983 for the conduct of subordinates, a supervisor must be personally involved in that conduct. *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). Supervisory liability will be found if the supervisor has knowledge of the conduct and approves of it and the basis for it. *Chaves v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). However, proof of negligence or even gross negligence is insufficient to impose liability. *Mayes v. City of Hammond, Ind.*, 442 F. Supp. 2d 587, 634 (N.D. Ind. 2006). Liability may also attach where a supervisor knows of unconstitutional acts, but fails to take corrective measures. *Id.* at 635. However, isolated instances of unconstitutional conduct ordinarily are insufficient to establish the supervisor's knowledge. *Id.* Ultimately, the supervisor must "know about the conduct and facilitate it, condone it, or turn a blind eye for fear of what they might see. They must either act knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1998).

### 1. Liability as Watch Commander

Lopez contends that Dubiel, as the active Watch Commander at the time of the incident, is liable under § 1983. It is undisputed that Dubiel was not present at the scene. DSOF [115] ¶ 16. On the night of the incident, Dubiel heard a call over the radio about a taser deployment. *Id.* ¶¶ 18-19. Lopez acknowledges that the taser deployment and the call over the radio were made at approximately the same time, such that the taser had been deployed by the time Dubiel could respond. *Compare id.* Ex. L at 70 *with* [132] Tab 29 at 148. It is similarly undisputed that Dubiel was not aware of any other excessive force incidents involving Officer Vidljinovic at the time of the incident. DSOF [115] ¶¶ 42-43. Indeed, the record contains no evidence suggesting that other such incidents have occurred. Given these undisputed facts, it is inappropriate to extend supervisory liability to Defendant Dubiel based solely upon his position as the active Watch Commander.

In *Kincaid v. Sangamon County*, the plaintiff argued that a defendant sheriff was liable for an alleged constitutional injury solely because he was the sheriff at the time. No. 09-cv-3053, 2015 WL 4624631, at *4 (C.D. Ill. Aug. 3, 2015). The *Sangamon* court granted the sheriff's motion for summary judgment, after reasoning that plaintiff's argument would effectively amount to the imposition of respondeat superior liability, which is not allowed under § 1983. *Id.*; *see also Miller v. Harbaugh*, 698 F.3d 956, 960 (7th Cir. 2012).

The Seventh Circuit has also declined to extend supervisory liability to cover defendants who are not present at the alleged unconstitutional violation. *See*

6

*Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). Although *Gossmeyer* concerned an allegedly unconstitutional search, its operative standard is on point here—"[N]one of these defendants was present during the search and, therefore, had no personal involvement in it. Even assuming the search deprived [plaintiff] of her constitutional rights, none of these defendants was present to turn a blind eye." *Id.*

*Sangamon* and *Gossmeyer* are controlling here. In *Sangamon*, as in this case, the defendant was not present during the alleged constitutional derivation and no information had been relayed to the defendant prior to the injury. *See supra* at *3. Dubiel is not amenable to suit for simply serving as the Watch Commander, particularly given the absence of any competent evidence suggesting Dubiel was present at the scene, "turned a blind eye" to any predicable violations, or had any reason to believe an unconstitutional deprivation would take place.

### 2. Liability for Failure To Take Corrective Measures

Lopez further contends that Dubiel is amenable to suit based upon his approval of Officer Vidljinovic's use of force report. Pl.'s Resp. Dubiel Mot. Summ. Judg. [135] at *12. Lopez argues that the justification in the report (that Lopez had battered Vidljinovic) was patently false, and supposedly Dubiel could have easily discovered the report's falsity by simply looking at Vidljinovic. *Id.* He also argues that Dubiel contravened his training by not finding Vidljinovic's taser use problematic. *Id.* In *Monell* terms, these allegations amount to a claim for failure to take corrective measures. *See Mayes v. City of Hammond, Ind.*, 442 F. Supp. 2d

7

587, 634 (N.D. Ind. 2006). To find a defendant liable for failing to take corrective measures, there must be evidence that the defendant was "on notice of unconstitutional acts." *Id.* at 635.

The Seventh Circuit explored this principle in *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182-83 (7th Cir. 1994). Both parties in *Kernats* acknowledged that the supervisor defendant was not present to approve or condone the ostensible constitutional injury at the time it occurred. *Id.* The supervisor defendant, however, did write to plaintiffs a few days after the incident, in an attempt to "explain and justify" the other defendant's actions. *Id.* The Court declined to extend liability to the supervisor for simply attempting to "dissuade the [plaintiffs] from taking their case to the media (or the courts)." *Id.* The Seventh Circuit's reasoning was animated in large part by the understanding that by the time the supervisor wrote to the plaintiffs, "any unconstitutional seizure that may have taken place had been accomplished and [the supervisor] could have done nothing to undo that fact. [The supervisor's] behavior is not the type of involvement in a constitutional violation that gives rise to § 1983 liability." *Id.*

In this case, it is undisputed that Dubiel was not aware of any other excessive force incidents involving Vidljinovic, such that he was not "on notice." *Compare Mayes*, 442 F. Supp. 2d at 635 *with* DSOF [115] ¶¶ 42-43. It is also undisputed that Dubiel first learned of the incident after Vidljinovic used his taser, such that he "could have done nothing to undo that fact." *Kernats*, 35 F.3d at 1183 (7th Cir. 1994). Even if Lopez ultimately proves that Vidljinovic's tasing was

8

unconstitutional at trial, Dubiel's review of the report commemorating the incident is "not the type of involvement in a constitutional violation that gives rise to § 1983 liability." *Id.* At most, Lopez has adduced evidence from which a reasonable factfinder could possibly infer that Dubiel was negligent in approving the use of force report; however, "proof of negligence or even gross negligence is insufficient." *Mayes*, 442 F. Supp. 2d at 649.

### 3. Failure to Conduct a Reasonable Investigation

A supervisory defendant in a § 1983 claim cannot be held liable for "a mere failure to investigate." *Sandra T.E. v. Sperlik*, 639 F. Supp. 2d 912, 922 (N.D. Ill. 2009), *aff'd sub nom. T.E. v. Grindle*, 599 F.3d 583 (7th Cir. 2010). Lopez nevertheless contends that Dubiel is liable for "turning a blind eye" to the incident at issue by: (1) not ensuring that all of the vehicles had working dashcams when they were deployed; (2) not checking to see if any dashcams had recorded the incident; (3) not driving to the scene after he heard about the incident; and (4) not interviewing Lopez, Maria Guzman or the other officers who were at the scene. Pl.'s Resp. Dubiel Mot. Summ. Judg. [135] at *10-13.

Dubiel acknowledges that he did not check the dashcams, drive to the scene, or interview Lopez. *See supra* at *3. Nevertheless, he argues that Plaintiff's allegations, without more, are not adequate to support a reasonable inference that he turned a "blind eye" to the incident at issue. It is undisputed that Dubiel interviewed Officer Vidljinovic and Sergeant Kearns; downloaded the relevant information from the taser at issue; reviewed the tactical response report completed

9

by Vidljinovic; and analyzed Vidljinovic's actions pursuant to the CPD's use of force policy. *See supra* at *3-4. While theoretically additional steps might have been taken in hindsight, Dubiel's reasonable investigation was not unlawful in a constitutional sense.

As a preliminary matter, Lopez's arguments concerning the dashcams put the proverbial cart before the horse. Plaintiff states that he has been unable to secure the dashcam footage of the incident in discovery, and even seems to insinuate that the CPD may have affirmatively tampered with either the cameras or the tapes in this case. Pl.'s Resp. Dubiel Mot. Summ. Judg. [135] at *13-14. The record, however, provides no evidentiary basis for this inference. If Plaintiff has a spoliation argument to assert, he should meet-and-confer with defense counsel, and, if resolution proves elusive, file a motion. At this point the Court has only the benefit of Plaintiff's speculation and an inadmissible newspaper article regarding certain incidents at the CPD unrelated to this case. *Chicago Firefights Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001). Plaintiff's pure speculation is "insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996).

The parties disagree as to whether Dubiel's investigation comported with applicable CPD orders, *see supra* at *3-4, but this dispute misses the point. Supervisory liability for § 1983 claims does not turn on a defendant's technical compliance with administrative protocols. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations,

not violations of state laws or, in this case, departmental regulations and police practices."). Under well-settled law, Plaintiff cannot establish Dubiel's liability simply by pointing to purported violations of departmental regulations when conducting the investigation. *Sandra T.E. v. Sperlik*, 639 F. Supp. 2d 912, 922 (N.D. Ill. 2009) (defendant cannot be held liable for "a mere failure to investigate."), *aff'd sub nom. T.E. v. Grindle*, 599 F.3d 583 (7th Cir. 2010); *see also Paine v. Cason*, 678 F.3d 500, 506 (7th Cir. 2012) (supervisor defendant "can be liable only for what he did; there is no doctrine of supervisory liability for the errors of subordinates").

Indeed, far from failing to investigate, the undisputed facts show that Dubiel conducted a reasonable investigation, *see supra* at *3, albeit one that Plaintiff would supplement with additional interviews and a search for potentially-nonexistent dashcam footage. Plaintiff's speculative dissatisfaction with the scope of Dubiel's investigation is not an appropriate basis from which a factfinder could infer liability. Consequently, summary judgment is appropriate.

### B. **Alternative Arguments**

In his response to Dubiel's motion for summary judgment, Lopez for the first time seemingly alleges that Dubiel is liable for the common law tort of medical battery and a violation of a duty not to harm. Pl.'s Resp. Dubiel Mot. Summ. Judg. [135] at 3-4. These untimely arguments, however, remain underdeveloped.

Lopez's entire discussion of his medical battery theory consists of a block quote from the Illinois Appellate Court's decision in *Sekerez v. Rush University Medical Center*, 954 N.E.2d 383 (Ill. App. Ct. 2011). To a large degree, this Court is

11

left to guess at Plaintiff's exact theory, but in any event, the record renders the doctrine inapplicable to Defendant Dubiel. The elements of a "medical battery claim are: (1) an intentional act on the part of the defendant; (2) a resulting offensive contact with the plaintiff's person; and (3) a lack of consent." *Id.* at 394. It is undisputed that Defendant Dubiel never contacted Lopez's person, and Plaintiff has not explained how Defendant Dubiel could potentially be liable for such contact in his supervisory capacity.

Plaintiff's discussion of the duty to provide medical care is similarly undefined. Lopez correctly notes that while the government "has no affirmative constitutional duty to provide medical services," such a duty can arise when (1) a person is in government custody, or (2) when state action "creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been." Pl.'s Resp. Dubiel Mot. Summ. Judg. [135] (quoting *Brownell v. Figel*, 950 F.2d 1285, 1290 n.4 (7th Cir. 1991)). Here again, Plaintiff fails to articulate a legal theory tied to the facts in this case. At the very least, this Court can conclude that nothing presented creates a disputed factual question which would preclude summary judgment for Defendant Dubiel.

IV. **Conclusion**

For the foregoing reasons, Watch Commander Dubiel's motion for summary judgment is granted in full.

IT IS SO ORDERED

Dated: August 22, 2016               Entered:

                                                                     _____
                                                                     John Robert Blakey
                                                                     United States District Court Judge