**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 CV 05751 . |
| v. | ) ) | Honorable John R. Blakey, Judge Presiding. |
| STEVAN VIDLJINOVIC, *et al.,* | ) ) | |
| Defendants. | ) | JURY DEMANDED |

<u>**DEFENDANTS' MOTIONS IN LIMINE NO. 1-18**</u>

James G. Sotos
Elizabeth A. Ekl
Joseph M. Polick
Laura M. Ranum
THE SOTOS LAW FIRM, P.C.
550 E. Devon Avenue, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
jpolick@jsotoslaw.com

Kelly C. Bauer
City of Chicago - Law Department
30 N. LaSalle Street - Suite 900
Chicago, Illinois 60602
(312) 744-5170
kelly.bauer@cityofchicago.org

1.    **Motion to Bar Generalized Evidence of Alleged Police Code Of Silence, including any Statements Regarding Code of Silence Made by Mayor Emanuel**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from testifying to, arguing, or offering any testimony that officers generally lie, cover-up, or otherwise maintain a "code of silence" to protect their fellow officers. This Court should exclude such evidence because it is not relevant to the jury's determination of any issues in this case or the credibility of the officers' testimony (FED. R. EVID. 401) and would be overwhelmingly prejudicial to Defendants. (FED. R. EVID. 403.)

In this trial, the only relevant inquiry is whether Defendants violated Plaintiff's rights. As such, general evidence of a police "code of silence" or similar slander has no bearing on the jury's assessment of Defendants' conduct. *See Basile v. Ondrato*, 2003 WL 22953340, at *2 (N.D. Ill. Dec. 12, 2003) (no evidence or argument may be offered regarding a police "code of silence" or widespread cover-up of police misconduct, including the use of the phrase "code of silence"). This case must be tried "on the basis of the evidence adduced in the courtroom, not on the basis of generalized and speculative arguments and innuendos about 'what police officers or law enforcement agents do (or do not) do.'" *Carlson v. Banks*, 2007 WL 5711692, at *14 (N.D. Ill. Feb. 2, 2007). In a court of law, justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices." *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (quoting *Sanders v. City of Indianapolis*, 837 F. Supp. 959, 963 (S.D. Ind. 1992)). Additionally, because such generalized evidence has no specific relationship to the Defendants testifying in this case, it is not relevant to the jury's determination of their credibility and is akin to impermissible propensity evidence. *See, e.g.*, *Ratliff v. City of Chicago*, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012) (collecting cases); *Martinez v. City of Chicago*, 2016 WL 3538823 at *10 (N.D. Ill. June 29,

1

2016) ("…any "code of silence" or "all cops lie" would be unduly prejudicial and would constitute improper propensity evidence."); *Pierce v. Ruiz*, 2016 WL 5912890 at *4 (N.D. Ill. Oct. 11, 2016) ("generalized allegations, separate and apart from what may be true of the officers named as defendants here, are not helpful and akin to impermissible propensity evidence.") (citation omitted*).*

Furthermore, even if general evidence of a police "code of silence" were somehow relevant in this case (and it is not), this Court should nonetheless exclude such evidence because its prejudicial effect substantially outweighs its probative value. *See Cooper v. Dailey*, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012); *Bruce v. City of Chicago*, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011); *Hill v. City of Chicago*, 2011 WL 3205304, at *5 (N.D. Ill. July 28, 2011); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010); *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Indeed, given its lack of connection to the specific issues and persons in this case, "'[i]ts probative value is very, very slim, and its prejudicial [impact] is very, very high.'" *Shaw v. City of New York*, 1997 WL 187352, at *8 (S.D.N.Y. Apr. 15, 1997) (citation omitted).

In support of his code of silence argument, Plaintiff has filed a Motion to Compel Appearance and Testimony of Mayor Rahm Emanuel or, in the Alternative, Order Allowing Testimony Previously Given. (Dkt. 159.) For the reasons set forth herein, as well as those set forth in Defendants' Response to Plaintiff's Motion to Compel, Plaintiff should be barred from introducing generalized evidence of a code of silence, including any statements made by Mayor Emanuel regarding code of silence, his reformation of investigations of citizen complaints of alleged police misconduct, and any "task force" created to investigate complaints of police misconduct.

2

**2.      Motion to Bar Any Reference to Publicized Incidents of Alleged Police Misconduct**

Defendants move *in limine* to bar Plaintiff from making any reference to publicized incidents of alleged police misconduct, including, but not limited to, this incident and the highly publicized incidents of police-involved shootings in this jurisdiction and others.  Media accounts related to this case are unduly prejudicial and constitute inadmissible hearsay evidence. FED. R. EVID. 403 and 801.

References to other incidents are similarly irrelevant, inadmissible and unduly prejudicial under FED. R. EVID. 401, 402, and 403. In recent years and months, allegations of misconduct by members of the Chicago Police Department, have received, and at times even dominated, media coverage in the City's major newspapers, local news broadcasts and on the Internet. Certain allegations have even received nation-wide coverage. References to other allegations of police misconduct during this trial can only be intended to inflame the jury against the police in general and against Defendants in this particular case. Consequently, any testimony, evidence, argument or comments regarding the publicized actions of police officers should be barred pursuant to FED. R. EVID. 401, 402, and 403. Such references have no probative value, are highly inflammatory and overly prejudicial, and are irrelevant to the issues presented in this trial. *See, e.g.*, *Pierce v. Ruiz*, 2016 WL 5912890 at *4 (N.D. Ill. Oct. 11, 2016) ("Generally, 'evidence of police conduct unrelated to the [defendants] in this case has only minimal probative value and is highly inflammatory and prejudicial.'") citing *Fox-Martin v. Cnty of Cook,* No. 09 C 1690, 2010 WL 4136174 at *4 (N.D. Ill. Oct. 18, 2010) ("Speculation that there may be instances in which such evidence might be admissible is insufficient to withstand a motion in limine seeking to limit evidence of publicized instances of police misconduct.") *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010); *Redmond v. City of Chicago*, 2008 WL 539164, at *6

3

(N.D. Ill. Feb. 26, 2008); *Saunders v. City of Chicago*, 320 F. Supp.2d 735, 740 (N.D. Ill. 2004);

*Heflin v. City of Chicago*, 1996 WL 28238, at *3 (N.D. Ill. Jan. 22, 1996).

### 3. Motion To Bar Evidence or Argument of Violations of CPD General Orders, Rules and Regulations

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses

from testifying to, arguing, or offering any testimony about the Chicago Police Department's

("CPD") internal directives, rules or regulations, or CPD's general and special orders. CPD

General and Special Orders and Rule and Regulations contain written directives for police

activities both in specific situations and for general conduct. Any attempt to introduce such

written directives promulgated by the CPD in an attempt to suggest that Defendants violated the

internal procedures of the CPD in the course of their contact with Plaintiff would be improper.

Such evidence is irrelevant, and any probative value it may have would be substantially

outweighed by the danger of unfair prejudice and confusion of the issues. *See* FED. R. EVID. 401,

402, 403.

At issue here is whether Defendants violated Plaintiff's constitutional rights. Introduction

of evidence relating to CPD General Orders would be improper because "the violation of police

regulations or even a state law is completely immaterial as to the question of whether a violation

of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444,

454 (7th Cir. 2006)*; Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *Pasiewicz v. Lake*

*County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Courts look to federal law, not

state or municipal regulations, to determine the existence and scope of personal liberties

protected by the due process clause of the fourteenth amendment and the "reasonableness"

standard under the Fourth Amendment. *See Archie v. City of Racine*, 847 F.2d 1211, 1215-18

(7th Cir. 1988) (*en banc*); see also *Graham v. Connor*, 490 U.S. 386, 393-95 (1989); *Smith v.*

4

*Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992) ("Under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force"). The Seventh Circuit has consistently held that "42 U.S.C. 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Thompson,* 472 F.3d at 454.  What may not be expressly authorized by a police department's rules may be justified and constitutionally reasonable. The internal CPD guidelines also are irrelevant to Plaintiff's state law claims.  *See, Passarella v. NFI Interactive Logistics, LLC*, 12-CV-4147, 2016 WL 6134541, at *5-6 (N.D. Ill. Oct. 20, 2016).

Permitting Plaintiff to present evidence or suggest to the jury that the individual Defendants or other police officers may have breached some obligation they had to their employer through an "alleged" rules violation would also be overwhelmingly prejudicial to the Defendants in the defense of this matter.  A jury presented with such a "violation" would be unable to separate the purported rules violation, for which plaintiff has no claim, from the alleged constitutional violations regarding which the jury is deciding liability and damages.  The jury's inevitable confusion would only serve to obscure the central issues in this case.  *See Thompson*, 472 F.3d at 456-57; Fed.R.Evid. 403.  Accordingly, plaintiff should not be permitted to inject the possibility of rules violations into these proceedings by introducing evidence or arguing to the jury any CPD directives.

**4.     Motion To Bar Any Evidence or Reference to IPRA's Investigation and any FBI Investigation**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from testifying to, arguing, or offering any testimony referencing in any way the Independent Police Review Authority's ("IPRA") investigation or any FBI investigation regarding this incident. Investigations or conclusions made by a third-party fact-finder after the incident are

5

irrelevant - the sole finder of fact at trial is the jury. Furthermore, the very fact that an investigation was opened is unfairly prejudicial and could mislead the jury to believe that IPRA or the FBI believed or at least suspected that Defendant Officers engaged in misconduct. Moreover, IPRA's mission is to investigate officers for violating CPD regulations, not citizen's constitutional rights. Therefore, the probative value, if any, is substantially outweighed by the unfair prejudice to Defendants. *See, Bruce v. City of Chicago*, 2011 WL 3471074 at *6 (N.D. Ill. July 29, 2011) ("The potential prejudice from testimony about the IPRA investigation substantially outweighs its questionable probative value[.]"); *Paradiso v. Obaldo*, No. 07-CV-4247, 2009 WL 3272217 at *1 (N.D. Ill. Oct. 8, 2009) ("evidence that an investigation occurred and the decision reached [ ] are irrelevant" to constitutional claims). Thus all references to the IPRA and FBI investigations should be barred pursuant to FED. R. CIV. P. 401 and 403.

The Parties have all identified as trial exhibits two witness statements provided to IPRA. (Pl.'s Exs. 161 and 162; Defs.' Exs. 8 and 9.) Defendants have no objection to the use of these statements for the sole purpose of impeachment or refreshing recollection, so long as references to the statements are phrased neutrally without reference to IPRA or any form of an internal investigation. (*e.g.,* refer to it as a "prior statement").

5.    **Motion to Bar Any Evidence or Reference to the Recent DOJ Investigation and Report**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from testifying to, arguing, or offering any testimony referencing in any way the Department of Justice ("DOJ") investigation and the accompanying January 13, 2017 report. The DOJ report, released one week ago, includes findings regarding the CPD's use of force. According to the report, the investigation included a review of 170 officer-involved shootings and over 425 incidents of less-lethal force. (*See*, Pl. Ex. 200, p. 21.) The report does not include a

6

comprehensive list of all cases reviewed and provides no indication that the incident involving

Plaintiff was included. Introduction of this evidence will send an indication to the jury that

Plaintiff's case was either included in the review or fits a larger pattern of misconduct. As such,

the report is essentially a compilation of instances of unrelated police misconduct and should be

excluded because it is irrelevant and highly prejudicial. *See Saunders v. City of Chicago*, 320 F.

Supp.2d 735, 740 (N.D. Ill. 2004); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074,

at * 5 (N.D. Ill. July 29, 2011). Defendants do not condone any instance of police misconduct

and should not be associated with or forced to defend the conduct of others before the jury.

Reference to the report, which is completely unrelated to this incident, will only serve to activate

juror's prejudices, stereotypes and to improperly inflame the jury against police in general and

Defendant Officers in particular. Moreover, the goal of the DOJ Report, like an IPRA

investigation, was broader than assessment of the constitutional issues applicable here. As such,

the report is highly prejudicial. (*See*, Pl. Ex. 200, p. 21); *Paradiso v. Obaldo*, No. 07-CV-4247,

2009 WL 3272217 at *1 (N.D. Ill. Oct. 8, 2009) ("evidence that an investigation occurred and

the decision reached [ ] are irrelevant" to constitutional claims). Thus, any reference to the DOJ

investigation or report should be barred pursuant to FED. R. EVID. 401, 402, and 403.

**6.     Motion to Bar Undisclosed Witnesses and Evidence**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses

from testifying to, arguing, or offering any testimony relating to witnesses or evidence which

was not previously disclosed during discovery. The disclosure requirements of Rule 26 were

written to prevent parties from springing surprises at trial. FED. R. CIV. P. 37(c)(1) mandates that

if a party fails to disclose a witness or information pursuant to FED. R. CIV. P. 26 (a) or (e), "the

party is not allowed to use that information or witness to supply evidence [ ] at a trial, unless the

failure was substantially justified or is harmless." *See also, Fox-Martin v. County of Cook*, No. 09-CV-1690, 2010 WL 4136174, at *2 (N.D. Ill. Oct. 18, 2010) ("the parties are barred from using any witnesses, documents or other information not disclosed pursuant to Fed. R. Civ. P. 26 and 37."); *Thomas v. Big Lots Stores, Inc*., No. 10-CV-342, 2016 WL 1746366, at *3 (N.D. Ill. May 3, 2016) (holding that where late disclosure of witness was not substantially justified or harmless, "the automatic sanction of exclusion pursuant to Rule 37 is appropriate.") To the extent Plaintiff's proposed witnesses and exhibits include testimony or evidence which was not properly disclosed through the discovery process, it should be barred.

7.      **Motion to Bar Argument Or Innuendo that the Jury Should Punish or "Send A Message" to the City**

        Defendants move *in limine* to preclude Plaintiff from making any argument or innuendo that the jury should punish, admonish, warn, discourage or "send a message" to the City of Chicago by its verdict. *See Caldwell v. City of Chicago*, No. 08 C 3067, 2010 WL 380696, at *2 (N.D. Ill. Jan. 28, 2010) (excluding argument that the jury should punish, admonish, warn, discourage, or send a message to the City for the defendant officers' alleged misconduct). Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). In any event, as a matter of law, Plaintiff cannot recover punitive damages from the City of Chicago as a result of this occurrence (s*ee* 745 ILCS 10/2-102) and, therefore, any argument that an award sends a message to the City would be misleading and inappropriate. *Moore v. City of Chicago*, 2008 WL 4549137, at *6 (N.D. Ill. Apr. 15, 2008). Additionally, any reference to the City being punished would risk substantial unfair prejudice against the Individual Defendants because they, and not the City, would be obligated to pay any punitive damages award. FED. R. EVID. 403. This Court

8

should not risk the unfair inference, and should bar argument regarding "sending a message" to or "punishing" the City. *Caldwell v. City of Chicago*, 2010 WL 380696, at *2.

8. **Motion to Preclude Plaintiff from Advancing New Arguments and, Specifically, from Asking Jury to Consider Specific Damages Award or Range for the First Time During Rebuttal Closing Argument**

Defendants move *in limine* to preclude Plaintiff from advancing new arguments and, specifically, from asking the jury to consider a specific damages award or range for the first time during rebuttal closing argument. The purpose of rebuttal closing argument "is to respond to the arguments of the opposing party," not to advance new arguments. *Curlin v. Seaboard Foods, LLC*, 2015 WL 791290, at *2 (D. Mont. Feb. 25, 2015). Plaintiff should abide by this general rule. In particular, if Plaintiff intends to ask the jury to consider a specific damages award or range, Plaintiff should raise the issue during his opening closing argument so that Defendants may respond accordingly. In other words, Plaintiff should be barred from advancing new arguments and, specifically, from asking the jury to consider a specific damages award or range for the first time during his rebuttal closing argument. *See Ehrlich v. Cent. Transp., LLC*, 2014 WL 1404645, at *3 (N.D. W.Va. Apr. 10, 2014) (granting motion *in limine* to preclude the plaintiffs from arguing in rebuttal beyond the scope of issues raised in the defendants' closing arguments and, specifically, any statements to suggest to the jury a figure or verdict range regarding the value of the plaintiffs' alleged claims).

9. **Motion to Bar Counsel from Interpreting the CPD and CFD Office of Emergency Management and Communications Event Queries in their Questioning of Witnesses Without a Proper Foundation**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from testifying to, arguing, or offering any interpretation of the Office of Emergency Management and Communications (hereinafter referred to as "OEMC") event queries entries for

9

the Chicago Police Department and the Chicago Fire Department without a proper foundation. Throughout depositions in this litigation, plaintiff's counsel asked questions based on his own personal interpretation of the entries made in the OEMC event queries. Such questioning without a proper foundation at trial is inadmissible hearsay and should be precluded. FED. R. EVID. 801, 802.

**10. Motion to Bar Reference to or Argument that City Employees are Paid to Testify/Professional Witnesses.**

Plaintiff should be barred from referring to the fact that some witnesses employed by the City of Chicago are testifying while "on the clock" or as part of their job duties, are professional witnesses, or are otherwise being paid for their testimony. FED. R. EVID. 401-403. Defendant City of Chicago has voluntarily agreed (at no cost to Plaintiff) to facilitate the attendance of City employees, including those requested by Plaintiff. It would be disingenuous and unfair for Plaintiff to repay the City's professional courtesy by presenting in an unfair light the very measures required to make Plaintiff's witnesses available in the first place. Such argument or evidence is unfairly prejudicial, misleading and distracting for the jury, and force Defendants to waste even more time explaining the context of an irrelevant collateral issue. Thus, such statements should be barred pursuant to FED. R. EVID. 401 and 403.

**11. Motion to Bar Plaintiff's Counsel from Bringing Jose Lopez into the Courtroom to Display Him to the Jury**

Defendants move *in limine* to preclude Jose Lopez's presence from the courtroom. Plaintiff's counsel advised Defendants that he intends to arrange for Jose Lopez to be brought into the courtroom in a wheelchair. However, there is no evidence that Jose Lopez is competent to testify, and the appearance of his "wife and next best friend" in this lawsuit evidences the contrary. Accordingly, Jose Lopez's attendance at trial will only serve as prejudicial and

distracting demonstrative evidence of Lopez's current medical condition that will improperly appeal to the jury's emotions and sympathy, and unduly prejudice Defendants under FED. R. EVID. 403. As a result, Plaintiff should be barred from bringing Jose Lopez into the courtroom.

**12.    Motion to Bar Any Evidence, Testimony, Argument or References to the Impact, Effect, or Loss of Relationship to Any Third Party as a Result of Plaintiff's Injuries**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from testifying to, arguing, or offering any testimony that Plaintiff's injuries impacted, effected, or resulted in a loss of relationship to any third party, including Plaintiff's wife, children, girlfriend, siblings, and relatives. Not only are third-party damages inadmissible here, but they are also irrelevant to the jury's determination of any issues in this case, and any probative value they may have would be substantially outweighed by unfair prejudice and confusion of the issues. Defendants. FED. R. EVID. 401 & 403.

A party can only recover for indignities, humiliation and emotional distress that he personally experienced. "Fourth Amendment rights are personal rights which … may not be vicariously asserted." *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2022 (2014), quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969). Moreover, third-party damages, such as loss of society and emotional damages, are only appropriate in a wrongful death case or survival action. 740 ILCS 180/1(2016); 755 ILCS 5/27-6 (2016). Under Illinois law, a survival action allows recovery of damages for injuries sustained by the decedent up to the time of death; a wrongful death action covers the time after death and allows recovery for the injuries suffered by the next-of-kin due to the loss of the decedent rather than the injuries personally suffered by the decedent prior to death. *Wyness v. Armstrong World Indus., Inc.,* 131 Ill.2d 403, 409 (Ill. 1989). Here, Plaintiff is alive and there are no wrongful death or survival actions at issue. Accordingly, Plaintiff's minor children do not have a cause of action for loss of society due to Plaintiff's non-

11

fatal injuries. *Stevens v. Loverde*, No. 93 C 6129, 1994 WL 14658 at 3* (N.D. Ill. 1994); *See Reiser v. U.S.*, 786 F. Supp. 1334 (N.D. Ill. 1992); *Karagiannakos v. Gruber*, 274 Ill. App.3d 155, 157 (1st Dist. 1995) ("[a] clear and consistent line of cases in the Illinois Appellate Court holds that a minor has no cause of action for loss of parental consortium when the parent survives, no matter how seriously the parent is injured."); *Van de Veire v. Sears, Roebuck & Co.*, 178 Ill. App.3d 794, 796 (1st Dist. 1989). Without a wrongful death action, any emotional damages potentially claimed by Plaintiff's spouse and next of kin are also unavailable here. *Hammond v. System Transport, Inc.*, 942 F. Supp.2d 867, 871 (C.D. Ill. 2013) (citing 740 ILCS 180/1-180/2).

Lastly, loss of consortium damages are not available to Plaintiff's girlfriend or his wife. Loss of consortium claims must involve a legally recognized marital relationship – which he did not have with his girlfriend. *Monroe v. Trinity Hosp. Advocate*, 345 Ill. App.3d 896, 899 (1st Dist. 2004); *Sostock v. Reiss*, 92 Ill. App.3d 200, 206, 415 N.E.2d 1094, 1098 (1980). Plaintiff's wife, on the other hand, waived any potential loss of consortium claim when she failed to bring it at the pleading stage. *Huffman v. Grinnell*, 880 F. Supp. 1194, 1201-03 (N.D. Ill. 1995) (holding that a spouse's pleading for "substantial loss of services" was insufficient to establish loss of consortium as a claim or constitutional violation under § 1983).

Third-party damages are thus irrelevant to the jury's determination of any issues in this case, and any probative value would be slight compared to the substantial prejudice and confusion of the issues. FED. R. EVID. 401 & 403. As such, any mention of third-party damages should be barred.

13. **Motion to Bar Evidence or Argument that the City of Chicago will Indemnify any of the Individual Defendants for Compensatory Damages, or that the City is the "Deep Pocket"**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from testifying to, arguing, or offering any testimony that Defendants may be indemnified by their employer, the City of Chicago, for any portion of a judgment that may be entered against them. Whether or not the City provides indemnity is irrelevant to the issue of whether Defendants are liable for any acts they performed which may have proximately caused injury to Plaintiff. Moreover, allowing Plaintiff to make such references would be highly prejudicial to Defendants. For example, the jury may feel that even if there was no liability, Plaintiff should be compensated for his time and efforts in bringing the lawsuit, particularly in view of the fact that the City has the "deep pocket." Reference to indemnity is akin to reference to insurance, which is precluded by FED. R. EVID. 411. *Walker v. Saenz*, No. 91 CV 3669, 1992 WL 317188, at *3 (N.D. Ill. 1992); *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994) (holding that instructions to jury on indemnification in § 1983 action required new trial); *Green v. Baron*, 879 F.2d 305, 310 (8th Cir. 1989) (stating that instructions concerning indemnification are extremely prejudicial); *Griffin v. Hillke*, 804 F.2d 1052, 1057 (8th Cir. 1986) (declaring indemnification instructions to constitute reversible error). Accordingly, Plaintiff should be precluded from adducing or implying that Defendants may be indemnified or reimbursed by the City.

14. **Motion to Bar Solicitation of Media Coverage**

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from soliciting media coverage or communicating to the public or with members of the media about this lawsuit, Defendant Officers or the incident at issue in this case until the jury has delivered its verdict. Media coverage would likely include inadmissible evidence or arguments,

and could be consumed by potential jurors, thereby depleting the available pool of unbiased potential jurors and diminishing the parties' opportunity for a fair trial.

**15.     Motion in Limine to Bar Testimony of Plaintiff's Expert Phillip Hayden**

Defendants move pursuant to FED. R. EVID. 702 and 403 to bar the testimony of Plaintiff's police procedures expert, Phillip Hayden, and in support thereof state

### Background

On July 22, 2011, at approximately 3:25 a.m., Plaintiff Jose Lopez's girlfriend called "911" and informed the emergency operator that he was having trouble breathing. When Chicago Fire Department personnel arrived, they attempted to assess Lopez, but contend they could not do so because he was acting erratically, could not communicate intelligibly, and appeared to be under the influence of drugs or alcohol. Unable to safely assess Lopez, the Fire Department personnel called for police assistance. The police responded to the call, attempted to communicate with Lopez, but also contend they were unable to do so because he was acting erratically, could not communicate intelligibly, and appeared to be under the influence of drugs, specifically PCP. The police further contend that when one of the officers attempted to persuade Lopez to go to the ambulance, Lopez swung his arm at the officer prompting his partner to discharge his Taser one time at Lopez. After Lopez was Tased, the police and paramedics placed him on a gurney, and he was transported by the Fire Department ambulance to the hospital.

Plaintiff has retained Phillip Hayden, Ed.D. to offer expert testimony regarding police procedures. Defendants move to bar Hayden's testimony pursuant to FED. R. EVID. 702 and 403.

### Argument

The trial judge plays a "gatekeeping role" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).  Expert opinions are admissible only if "(1) the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) his testimony will assist the trier of fact...A court is expected to reject any subjective belief or speculation." *Ammons v. Aramark Uniform Services, Inc.,* 368 F.3d 809,816 (7th Cir. 2004). Plaintiff bears the burden of demonstrating by a preponderance of the evidence that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009).

The entirety of Hayden's testimony should be excluded because it usurps the role of the judge and jury, and improperly tells the jury how he believes the case should be decided. Additionally, Hayden's opinions violate well-established evidentiary principles and should be barred for the reasons discussed below.

**A.      Hayden's Testimony Should be Excluded in Its Entirety Because It is Unhelpful.**

The core factual dispute in this case is whether Plaintiff was able to communicate with the Defendant Officers and Paramedics at the scene and refuse the medical attention that was called for him (as Plaintiff contends), or whether he was acting erratically, could not communicate intelligibly, appeared to be under the influence of drugs, and thus required emergency medical attention (as Defendants contend).  With respect to Plaintiff's excessive force claim, the factual inquiry predominately focuses on Defendant Officers Guettler and Vidljinovic's interaction with Plaintiff. Defendants contend that when Guettler attempted to touch Plaintiff's elbow to guide him toward the ambulance, Plaintiff swung at him with clenched fists. It is undisputed that Vidljinovic then Tased Plaintiff once, with the Taser prongs striking his abdomen.

15

Hayden's expert opinion is as follows: Officers Vidljinovic and Guettler used excessive force in subduing Mr. Lopez by approaching him, laying hands on him and utilizing the Electronic Controlled Device (ECD). (*See* Ex. A, Hayden Report, at p. 4). Hayden's "conclusion . . . that the defendant used unreasonable force is not helpful to the jury and is inadmissible. He is simply telling the jury how to decide the case, and that he cannot do." *Davis v. Duran*, 277 F.R.D. 362, 372 (N.D. Ill. 2011) (barring similar opinion by police procedures expert). Such expert testimony has been held to constitute impermissible legal conclusion or to be otherwise unhelpful to the jury. *Id.* at 373 (and cases cited therein).

Expert opinions that an officer's use of force was or was not excessive "are inadmissible under Rule 702 because they are simply characterizations of law, which do nothing more than purport to instruct the jury as to the proper standards for reasonableness in use of force cases." *Davis*, 277 F.R.D. at 371. Such an opinion "would not be helpful, since under the Federal Rules of Evidence, it is the role of the judge, and not the witness, to instruct the jury on the applicable principles of law," and "by definition does not aid the jury in making a decision; rather it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Id.,* quoting *Nimely v. City of New York,* 414 F.3d 381, 397 (2nd Cir. 2005).

As a corollary to his main opinion, Hayden concludes that rather than using force the officers should have contacted mental health professionals to deal with Plaintiff. (Ex. A, pp. 6, 8.) However, he cannot identify these mental health professionals, or whether they were even available. (Ex. B, Hayden Dep. Tr. at pp. 162-65.) Hayden is not a medical doctor, psychiatrist, psychologist, or mental health expert. *Id.* at pp. 17-19. Nor does he hold himself out as having any expertise as a mental health professional. *Id.* at p. 19. Thus, his testimony provides no

specialized knowledge that would assist the jury's understanding of the evidence. FED. R. EVID. 702. It is speculative at best. All his opinion does is tell the jury, with the benefit of hindsight, that the Defendant Officers should have done something different. This is an improper analysis under the "objective reasonableness" standard set forth in *Graham v. Connor*, 490 U.S. 386, 396 (1989) for use of force claims, and is therefore contrary to the law on which the court will instruct the jury.

Accordingly, Dr. Hayden should be barred from opining that the Defendant Officers' use of force was excessive or unreasonable under the circumstances.

**B.     The Bases for Hayden's Opinion Regarding the Defendant Officers' Use of Force are Improper and Inadmissible.**

As bases for his opinion, Hayden contends the sources police departments rely on to guide them in the use of ECDs come from standards established by the International Association of Chiefs of Police (IACP), as well as cases from the Ninth Circuit Court of Appeals, and the United States Supreme Court's decision in *Graham*.  (Ex. A, p. 4.) He then uses the IACP standards and the three factors set forth in *Graham,* 490 U.S. at 396, (severity of the crime; whether the suspect poses an immediate threat to the safety of the officers or others; and, whether the suspect is actively resisting arrest or evade arrest by flight) as an outline to address the bases for his opinion.  (Ex. A, pp. 4-7.)

In addition to being an improper attempt to instruct the jury, Hayden's reliance on the three factors specified in *Graham* is legally misplaced, and therefore misleading to the jury. The Court did not intend this to be an exclusive list subject to mechanical application. 490 U.S. at 396 ("*including* the severity of the crime at issue, . . .)(emphasis added); *accord Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). Rather, the reasonableness of the use of force depends on the totality of the "facts and circumstances of each particular case." *Graham*, 490

17

U.S. at 396; *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Hayden's reliance on Ninth Circuit Court of Appeals cases is also misplaced. The controlling law here is the Seventh Circuit, which has had occasion to consider police use of force cases involving ECDs or Tasers. *See, e.g, Abbott v. Sangamon County*, 705 F.3d 706 (7th Cir. 2013); *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010).

Furthermore, testimony that the Defendant Officers violated police practices, policies or procedures is inadmissible because it misleads and confuses the jury, is irrelevant, and is more prejudicial than probative. FED. R. EVID. 401, 403. The Seventh Circuit "has consistently held that 42 U.S. C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *see e.g., Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). "In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the Federal constitution has been established." *Id.* In *Whren v. United States,* the Supreme Court ruled that, because police practices and regulations vary over time and from place to place, they are an unreliable gauge by which to measure the reasonableness of police conduct under the Fourth Amendment. 517 U.S. 806, 815-16 (1996).

Comparisons to national or IACP standards are irrelevant because the reasonableness of "an officer's actions in apprehending a suspect under the Fourth Amendment is 'not capable of precise definition or mechanical application." *Thompson*, 472 F.3d at 454, quoting *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005). The IACP standards utilized by Hayden "[shed] no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment giving the infinite sets of disparate circumstances which officers might encounter." *Thompson,* 472 at 454. Thus, both the Supreme Court and the Seventh Circuit have made it clear

18

that opinion testimony based on standards of this nature is irrelevant and inadmissible. Accordingly, the bases for Hayden's opinions are irrelevant and inadmissible and should be barred under FED. R. EVID. 702 and 403.

### C. Hayden's Opinions Regarding the Parties' Credibility Are Inadmissible.

Hayden's opinions regarding the credibility or plausibility of the parties' testimony are also inadmissible. "It is the exclusive province of the jury to determine the believability of a witness. . . An expert is not permitted to offer an opinion as to the believability or truthfulness of a witness's story." *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999); *accord, Davis*, 277 F.R.D. at 370. Nor are expert witnesses "allowed to sort out possible conflicting testimony or to argue the implication of those inconsistencies." *Davis,* 277 F.R.D. at 370. Accordingly, Hayden should be barred from offering the opinion that Officers Vidljinovic and Guettler are the only two officers who said they felt threatened by Plaintiff, whereas several others on the scene (officers, paramedics and firefighters) did not feel that either of these two officers looked like they were in danger. (Ex. A, p. 6.) This is simply a credibility argument. This and all other credibility-related opinions are clearly inadmissible. FED. R. EVID. 702.

### D. Opinions Regarding the State of Mind of Parties or Witnesses Are Inadmissible.

Similarly, Hayden should be barred from offering opinions as to the mental state, intent or motives of any party or witness. He opines that "[i]t appears Officers Vidljinovic and Guettler's own heightened anxiety overwhelmed them, and they made a conscious decision to become aggressive." (Ex. A, p. 6.) As to Plaintiff, Hayden surmises he could well be frightened because he was in fear of his life as officers approached him, (Ex. A, p. 6); that he made a conscious decision not to engage with the police or paramedics because he might have considered that unsafe, *id.*; and that he displayed fears of the police and firefighters. (Ex. A, p.

7.)  It is well established that witnesses (whether expert or lay) are not permitted to speculate on the mental state, intent or motivations of others.  *Davis*, 277 F.R.D. at 369, citing *DePaepe v. GMC*, 141 F.3d 715, 720 (7th Cir. 1998): FED. R. EVID. 602, 702. Moreover, Defendants Vidljinovic & Guettler's (or any other Defendant's) subjective intent is irrelevant because the reasonableness inquiry in an excessive force case is objective and does not consider the officer's underlying intent or motivation. *Graham*, 490 U.S. at 397.; FED. R. EVID. 401, 403. Therefore, these and all other state of mind opinions should be barred.

      **E.**      **Opinions Regarding the Propriety of the Defendant Officers' Pre-Seizure Actions Should Be Barred.**

Hayden also takes issue with Officers Vidljinovic and Guettler's decision to approach Plaintiff. He describes this decision as non-essential, tactically poor, and concludes it should not have been made. (Ex. A, p. 6.) Hayden also concludes that by physically approaching him, the officers created the hazardous situation in which Mr. Lopez was severely injured. (*Id.* at p. 8.) Here, Plaintiff was not seized until he was Tased by Officer Vidljinovic. Officer Guettler's attempt to touch Plaintiff to which Plaintiff responded by swinging at Guettler does not constitute as seizure. *See, Tom v. Voida*, 963 F.2d 952, 956 (7th Cir. 1992). Furthermore, an officer's pre-seizure activity is not subject to Fourth Amendment scrutiny. *See, Felton v. City of Chicago*, 827 F.3d 632, 635-636 (7th Cir. 2016); *Carter v. Buscher*, 973 F.2d 1328, 1332-33 (7th Cir. 1992). Thus, these opinions, and any other opinions regarding the propriety of the Defendant Officers' or Defendant Paramedics' "pre-seizure actions or decisions are irrelevant, FED. R. EVID. 401, and will not "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Such opinions are also inadmissible because they are misleading and confusing to the jury, and any probative value they may have would be substantially outweighed by the danger of prejudice. FED. R. EVID. 403.

For all the foregoing reasons, Defendants respectfully request that this court bar the testimony of Philip Hayden, and for such other relief the Court deems appropriate.

**16. Motion in Limine to Bar Certain Opinions of Plaintiff's Economist, Stan Smith.**

Defendants move *in limine* to preclude Plaintiff's expert Stan Smith, Ph.D. from testifying to, arguing, or offering any testimony that Plaintiff is entitled to be compensated for 1) damages resulting in loss of household and family services to his spouse and children, and 2) loss of enjoyment of life. The damages for loss of household and family services are irrelevant to the jury's determination of any issues in this case. FED. R. EVID. 401. The loss of enjoyment of life damages are inadmissible under the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and FED. R. EVID. 702. Furthermore, the probative value of any such damages evidence would be substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. FED. R. EVID. 403.

According to Smith, the damages he calculates for loss of household and family services include housekeeping, home management, and family guidance. Thus, these are not damages experienced by the Plaintiff himself, but rather damages for losses experienced by his spouse and children as the alleged result of Plaintiff's injuries. As explained above in Defendants' Motion No. 12, Plaintiff can only recover for damages that are personal to him, and not to others. This is not a wrongful death action in which damages for loss of society, loss of services, and loss of familial guidance are evaluated by the jury for the benefit of the next of kin. Plaintiff's spouse and children are not plaintiffs in their own right in this case, and no loss of household or family services or loss of society have been pled on their behalf. Loss of household services can be considered a component of loss of consortium damages. *Johanek v. Ringsby Truck Lines, Inc*., 509 N.E.2d 1295, 1306 (1st Dist. 1987). However, Plaintiff's wife waived any potential loss of

21

consortium claim when she failed to bring it at the pleading stage. *Huffman v. Grinnell*, 880 F. Supp. 1194, 1201-03 (N.D. Ill. 1995) (held that a spouse's pleading for "substantial loss of services" was insufficient to establish loss of consortium as a claim or constitutional violation under § 1983).

Thus, Smith's damages calculation for loss of household and family services are irrelevant, and any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. FED. R. EVID. 401, 403. Therefore, Smith should be precluded from testifying to such losses.

The loss of enjoyment of life damages, also known as hedonic damages, and Smith's quantification of them in this case do not pass muster under *Daubert* or Rule 702 because they are based on an unreliable methodology and will not assist the jury. Smith contends that his estimate for the value of life is based on many economic studies regarding what a contemporary society actually pay to preserve the ability to lead a normal life. The studies Smith relies upon assign a value to life based on data such as consumer behavior and purchases of safety devices, wage risk premiums to workers who perform higher risk jobs, and cost-benefit analyses which purportedly calculate the costs of reducing risk and saving lives by using certain safety measures. However, other than life expectancy, Smith's report does not reference any specific information regarding how Plaintiff valued his own life.

Notably, most courts in this district that have evaluated Smith's methodology and opinions on the loss of the enjoyment of life have determined it is unreliable and thus inadmissible under Rule 702. *See e.g., Mercado v. Ahmed,* 974 F.2d 863, 871 (7th Cir. 1992)(affirming district court's decision to exclude Smith's testimony); *Bolden v. Walsh Group*, No. 2012 WL 1079898 at *5 (N.D. Ill. Mar. 30, 20120; *Ayers v. Robinson*, 837 F. Supp. 1049,

1059-64 (N.D. Ill. 1995); *but see, Richman v. Burgeson*, 2008 WL 2567132 (N.D. Ill. June 24, 2008). Other district courts have followed this reasoning to exclude Smith's testimony on hedonic damages. *See, e.g., Castrillon v. St. Vincent Hosp. and Health Care Center, Inc.*, 2015 WL 3448947 at *2 (S.D. Ind. May 29,2015); *Stokes v. John Deere Seeding Group*, 2014 WL 675820 at*1-6 (C.D. Ill. Feb. 21, 2014).

Because Smith's methodology regarding loss of the enjoyment of life damages is unreliable, it would not be helpful to the jury in assessing damages in this case. Therefore, Smith's should be barred from testifying on loss of the enjoyment of life damages and presenting damage calculations on the loss of enjoyment of life to the jury. FED. R. EVID. 702.

**17.    Motion to Bar Any Argument or Reference to the Existence of Any Video or Audio Recording or the Failure to Preserve or Produce any Such Recording**

Defendants move *in limine* to preclude Plaintiff from arguing or referencing that any "dash cam" or "in-car" video mechanism existed in any CFD or CPD vehicle at the time of the incident and failed to capture the incident; or that any video or audio tape from this incident exists and was not produced. This Court should exclude such argument or reference because it is not relevant to the jury's determination of any issues in this case or the credibility of the officers' testimony (FED. R. EVID. 401) and would be extremely prejudicial to Defendants. (FED. R. EVID. 403.)

There is no evidence any dash cam videos captured the incident. Evidence adduced during discovery reflects that only one of the three responding squad cars (#8509) was equipped with a dash cam on the date of the incident, but there were no event video recordings from that dash cam at or around the time frame of the incident. (Pl.'s Ex. 30, ¶¶ 18-21.) Plaintiff does not dispute this fact. However, Defendants anticipate Plaintiff will argue or suggest that the reason there is no video footage of the incident is because officers affirmatively tampered with either

23

the cameras or the tapes in this case. This speculative argument, which was fully explored during discovery, has no basis in fact.

Even assuming footage from Squad Car 8509 existed at some point in time, the mere fact that evidence was destroyed is insufficient to create an unfavorable inference. *Park v. City of Chicago,* 297 F.3d 606, 615 (7th Cir.2002); *Rummery v. Ill. Bell Tel. Co.,* 250 F.3d 553, 558 (7th Cir. 2001). "Rather, to draw such an inference, the [evidence] must have [been] destroyed ... in bad faith." *Park,* 297 F.3d at 615; *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.,* 695 F.2d 253, 258 (7th Cir.1982). "The crucial element is not that evidence was destroyed but rather the reason for the destruction." *S.C. Johnson & Son, Inc.,* 695 F.2d at 258. In summarily dismissing Plaintiff's supervisory liability claims against Lieutenant Dubiel, this Court held that Plaintiff provided "no evidentiary basis" for the inference that "CPD may have affirmatively tampered with either the cameras or the tapes in this case." (*See* Dkt. 158, p. 10.)  It follows that there is no evidence that any of the Individual Defendants tampered with the cameras or, otherwise destroyed, any dash-cam video tapes in bad faith.  Any suggestion to the contrary, through questions or argument, would prove extremely prejudicial, is not supported any evidence and should not be allowed.

Likewise, despite an inspection and examination of the Taser used in the incident by all parties during discovery and deposition testimony indicating the Taser was not equipped with a video, Defendants anticipate Plaintiff will attempt to suggest to the jury that such a video or video capability exists.  In light of discovery in this case, any argument or suggestion to the jury that a Taser video exists is improper and not made in good faith.

Similarly, Defendants anticipate Plaintiff will try to argue Defendants' inability to produce the Office of Emergency Management and Communications (OEMC) or "911" audio

24

tape of the incident is the result of some wrongdoing on their part. However, there is absolutely no evidence to support any Individual Defendants' participation in any such untoward conduct. Discovery in this matter revealed the "911" tape regarding the incident was recycled pursuant to a retention schedule prior to any party requesting, issuing a subpoena, or seeking a court order that it be preserved.

Tellingly, Plaintiff has not asserted a spoliation claim. Indeed, there is insufficient evidence to support an allegation. As a result, Plaintiff should not be allowed to imply or argue that any video or audio recording exists and was withheld or inappropriately destroyed.

## 18.    Motion to Bar Visual Evidence, Including "Video in the Life of José Lopez" (Pl.'s Ex. 128.)

Defendants move *in limine* to preclude Plaintiff, his attorneys, agents and/or witnesses from presenting visual evidence regarding Jose Lopez's life before and after the injuries sustained on July 22, 2011. Plaintiff has advised Defendants that he intends to present to the jury evidence related to Plaintiff and his life before the injuries he sustained on July 22, 2011 as well as after.  This evidence takes the form of a montage of photos of Plaintiff immediately following his surgery and video excerpts that would be presented as a single self-serving video depicting Plaintiff and his family at various unidentified points in time both before and after his injury. Photographs of Plaintiff immediately following his surgery are also presented in the video.  So far as Plaintiff will claim this information is relevant to his damages, Plaintiff will already be presenting three experts regarding his injury and prognosis, testimony from family members regarding how his injury has impacted his life and his medical records. This visual evidence is cumulative and highly prejudicial. *See* FED. R. EVID. 401, 403.  Additionally, the video contains conversations between Plaintiff's family members in Spanish, which are impermissible hearsay pursuant to FED. R. EVID. 802. Accordingly, Defendants move to bar all visual evidence.

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on January 21, 2017, I electronically filed the attached **Notice of Motion** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the below service list.

***Plaintiff's Counsel***
John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

Franco N. Carone
Carone Law Offices
1559 North Mannheim Road
Suite 2A
Stone Park, Illinois 60665
(708) 856-8311
franco@caronelawoffices.com

/s/ Elizabeth A. Ekl
Elizabeth A. Ekl, Attorney No. 06242480
One of the Attorneys for Defendants