**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOSE LOPEZ, by his wife and next best )    Case No. 12 cv 5751
friend, Sandra Cardiel, )

                                )
              Plaintiff, )    Hon. John Robert Blakey,
v. )    Judge Presiding.
                                )
STEVAN VIDLJINOVIC, Star No. 4051, )
et al., )

                                )
             Defendants. )    JURY DEMANDED

## Plaintiff's Motion *in Limine*

Now comes the plaintiff, José Lopez, by and through his attorneys, and moves this Honorable Court to enter an order barring any reference to or mentioning before the jury during the course of the trial of the above-captioned cause the following:

### Plaintiff's Motion *in Limine* #1
### To Bar Use of Prior Felony Convictions and Any Arrests
### For Purposes of Minimizing Damages, For Attacking His Character,
### For Showing a Propensity to Commit Crimes, or Any Other Purpose

1.   José Lopez has a conviction in a 1989 El Paso County, Texas case for Felony Theft, a conviction in a 1999 El Paso County, Texas case for Possession of a Controlled Substance, a conviction in a 2002 El Paso County, Texas case for Manufacturer/Delivery of a Controlled Substance, a conviction in a 2002 Illinois case for Felony Possession of Firearm without Valid FOID, a conviction in a 2003 Illinois case for Aggravated Unlawful Use of Weapon, and a conviction in a 2006 El Paso County, Texas case for Possession of a Controlled Substance.

2.     José Lopez was released from the penitentiary after serving his

sentence on each of those convictions many years ago.

3.     José Lopez has arrests and convictions for traffic offenses and has had

his driving privileges and his driving license suspended in the State of Illinois.

4.     Federal Rule of Evidence 609(a) provides:

> General Rule. For the purpose of attacking the credibility
> of a witness, evidence that the witness has been convicted
> of a crime shall be admitted if elicited from the witness or
> established by public record during cross-examination but
> only if the crime (1) was punishable by death or
> imprisonment in excess of one year under the law under
> which the witness was convicted, and the court
> determines that the probative value of admitting this
> evidence outweighs its prejudicial effect to the defendant,
> or (2) involved dishonesty or false statement, regardless of
> the punishment.

5.     Federal Rule of Evidence 609(a)(1) requires a judge to permit

impeachment of a civil witness with evidence of prior felony convictions. *Green v.*

*Bock Laundry Machine Co.,* 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557

(1989).

6.     In *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) the

court reversed a verdict for the City holding:

> "Evidence is unfairly prejudicial where 'its admission
> makes it likely that the jury will be induced to decide the
> case on an improper basis, commonly an emotional one,
> rather than on the evidence presented.' " Presenting a §
> 1983 plaintiff's criminal history to the jury presents a
> substantial risk that the jury will render a defense verdict
> based not on the evidence but on emotions or other
> improper motives, such as a belief that bad people should
> not be permitted to recover from honorable police officers.
> (Internal citations omitted).

2

7.   Under Federal Rule of Evidence 609, a prior conviction is not admissible if ten years have passed since the conviction or release from incarceration.  Additionally, the conviction must either be a felony conviction or a misdemeanor conviction involving "dishonesty or a false statement."  Even if these criteria are met, the conviction is not admissible if "the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." *People v. Montgomery*, 47 Ill.2d 510, 516-517, 268 N.E.2d 69567 A.L.R.3d 816 (1971).

8.   Since José Lopez is both physically and mentally unable to speak and to give any testimony in this case, the prior felony convictions and the traffic arrests and convictions have no impact on his truthfulness.  The prejudicial value of his convictions and arrests many years ago, do not bear on his credibility and far outweigh any probative value they could possibly have on the issues to be decided by the jury.

**Plaintiff's Motion *in Limine* #2**
**To Bar Mention of PCP in José Lopez's System**

1.  The hospital records from Mount Sinai Hospital indicate the presence of phencyclidine (PCP) in José Lopez's system on July 22, 2011 when he arrived at the hospital.

2. The hospital records from Mount Sinai Hospital are silent as to the strength of the PCP in José's system on July 22, 2011.

3. The half-life of PCP ranges from 7 to 46 hours. The half-life of PCP is estimated at 17.4 hours; however, half-lives of 1-4 days have been reported.[1]

4. Behavioral effects can vary by dosage of PCP. Low doses produce a numbness in the extremities and intoxication, characterized by staggering, unsteady gait, slurred speech, bloodshot eyes, and loss of balance. Moderate doses (5–10 mg intranasal, or 0.01–0.02 mg/kg intramuscular or intravenous) will produce analgesia and anesthesia. High doses may lead to convulsions.[2] Users frequently do not know how much of the drug they are taking due to the tendency of the drug to be produced illegally in uncontrolled conditions.[3]

5. Studies by the Drug Abuse Warning Network in the 1970s show that media reports of PCP-induced violence are greatly exaggerated and that incidents of violence are unusual and often limited to individuals with reputations for aggression regardless of drug use.[4]

6. When they exerted force against José Lopez in order to get him into the ambulance to transport him to Mount Sinai Hospital, the Defendant Officers and paramedics did not know that the hospital records from Mount Sinai Hospital would later indicate the presence of phencyclidine (PCP) in José Lopez's system on July 22, 2011.

---

[1] Phencyclidine Toxicity, Updated: Apr 20, 2015, Author: Patrick L West, MD; Chief Editor: Asim Tarabar, MD.
[2] Diaz, Jaime. *How Drugs Influence Behavior*. Englewood Cliffs: Prentice Hall, 1996.
[3] Chudler, Eric H. "Neuroscience for Kids – PCP". Neuroscience for Kids. Retrieved 2011-01-26.
[4] Inciardi, James A. (1992). *The War on Drugs II*. Mayfield Publishing Company. ISBN 1-55934-016-9.

7. In *Sherrod v. Berry*, 856 F.2d 802, 804-5 (7th Cir.1988), the Seventh Circuit Court of Appeals indicated:

> When a jury measures the objective reasonableness of an officer's action, it must stand in his shoes and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to that situation.

8. In *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983), the court noted that if a police officer begins to rescue someone, he must complete the rescue in a non-negligent fashion even though he had no duty of rescue in the first place. It is respectfully suggested that the use of a Taser to get José Lopez into the ambulance for transportation to Mount Sinai Hospital ought to be considered much more than "the completion of the rescue in a non-negligent fashion".

9. In *Graham v. Connor*, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court indicated that the factors to consider in making a determination of whether the amount of force used to effectuate a seizure is reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.

10. In *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir 2000), the Seventh Circuit reaffirmed that the facts to be considered are: a) need for force, b) the relationship between need for force and the amount used, c) the severity of the crime at issue, d) whether the arrestee posed an immediate threat to the safety of the officers or others, e) and whether the arrestee was actively resisting arrest or attempting to evade arrest by flight.

11. Two years later in *McDonald v. Haskins*, 966 F.2d 292, 292–93 (7th Cir.1992), the Seventh Circuit indicated that other factors include whether the individual was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. In the end, the excessive force inquiry "looks to

whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended."

12. All Defendants in this case admit under oath that José Lopez was not under arrest and was not fleeing apprehension when he was tased.

### Plaintiff's Motion *in Limine* #3
### To Bar Use of Clear or Leads System
### To Investigate Backgrounds of Jurors

1. Such police databases "are restricted to law enforcement purposes only" pursuant to administrative regulations and Illinois criminal statute.

2. To allow criminal background checks on potential jurors during *voir dire* would be violative of those administrative regulations and the Illinois criminal statute.

3. The use of such police database systems would give Defendants an unfair advantage in this case and make information available to them that will not be available to José Lopez as the potential jurors are questioned during *voir dire*.

4. If allowed to do so during *voir dire*, Defendants may run background checks only for jurors of a certain race or ethnicity, and thus violate the principles set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986). See, also *Harris v. Hardy*, 680 F.3d 942, 949 (7th Cir. 2012)(explaining three-step inquiry for Batson objections).

5. In *Hill v. City of Chicago*, 06 C 6772, (N.D.Ill.), Judge Amy St. Eve granted a motion *in limine* barring Defendants from using the Chicago Police Department CLEAR system or the Illinois State Police LEADS system to investigate the backgrounds of jurors.

6. In *Padilla v. City of Chicago,* 06 C 5462, Doc #677, (N.D.Ill), Judge Milton I. Shadur granted the motion *in limine* regarding the "improper use of police resources", and continued defendants' requests to conduct such background checks of potential jurors until "the customary *voir dire* conference that the court convenes shortly before trial." *Id.,* at p. 11.

## Plaintiff's Motion *in Limine* #4
## To Bar Any Argument That Appeals
## To the Jurors' Pecuniary Interests as Taxpayers

1. The compensatory damages sought for José Lopez in this case are substantial because of the medical bills and nursing home bills already sustained.

2. The compensatory damages that Volvo regularly are sought to maintain him for the rest of his life are also very substantial.

3. The punitive damages sought for José Lopez in this cause will be substantial and any appeal to the jurors' pecuniary interest as taxpayers will be liable for the payment of these damages is inappropriate and will be prejudicial to a fair consideration of plaintiffs cause.

## Plaintiff's Motion *in Limine* #5
## Bar Mention of Lopez Raising 2 Families
## And/or Using 2 Aliases
## For Purposes of Minimizing Damages, For Attacking His Character,
## For Showing a Propensity to Commit Crimes, or Any Other Purpose

1. On the date of his tasing, José Lopez lived at 2 separate homes, one in Chicago and the other in Summit, Illinois.

2. At the Chicago home, José Lopez lived with Guadalupe Guzman and their 2 children, Nahum and Tais.

3. At the Summit home, José Lopez lived with Sandra Cardiel and their 2 children, John and Giselle.

4. José Lopez is lawfully married to Sandra Cardiel.

5. Allowing the defense to cross-examine Guadalupe Guzman and/or Sandra Cardiel on the fact that José Lopez was raising children with each of them in separate households is highly prejudicial and will impact the jury's impression of the character of each of them.

6. Evidence in this case reveals that Guadalupe Guzman and Sandra Cardiel had no knowledge of each other until a chance "run in" at a local shopping center.

7. Making reference to or mention of the character of José Lopez, Guadalupe Guzman, and/or Sandra Cardiel in raising two separate families has absolutely nothing to do with the issues in this cause.

8. This case concerns the use of the Taser and force by the Defendants to get José Lopez into the ambulance so that he could be transported to Mount Sinai Hospital.

9. In *Thompson v. City of Chicago*, 722 F.3d 963 (7th Cir.2013). The court noted:

> "The amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses. '[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote.'" (Internal citations omitted). *Id.*, at 971.

10. In *Thompson*, plaintiff contended that the [trial] court allowed the defense to cross-examine him on his use of aliases in a manner that permitted an obvious and prejudicial inference about his history of arrests." *Id.*, at 976.

11. The *Thompson* court explained that there was "an undue risk that the jury will decide the case on an improper basis—usually, though not always, because the proffered evidence appeals to emotion more than fact or reason. *Id.*, at 976

12. After the trial court permitted defense counsel to cross-examine Thompson regarding 12 specific occasions on which he used a false name "during an important event in your life", the Court of Appeals held:

> Thompson strenuously objected at trial and argues on
> appeal that this "compromise" was highly prejudicial, and
> rightly so. *Id.*, at 977.

13. "Under Rule 608(b) of the Federal Rules of Evidence, the court may permit cross-examination on specific instances of conduct if probative of the witness's character for truthfulness or untruthfulness." *Id.*, at 977.

14. José Lopez will not be testifying during this trial and his character for truthfulness or untruthfulness will not be tested in any way.

15. On the very best of days, and when he can keep his concentration focused, José Lopez is only able to respond to direct questions by blinking his eyes to indicate yes or no in response.

16. At the recent conference among counsel for the respective parties, counsel for the defense indicated that they would be filing a motion *in limine* to bar the actual physical appearance of José Lopez at the trial of the cause.

17. Plaintiff's counsel agrees that it might be an appearance of grandstanding and over dramatization to bring José Lopez into the court room and before the jury to elicit testimony that might not even be possible and therefore has agreed that José Lopez will not be brought before the jury during the trial of this cause.

18. Although Guadalupe Guzman and/or Sandra Cardiel will testify, their character in raising two separate families has absolutely nothing to do with the issues in this cause, i.e. the use of force by the defendants get José Lopez into the ambulance.

19. Under Federal Rule of Evidence 403, evidence that Jose Lopez was raising two Families and/or using two Aliases should be excluded because its probative value is substantially outweighed by the risk of unfair prejudice or causes a substantial concern about confusion of the issues, waste of time, delay, or cumulative evidence.

20. Similarly, allowing the Defendants to cross-examine Guadalupe Guzman and/or Sandra Cardiel about the fact that José Lopez was raising children with each of them in separate households is highly prejudicial and will unfairly impact the jury's impression of the character of each of them.

**Plaintiff's Motion *In Limine* #6**
**To Bar Defendants from Claiming**
**Inability to Pay Punitive Damages**

1. Plaintiff will be seeking substantial punitive damages against the Defendant Police Officers and Paramedics, jointly and severally.

2. If any of the Defendants or their attorneys contend before the jury that their finances are such that they have an inability to pay punitive damages,

plaintiff's counsel should be allowed to argue to the jury that the City of Chicago will pay any compensatory damages awarded to José Lopez from any of the Defendants. In *Obrycka v. City of Chicago and Anthony, Abbate, Jr.,* Case No. 07 C 2372, Doc. #: 561, p.3, Judge St. Eve ruled:

> If Defendants open the door by presenting evidence or argument of Abbate's financial condition, however, evidence of indemnification may be permissible. See [*Lawson v. Trowbridge,* 153 F.3d 368, 379 (7th Cir. 1998)]; *Christmas v. City of Chicago,* 691 F.Supp.2d 811, 819 (N.D. Ill. 2010). As such, if Defendant offers evidence of Abbate's financial condition, Obrycka must front this issue with the Court outside of the presence of the jury. See *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab"). The Court therefore grants Defendant's *in limine* motion in this respect without prejudice.

### Plaintiff's Motion *In Limine* #7
### To Bar Defendants from Arguing That
### José Lopez Was Not a Good Role Model for His Children
### For Purposes of Minimizing Damages, For Attacking His Character,
### For Showing a Propensity to Commit Crimes, or Any Other Purpose

1. Although José Lopez has several felony convictions years ago and did not have a valid driver's license at the time Defendants tased him, causing his brain hemorrhaging and resulting brain injuries, admission of testimony that José Lopez was not a good role model for his children ought not be admitted for any purpose.

2. Defendants seek to admit such evidence as bearing on compensatory damages for the support of José Lopez's wife, Sandra Cardiel and his four children.

3. There is no question that prior to the tasing, José Lopez was raising his wife and 4 children.

4. In *Cobige v. City of Chicago, Illinois*, 651 F.3d 780, (7th Cir.2011), the court affirmed an award of punitive damages for plaintiff, but remanded the case for a new trial on compensatory damages only.  Justice Easterbrook wrote:

> Chicago wanted to undermine Maurice's rosy view of the mother-son relationship by introducing evidence that Patricia was a drug addict who had been in trouble with the law for much of her adult life and had spent multi-year stretches in prison. The district court admitted evidence that Cobige had been convicted once but excluded older sentences and did not permit the introduction of evidence about Cobige's drug addiction and arrest record.
>
> Thus the jury did not learn that in 1998 Cobige was sentenced to four years' imprisonment for two drug offenses and had scarcely been released when she was arrested again and convicted in 2001 for another drug crime, for which the sentence was three years. When she died in 2006, she was in the lockup following arrest on yet another drug charge. The excluded evidence would have undermined the favorable picture that Maurice Cobige painted of his mother's character and would have allowed defense counsel to ask just what kind of "role model" she could have been….
>
> Chicago did not propose to use evidence of one crime to establish propensity to commit another. It proffered the evidence because it is relevant to how much loss Cobige's estate and son suffered by her death.
>
> Cobige's character and life prospects were put in question by her son's testimony. Just as Maurice Cobige was entitled to paint a favorable view of his mother's ability to give sage advice and emotional support—he testified that "she taught me mostly everything I know. Everything she knew she tried to instill in me."—Chicago was entitled to introduce evidence suggesting that Patricia Cobige *785 was not likely to assist others or to have enjoyed life to the extent that her son narrated. Illinois law makes surviving relatives' emotional loss and familial ties relevant to damages.

12

*Id.*, at 784.

5. In contrast, José Lopez has not been convicted in many years and he has not been in jail for many years.

6. José Lopez had served those sentences and his debt to society many years before his interactions with the police, paramedics, and firefighters in this case.

6. José Lopez had been the support for his wife and 4 children for many years before he was tased on July 22, 2011.

7. José Lopez had been available to be and was a role model for his children.

8. José Lopez was having a positive influence on his children's lives:

    a. His eldest son, John Nevarez is now 21 years of age, and is a Corporal in the United States Marine Corps;

    b. His eldest daughter, Giselle Nevarez is now 19 years of age and is enrolled as a full-time student at Lewis University in Romeoville, Illinois, majoring in criminal justice. Giselle is also a peer minister in Lewis University Ministry and working as a part-time manager assistant in retail in order to pay her way through school; and

    c. His youngest son, Nahum is now 13 years old and in 7th grade, and his youngest daughter, Tais is now 11 years old and in 5th grade and both are going through family and school counseling because of the impact of the loss of the society and guidance of their father.

9. As Justice Easterbrook noted Fed.R.Evid. 403, 404(b) and 609(b) "permit[ ] a judge to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice'". *Cobige*, at 784.

10. The probative value of mentioning these convictions from long ago that have nothing to do with the kind of life José Lopez was providing his wife and

children at and prior to the time of the tasing by the police is substantially

outweighed by the danger of unfair prejudice.

WHEREFORE, plaintiff moves this Honorable Court to enter an order

barring any reference to or mentioning before the jury during the course of the trial

of the above captioned cause the foregoing matters discussed in this plaintiff's

Motions *in limine*.

Respectfully submitted,

S/ John P. DeRose
John P. DeRose
One of Plaintiff's Lawyers

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com

## CERTIFICATION OF SERVICE

I, John DeRose, hereby certify that the foregoing Plaintiff's Motions in Limine was filed
with the Clerk of the United States District Court for the Northern District of Illinois via the
electronic filing system on January 24, 2017 and the copy will be served on Counsel of Record
via the electronic filing system.

S/ John P. DeRose
John P. DeRose
One of Plaintiff's Lawyers

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com

14