## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, | |
| Plaintiff, | Case No. 12-cv-5751 |
| v. | |
| STEVAN VIDLJINOVIC, *et al.*, | Judge John Robert Blakey |
| Defendants. | |

## ORDER

This matter comes before the Court upon the parties' Proposed Pretrial Order [161]; the parties' motions *in limine* [164] [165]; Plaintiff's Motion To Compel the Testimony of Mayor Rahm Emanuel [159]; Defendants' Motion To Bifurcate [162]; and argument presented at the Pretrial Conference held on January 30, 2017. For the reasons announced on the record and for the additional reasons provided in this Order, the Court rules as set forth below. To the degree any evidence or argument has been preliminarily barred by this Order, it remains excluded at trial unless, outside the presence of the jury, the parties seek reconsideration and obtain prior leave of Court to present it.

I.   **Case Statement**. By agreement of the parties, the Court will give the following case statement:

Plaintiff Jose Lopez alleges that Defendants Stevan Vidljinovic, John Guettler, Jose Valdovinos, Antonio Valenzuela, Manuel Gonzalez, Armando Alamillo, Joseph De Monica, Daniel Lopez, Mark Kearns, Sandra Cheatam and Julio Mendoza utilized excessive force against him and unlawfully seized him on July 22, 2011. Plaintiff also claims that Defendants' administration of this force amounted to an assault and battery, and that Defendants administered this force in order to intentionally inflict emotional distress. Finally, Plaintiff claims that Defendants Guettler, Valdovinos, Valenzuela, Gonzalez, Alamillo, De Monica, Lopez, Kearns, Cheatam and Mendoza failed to intervene when Defendant Vidljinovic utilized excessive force. The Defendants deny each of these claims.

1

## II.   Stipulations.

At the hearing on January 30, 2017, the parties represented that they agreed to the following factual stipulations.  Per the procedure explained at the Pretrial Conference, the parties may enter into these stipulations and publish to the jury during trial:

    a) On July 22, 2011, at approximately 3:23 a.m., Guadalupe Guzman placed an emergency call to 911 asking for an ambulance to tend to Jose Lopez.

    b) In response, at approximately 3:25 a.m., the 911 Emergency Operator dispatched both a Chicago Fire Department truck and ambulance.

    c) At approximately 3:27 a.m., the Chicago Fire Department truck arrived first on the scene.

    d) At approximately 3:38 a.m., the Chicago Fire Department ambulance with two paramedics also arrived on the scene.

    e) At approximately 3:38 a.m., Chicago Fire Department personnel requested assistance from the Chicago Police Department.

    f) Officer Armando Alamillo and Officer Jose Valdovinos, Beat 1033R, were the first two police officers to arrive.

    g) At approximately 3:41 a.m., Officers Alamillo and Valdovinos requested a Taser be brought to the scene.

    h) Officer Stevan Vidljinovic (accompanied by his partner, Officer John D. Guettler), Beat 1011R, arrived on the scene equipped with a Taser.

    i) Officer Vidljinovic tasered Jose Lopez.

    j) Immediately thereafter, Jose Lopez was secured to the ambulance stretcher with restraints by the paramedics.

    k) At no time was Jose Lopez placed under arrest or charged with a crime.

    l) The Officer Defendants were acting under color of state law at all times relevant to this incident.

The parties remain free to propose additional factual stipulations during trial, provided that such stipulations are in writing and approved by the Court prior to being published to the jury.

## III.   Witnesses.

The parties are instructed to meet-and-confer regarding the proposed potential witnesses, and jointly submit, in writing, a revised list of proposed potential witnesses to the Court's proposed order inbox by noon on February 3, 2017.  This written submission should also address the parties' respective positions regarding the potential need for additional depositions and the possible use of any depositions at trial.

The parties are reminded that witnesses may testify out-of-order by agreement of the parties; however, a witness will not be allowed to take the stand to interrupt the ongoing testimony of a preceding witness.

## IV. __Exhibits.__

The Court is in receipt of the parties' respective exhibit binders. On the first day of evidence, the Court requires complete and updated exhibit binders from both parties.

At this time, no exhibits have been admitted on a pretrial basis. Aside from the exhibits specifically addressed in the parties' motions *in limine*, the parties' objections to each other's exhibit lists are taken under advisement. Subject to timely objections, the Court will rule on the admissibility of exhibits as they are introduced at trial. The parties must raise any outstanding objections at that time.

At the hearing on January 30, 2017, the parties also discussed the following evidentiary stipulations:

a) With regard to Plaintiff's medical records, the parties discussed the possibility of stipulating as to their authenticity and the fact that they are business records within the meaning of Federal Rule of Evidence 803(6). The parties did not indicate that they would stipulate to their relevance, their admissibility under Federal Rule of Evidence 403, or their admissibility as to any "hearsay within hearsay."

b) With regard to any police records (including any handwritten statements by any individual Defendants), the parties did not agree to any evidentiary stipulations.

c) With regard to various public records (including birth certificates, marriage certificates, and Plaintiff's driving record), the parties discussed the possibility of stipulating as to their authenticity and their status as non-hearsay. The parties did not indicate that they would stipulate to their relevance, their admissibility under Federal Rule of Evidence 403, or their admissibility as to any "hearsay within hearsay."

The parties are instructed to submit to the Court's proposed order inbox by noon on February 3, 2017, a specific list (by number) of all agreed exhibits, and all agreed evidentiary stipulations (or stipulations-in-part) as to relevance, admissibility, authenticity or any other issue.

V.    **<u>Demonstrative Exhibits During Opening Statements or Closing Arguments.</u>**

If the parties wish to utilize PowerPoint presentations or other demonstrative exhibits during opening statements or closing arguments, such exhibits must be provided to opposing counsel on the morning of their intended use. Any objections to such exhibits must be raised with the Court before the start of proceedings that day and outside the presence of the jury.

VI.   **<u>The Parties' Motions *in Limine*.</u>**

A.    **Plaintiff's Motions *in Limine***

1.    ***Plaintiff's Motion No. 1***

Plaintiff seeks to bar evidence related to Plaintiff's prior felony convictions. Plaintiff's Motion No. 1 is **GRANTED, WITHOUT PREJUDICE,** as follows:

a)  Evidence related to Plaintiff's prior convictions and suspended driver's license is currently barred.

b)  The parties are advised that Plaintiff could nevertheless open the door to such evidence at trial. For example, to the extent Plaintiff's damages argument turns in part on his ability to work as a tow truck driver, Defendants might be permitted to rebut that argument, including rebutting it with evidence that Plaintiff's driver's license was suspended.

c)  For the sake of clarity, the parties are admonished that they may not ask questions or present arguments regarding either Plaintiff's prior convictions or his suspended driver's license absent prior approval from the Court at sidebar.

2.    ***Plaintiff's Motion No. 2***

Plaintiff seeks to bar evidence of the fact that certain drugs were detected in Plaintiff's system when he arrived at Mount Sinai Hospital. Plaintiff's Motion No. 2 is **DENIED**. Defendants are admonished that if this evidence is admitted at trial, then they may only argue it for permissible purposes (i.e., to argue that their actions were reasonable and or to corroborate their version of events, etc.).

### 3. *Plaintiff's Motion No. 3*

Plaintiff seeks to bar Defendants from using the CLEAR or LEADS systems to investigate potential jurors. Plaintiff's Motion No. 3 is **GRANTED AS AGREED**.

### 4. *Plaintiff's Motion No. 4*

Plaintiff seeks to bar Defendants from appealing to the jurors' pecuniary interests as taxpayers. Plaintiff's Motion No. 4 is **GRANTED AS AGREED**.

### 5. *Plaintiff's Motion No. 5*

Plaintiff seeks to bar evidence of the fact that he was raising two families and using two different names. Plaintiff's Motion No. 5 is **DENIED**, as follows:

a) Evidence and argument related to Plaintiff's use of aliases and his relationships with his wife, girlfriend, and children, may be used to impeach or explore the potential bias of those same individuals, should they testify in this case.

b) Defendants are admonished that they may not use the evidence relating to Plaintiff's use of any aliases or Plaintiff's familial situation for any improper purpose, *i.e.*, Defendants may not argue that this evidence is relevant to Plaintiff's purported bad character or his credibility. Based upon the representations of the parties, Plaintiff's credibility will not be at issue at trial. Absent leave of Court via a request at sidebar, Defendants may not reference the fact that Sandra Curiel or Guadalupe Guzman may have been unaware of the other woman's relationship with Plaintiff.

### 6. *Plaintiff's Motion No. 6*

Plaintiff seeks to bar Defendants from claiming an inability to pay punitive damages. Plaintiff's Motion No. 6 is **GRANTED AS AGREED**. If Defendants' inability to pay is raised during trial, however, Defendants are instructed to raise the matter at sidebar, and, if needed, request a potential limiting instruction during the charge conference.

### 7. *Plaintiff's Motion No. 7*

Plaintiff seeks to bar Defendants from arguing that he was not a "good" role model. Plaintiff's Motion No. 7 is **GRANTED AS AGREED**, as follows:

a) Damages suffered by Plaintiff's family members are not relevant to this case, because only Plaintiff himself has pending claims. Accordingly, Plaintiff is therefore admonished that he may not adduce evidence or otherwise present arguments regarding the suffering of Plaintiff's family members. Additionally, Plaintiff's merit (or lack thereof) as a role model for his children is not at issue. If any proper basis for "good" role model evidence and argument arises at trial, the parties must first raise the issue at sidebar. If admissible, such evidence may open the door for Defendants to present evidence that Plaintiff was a "bad" role model.

### B. Defendants' Motions *in Limine*

### 1. *Defendants' Motion No. 1*

Defendants seek to bar generalized evidence regarding the alleged police code of silence, including any statements regarding the code of silence from Mayor Rahm Emanuel. Defendants' Motion No. 1 is **GRANTED IN PART AND DENIED IN PART**, as follows:

a) Plaintiff is permitted to explore allegations regarding a code of silence involving these particular Defendants, provided that a good faith basis exists for such questioning.

b) Plaintiff is precluded from making arguments or adducing evidence regarding generalized allegations of a code of silence at the Chicago Police Department, including but not limited to evidence regarding statements from Mayor Rahm Emanuel.

### 2. *Defendants' Motion No. 2*

Defendants seek to bar evidence regarding any publicized incidents of alleged police misconduct. Defendants' Motion No. 2 is **GRANTED AS AGREED**, as stated in open court.

### 3. *Defendants' Motion No. 3*

Defendants seek to bar evidence or argument concerning any putative violations of Chicago Police Department General Orders, Rules and Regulations. Defendants' Motion No. 3 is **GRANTED WITHOUT PREJUDICE**, as follows:

a) Plaintiff may not introduce evidence regarding specific CPD General Orders, Rules, and Regulations or potential violations thereof. The parties may introduce evidence or elicit testimony, however, regarding general training principles relevant to the incident and Defendants at issue. If, based upon the developments at trial, the parties believe that the door has been opened to such evidence and argument regarding CPD General Orders, Rules, and Regulations, then the party seeking reconsideration of this order must first seek leave of Court at sidebar before presenting such evidence or argument.

### 4. *Defendants' Motion No. 4*

Defendants seek to bar evidence regarding possible investigations performed by the Independent Police Review Board and the Federal Bureau of Investigation. Defendants' Motion No. 4 is **GRANTED IN PART AND DENIED IN PART**, as follows:

a) Evidence and argument referencing IPRA or the FBI, or any possible investigation by such entities is barred, absent a proper admissible purpose proffered at sidebar. Subject to the Federal Rules of Evidence, evidence or statements otherwise reviewed by, or arising from, an IPRA or FBI proceeding may still be potentially admissible with proper redactions.

### 5. *Defendants' Motion No. 5*

Defendants seek to bar any evidence or reference to the recent Department of Justice report concerning the Chicago Police Department. Defendants' Motion No. 5 is **GRANTED**, as stated in open court.

### 6. *Defendants' Motion No. 6*

Defendants seek to bar any undisclosed witnesses or evidence. Defendants' Motion No. 6 is **DENIED AS MOOT**, subject to the Court's earlier instruction that the parties meet and confer regarding their exhibits and update the Court on February 3, 2017.

### 7. *Defendants' Motion No. 7*

Defendants seek to bar any argument or innuendo that the jury should punish or "send a message" to the city. Defendants' Motion No. 7 is **GRANTED AS AGREED**. The parties may not adduce any evidence on this point absent prior leave of Court at sidebar.

### 8. *Defendants' Motion No. 8*

Defendants seek to preclude Plaintiff from advancing new arguments and from asking the jury to consider a specific damages award for the first time during rebuttal closing argument. Defendants' Motion No. 8 is **DENIED WITHOUT PREJUDICE**, as explained in open court.

### 9. *Defendants' Motion No. 9*

Defendants seek to bar counsel from interpreting Chicago Police Department and Chicago Fire Department Event Queries during questioning of witnesses without a proper foundation. Defendants' Motion No. 9 is **GRANTED**, as follows:

a) The parties are instructed to meet and confer regarding the meaning of acronyms contained in the Event Queries, and submit any related stipulation to the Court's proposed order inbox by noon on February 3, 2017. As always, attorneys may not testify or otherwise argue facts or inferences without a proper evidentiary basis.

### 10. *Defendants' Motion No. 10*

Defendants seek to preclude Plaintiff from arguing that City employees are paid to testify or professional witnesses. Defendants' Motion No. 10 is **GRANTED AS AGREED**.

### 11. *Defendants' Motion No. 11*

Defendants seek to preclude Plaintiff from entering the courtroom while the jury is sitting. Defendants' Motion No. 11 is **DENIED**, as follows:

a) Based upon the representations of the parties, Plaintiff is free to attend trial. Plaintiff's mere presence in the courtroom, however, is not evidence that can be argued to the jury. If needed, Defendants are instructed to draft a limiting instruction on this point, to be submitted to the Court's proposed order inbox by February 3, 2017.

### 12. *Defendants' Motion No. 12*

Defendants seek to bar any evidence, testimony, argument or references to the impact, effect or loss suffered by any third party as a result of Plaintiff's injuries. Defendants' Motion No. 12 is **GRANTED**, as follows:

a) Damages suffered by Plaintiff's family members are not relevant to this case, because only Plaintiff himself has pending claims. Plaintiff is therefore admonished that he may not adduce evidence or otherwise present arguments regarding the suffering of Plaintiff's family members.

### 13. *Defendants' Motion No. 13*

Defendants seek to preclude Plaintiff from suggesting that the City will indemnify the individual defendants for their compensatory damages or that the City is the "deep pocket." Defendants' Motion No. 13 is **GRANTED AS AGREED**.

### 14. *Defendants' Motion No. 14*

Defendants seek to bar Plaintiff from soliciting media coverage. Defendants' Motion No. 14 is **DENIED AS MOOT**.

### 15. *Defendants' Motion No. 15*

Defendants seek to bar the testimony of Plaintiff's expert Phillip Hayden. Defendants' Motion No. 15 is **GRANTED IN PART AND DENIED IN PART**, as follows:

a) Both Plaintiff's expert, Mr. Phillip Hayden, and Defendants' use of force expert, Dr. Darrell Ross, <u>may not</u>: proffer legal opinions; opine as to whether the force applied in this instance was excessive; opine as to the import or meaning of any specific police policies or standards; or opine as to the relative culpability, state or mind, or subjective impression of any witness or party.

b) Both Plaintiff's expert, Mr. Phillip Hayden, and Defendants' use of force expert, Dr. Darrell Ross, <u>may</u>: opine as to the relevant factors for law enforcement officers when deciding when and how much force to apply in a given situation, in particular the factors relevant to hypothetical uses of force, <u>without</u> applying those same factors to this case.

### 16.   *Defendants' Motion No. 16*

Defendants seek to bar the testimony of Plaintiff's expert, Dr. Stan Smith. Defendants' Motion No. 16 is **GRANTED**, as follows:

a) Dr. Smith's testimony would not be helpful to the jury, such that his testimony is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See also Crespo v. City of Chicago*, No. 96-cv-2787, 1997 WL 537343, at *3 (N.D. Ill. Aug. 22, 1997) (excluding Smith's testimony, as the court was "unconvinced that the theory is helpful to the jury. We presently are of the opinion that the jury is able to decide for itself, without the assistance of an economics expert, the value that our society places on a human life.").

b) Moreover, Plaintiff remains free to introduce otherwise admissible damages evidence, and then argue the import of that underlying evidence to the jury.

### 17.   *Defendants' Motion No. 17*

Defendants seek to bar any argument or reference to the existence of any video or audio recording or the failure to preserve or produce any such recording. Defendants' Motion No. 17 is **GRANTED WITHOUT PREJUDICE**, as follows:

a) Absent prior leave of Court, Plaintiff may not introduce evidence that a video or audio recording of the incident is missing, destroyed, or was otherwise improperly not produced. Defendants are advised, however, that they may also open the door to such evidence at trial (if, for example, they argue that Plaintiff's claims are uncorroborated, etc.). If the door is opened, or if Plaintiff is otherwise able to identify a good faith basis for the assertion that Defendants acted in affirmative bad faith by intentionally destroying or deliberately choosing to evade the creation of such material, then Plaintiff may seek reconsideration of this Court's order at sidebar.

### 18.    Defendants' Motion No. 18

Defendants seek to bar visual evidence regarding Plaintiff's life before and after the incident, including but not limited to pictures of Plaintiff and Plaintiff's "day in the life" video. Defendants' Motion No. 18 is **GRANTED IN PART AND DENIED IN PART**, as follows:

a) Plaintiff's "day in the life" video is barred under Federal Rule of Evidence 403. The video contains inadmissible hearsay and is cumulative of various photographs and testimony that Plaintiff will be able to adduce at trial. Likewise, what little probative value the video possesses remains substantially outweighed by its potential unfair prejudice. For example, the video features improper background music, depicts Plaintiff on a ventilator that he no longer uses, and is likely to produce emotional reactions from the jury.

b) The Court will hear arguments regarding the individual pictures at trial. The parties are reminded to <u>not publish</u> any putative exhibits until the exhibit has actually been admitted into evidence and counsel has received permission to publish to the jury. This concern is particularly acute with respect to photographs of Plaintiff, and counsel is accordingly reminded to proceed with caution when utilizing these exhibits.

## VII.    Agreed Motions *in Limine*.

The parties also agreed upon the following motions *in limine*:

**Agreed Motion No. 1**: To bar any reference or mentioning to the jury any argument that appeals to the jury's pecuniary interests as taxpayers regarding plaintiff's demand for compensatory damages. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 2**: To bar any use of the CLEAR or LEADS systems to investigate backgrounds of potential jurors. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 3**: To exclude any non-party witnesses from the courtroom until their testimony is complete pursuant to Federal Rule of Evidence 615. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 4**: Not to mention or reference any party's trial preparation with their attorneys. The Court **DENIES** this agreed motion, as stated in open court.

**Agreed Motion No. 5**: Plaintiff will not argue that Defendants were not diligent in or failed to meet their discovery obligations. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 6**: To bar evidence or argument of other lawsuits and/or citizens' complaints against any Defendant and any non-party witnesses. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 7**: To bar any evidence, argument or references to Plaintiff's *Monell* claim against Defendant City of Chicago that was resolved on summary judgment in favor of the City and against the Plaintiff. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 8**: To bar any evidence, argument or references to Plaintiff's claim against Defendant Robert Dubiel that was resolved on summary judgment in favor of Dubiel and against the Plaintiff. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 9**: To bar any references to defense counsel as the "City Attorneys," the "City," or "Corporation Counsel." The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 10**: To bar any evidence, argument or references to any party's or witness's religious beliefs or opinions in order to support or attack the party's or witness's credibility. The Court **GRANTS** this agreed motion, as stated in open court.

**Agreed Motion No. 11**: To bar any reference to the Taser as a "gun" or "Taser gun." The Court **GRANTS** this agreed motion, as stated in open court.

## VIII. <u>Plaintiff's Motion To Compel the Testimony of Mayor Rahm Emanuel</u>.

Plaintiff seeks to compel the testimony of Mayor Emanuel. Plaintiff's motion [169] is **DENIED**. As the Court previously explained when granting summary judgment on Plaintiff's *Monell* claims: "the purported lay opinions and hearsay statements of Mayor Rahm Emanuel concerning an alleged 'code of silence' within the CPD are inadmissible [and] simply not probative of the questions at hand or the defendants at issue." [157] at 11-12.

12

### IX. **Defendants' Motion To Bifurcate.**

Defendants seek to bifurcate the trial into separate liability and damages phases. Defendants' motion [162] is **GRANTED**, as stated in open court. Under Federal Rule of Civil Procedure 42(b) and Seventh Circuit precedent, bifurcation would serve to avoid prejudice to Defendants and promote judicial economy. Moreover, Plaintiff will not be unfairly prejudiced by bifurcating trial into distinct phases for damages and liability. Finally, bifurcation does not pose any Seventh Amendment issues, because the Court will empanel the same jury for both phases (presuming Plaintiff succeeds during the liability phase).

For the sake of clarity, the Court reiterates that this trial is bifurcated into two phases: damages and liability. There is no "time frame" or other temporal limitation on evidence and argument available to the parties during either phase. Instead, the governing delineation is between evidence or argument which goes to liability, and evidence or argument which goes to Plaintiff's damages. To the extent either party intends to raise an argument or introduce evidence which is potentially relevant to both inquiries, that party must first raise the issue with the Court at sidebar.

### X. **Jury Selection Questions.**

The parties' proposed *voir dire* questions are taken under advisement. Jury selection will proceed as explained on the record. As agreed upon by the parties, Plaintiff and Defendants are each entitled to three peremptory strikes.

### XI. **Jury Instructions and Verdict Forms.**

The parties' proposed jury instructions and verdict forms are taken under advisement, and the charge conference shall proceed as explained on the record. Any additional proposed jury instructions shall be submitted in Microsoft Word form to the Court's proposed order inbox prior to the charge conference.

### XII. **Trial Briefs.**

All trial briefs, or other memorandums of law, if any, must be submitted to the Court and opposing counsel at or before 10:00 a.m., on the first day of trial. Absent leave of court, no other briefs or memorandums of law shall be filed during trial.

XIII.    **Courtroom Technology**.

The Court reiterates that it is incumbent upon the parties to ensure that all technology they intend to utilize during trial is ordered, set-up, and tested <u>before</u> trial begins.

XIV.    **Case Schedule**.

Counsel is expected to arrive in Courtroom 1725 at 9:30 a.m., on February 6, 2017. Jury selection shall begin promptly at 10:00 a.m. that same day. Should additional issues between the parties arise, they should contact chambers as soon as possible so that any outstanding issues may be addressed before jury selection. For the duration of the proceedings, the Court will normally sit the jury promptly at 10:00 or 10:30 a.m., and therefore, if the parties wish to discuss pending issues, they need to immediately inform the Court so that the jury may be seated on time.

Trial will not be held on February 10, 2017, or February 20, 2017.

Dated: February 2, 2017                    Entered:

John Robert Blakey
United States District Judge