IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE LOPEZ, by his wife and next best friend, Sandra Cardiel, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 CV 05751 |
| vs. | ) ) ) | Honorable Judge John R. Blakey |
| STEVAN VIDLJINOVIC, Star No. 4051, *et al*. | ) ) | |
| Defendants. | ) | |

## **DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants, by their attorneys and pursuant to FED. R. CIV. P. 50(a), move this Court for a directed verdict on all counts of the Fourth Amended Complaint. In support, Defendants state:

### **INTRODUCTION**

Plaintiff has been fully heard on all of his claims and no disputed issues of fact exist which require the jury to resolve any of Plaintiff's claims. As an initial matter, Plaintiff has presented no evidence of any personal involvement of any defendant in Counts I (Section 1983 illegal seizure) and II (Section 1983 excessive force) other than Officer Vidljinovic. Regarding the claims against Officer Vidljinovic in Counts I and II, Plaintiff's case failed to rebut Defendants Guettler and Vidljinovic's testimony that Jose Lopez assaulted Guettler, thus providing both probable cause for seizure, and justification for Vidljinovic's single use of the Taser to seize Lopez. Defendant Vidljinovic is entitled to qualified immunity. Furthermore, all of the defendant officers who were bystanders had no reasonable opportunity to prevent the tasing, which they had no advance notice was going to occur, and happened very quickly. This

1

same dearth of evidence deals fatal blows to Plaintiff's state law claims. As such, Defendants are entitled to judgment as a matter of law.

## FACTS ESTABLISHED AT TRIAL

On July 22, 2011, at approximately 3:23 a.m., Plaintiff Jose Lopez's girlfriend, Guadalupe Guzman, called "911" and informed the emergency operator that he was having trouble breathing. When Defendant Paramedics Mendoza and Cheatham arrived, they attempted to assess Plaintiff, but could not safely do so because he was acting erratically and appeared to be under the influence of PCP. Fire Department personnel called for police assistance. Upon arrival, some of the Defendant Officers took turns trying to speak to and persuade Plaintiff to go with the paramedics. The Defendant Officers also believed Plaintiff was under the influence of PCP. After unsuccessful attempts by other officers, Defendant Guettler approached Plaintiff to try to pursuade him to go to the ambulance. However, when Guettler touched the back of Plaintiff's arm, Plaintiff violently swung his fists at Guettler prompting Defendant Vidljinovic to discharge his Taser once. Plaintiff then fell to the ground. According to Ms. Guzman, Plaintiff repeatedly refused the officers' and paramedics' attempts to assist him. However, she did not see what happened immediately before Plaintiff was tased. Further, she testified that her view of the interaction between Plaintiff and the officers who were following him was at times obstructed and she did not see what occurred just before the deployment of the Taser. After Plaintiff was tased, he was placed on a gurney and taken to the hospital. Ms. Guzman testified that she believed the officers and paramedics on scene were there to help Plaintiff.

**LEGAL STANDARD**

A court may enter judgment as a matter of law against a party "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" FED. R. CIV. P. 50(a)(1). "A legally sufficient amount of evidence need not be overwhelming, but it must be more than a 'mere scintilla.'" *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). A motion for judgment as a matter of law "may be made at any time before the case is submitted to the jury" and must "specify the judgment sought and the law and facts that entitle the movant to the judgment." FED. R. CIV. P. 50(a)(2). The standard for judgment as a matter of law "'mirrors'" that for summary judgment, such that "'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). Therefore, the question for the court is whether there is sufficient evidence upon which the jury could properly proceed to find a verdict for the party producing it, who bears the burden of proof. *Anderson*, 477 U.S. at 252.

   **I. Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Section 1983 Seizure Claim (Count I).**

It is undisputed that Plaintiff was seized when he was tased by Officer Vidljinovic, leaving only a question of the reasonableness of that seizure. As an initial matter, this case involves one officer firing his Taser one time: all other Defendant Officers lack the requisite personal involvement to be liable under Plaintiff's seizure claim, entitling them to judgment as a matter of law. *See, Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) ("Plaintiffs must show that the defendants were personally responsible for the deprivation of their rights.") citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Additionally, as addressed in

detail below, Officer Vidljinovic's actions were reasonable under the circumstances and as such, he is also entitled to judgment as a matter of law.

A seizure occurs when by either means of physical force or a show of authority, the subject yields. *California v. Hodari D.,* 499 U.S. 621, 626 (1991); *see also*, *Tom v. Voida*, 963 F.2d 952, 957 (7th Cir. 1992) ("A seizure requires not only that the reasonable person feel unfree to leave, but also that the subject actually yield to a show of authority from the police or be physically touched by the police."). There can be no question that Plaintiff was not seized until he was actually tased by Officer Vidljinovic. Both civil and criminal seizures are governed by the Fourth Amendment's probable cause standard. *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013). Probable cause exists if "there are reasonable grounds for believing the person seized is subject to seizure under the governing legal standard." *Id*. (quoting *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 2013)). The Defendant Officers' testimony was clear that they were not on scene to arrest Plaintiff. However, for the purposes of probable cause, an arresting officer's state of mind is irrelevant, and actual probable cause supporting a seizure need not be closely related to the conduct identified by the arresting officer. *Devenpeck v. Alford*, 543 U.S. 146 (2004); *Abbott v. Sangamon Cty., Ill*., 705 F.3d 706 (2013). Though Defendant Officers have made clear that they had no intent of arresting Plaintiff for a crime and were only there to help him obtain the medical care he needed, there is unrebutted testimony that Plaintiff assaulted Defendant Guettler when he wildly swung his arms at him, creating probable cause for him to be seized. *See*, 720 ILCS 5/12-1(a) ("A person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery.")

Furthermore, to the extent Plaintiff brings his seizure claim against Defendant Paramedics Cheatham and Mendoza for transporting Plaintiff to the hospital, Defendant Paramedics are also entitled to a judgment as a matter of law. Indeed, there is no evidence that Plaintiff ever spoke to any defendant after being tased let alone indicated that he did not want to go to the hospital. Thus, Plaintiff has presented no evidence of an unlawful seizure by Defendants Cheatham and Mendoza. And even if Plaintiff had competently indicated he did not want to go to the hospital, Defendant Cheatham and Mendoza would be entitled to qualified immunity. Defendants' research has not revealed any clearly established rule that a paramedic cannot transport someone to the hospital after being tased when pursuant to policy, it is required to have Taser prongs removed at the hospital. *See, infra,* Sec. II at pp. 7-8; *White v. Pauly*, 137 S.Ct. 548 (2017) quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case."). Defendant Mendoza testified that per the Paramedic Standing Medical Orders, if someone is tased, they have to be transported to a hospital. As such, at the very least, Defendant Paramedics Cheatham and Mendoza are entitled to qualified immunity on Count I.

II. **Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Excessive Force Claim (Count II).**

As is true of his seizure claim, Plaintiff's excessive force claim is limited to whether Officer Vidljinovic was reasonable in deploying his Taser once at the scene. Officer Vidljinovic is the only officer alleged to have used excessive force against Plaintiff and to the extent Plaintiff continues to pursue an excessive force claim against the other defendants, that claim fails as a matter of law for lack of personal involvement. *See, supra*, Sec. I at p.3, *Wilson v. Warren County, Ill.,* 830 F.3d at 469; *Gentry*, 65 F.3d at 561. The claim against Officer Vidljinovic also

5

fails because the use of force was reasonable under the circumstances - Officer Vidljinovic tased Plaintiff after he committed an aggravated assault against Officer Guettler by wildly approaching him while swinging his arms. Officer Vidljinovic is also entitled to qualified immunity.

A claim that an officer employed excessive force is evaluated under the Fourth Amendment's objective-reasonableness standard. *Abbott*, 705 F.3d at 724. The reasonableness of the force used depends on the totality of the facts and circumstances known to the officer at the time of the use of force. *Abbott*, 705 F.3d at 724. One of the factors to be considered is whether the individual posed "an immediate threat to the safety of the officers or others[.]" *Cyrus v. Town of Mukowonago,* 624 F.3d 856 (7th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Fourth Amendment "does not require officers to use the least intrusive or even less intrusive alternatives[,]" and must consider that police officers are often forced to make split second judgments. *Plakas v. Drinksi*, 19 F.3d 1143 (7th Cir. 1994). Only two individuals have testified that they witnessed Plaintiff's actions immediately prior to being tased: Officers Vidljinovic and Guettler. Both officers were clear that Plaintiff quickly turned toward Officer Guettler and began swinging his arms at him, leaving Officer Guettler no option but to move and duck out of the way so as to not get hit. Taking the facts as Officer Vidljinovic did on July 22, he responded to a scene where Fire Department personnel had requested assistance and Defendant Alamillo had requested a Taser. Upon arriving, he spoke with Officer Alamillo and was directed to Mr. Lopez. He observed Lopez erratically pacing, clenching his fists and unable to make any intelligible speech. Based on his observations and prior experience, Vidljinovic believed Lopez was under the influence of PCP. Based on past experiences, Officer Vidljinovic knew PCP makes an individual unpredictable and also impervious to pain. When Officer Guettler attempted

6

to communicate with Plaintiff, Officer Vidljinovic witnessed Plaintiff turn toward Guettler, approach him aggressively and wildly swing his arms at Guettler, nearly striking him and causing Guettler to move out of the way of being struck. As a result, Officer Vidljinovic deployed his Taser one time and immobilized Plaintiff.

It cannot be disputed that based on Guettler and Vidljinovic's testimony, they reasonably perceived Plaintiff as a threat to Officer Guettler once he attempted to strike him. Thus, the only question that remains is whether the use of the Taser specifically was reasonable under the circumstances. Generally speaking, the Seventh Circuit has held that the use of a Taser is more than a *de minimis* use of force, but is still non-lethal and does not constitute as much force as an impact weapon such as a beanbag projectile or baton launcher. *Abbott*, 705 F.3d at 726. Several defendant officers testified, unrebutted, that attempting to engage physically with someone on PCP can quickly escalate and cause increased risk of serious injury to both the officers and the individual. Officer Vidljinovic justifiably believed that using the Taser one time was the safest way to subdue Plaintiff and eliminate the threat to himself and Officer Guettler, and that it could not have been achieved by lesser means without serious foreseeable risk of injury to both Plaintiff and the officers. *See, Tom*, 963 F. 2d at 962 (holding that even use of deadly force is justified where lesser means of force were available but officer had fear that use of lesser force would expose herself to danger by exposing her weapon to the suspect's grasp).

Even if this Court were to find that Officer Vidljinovic's use of force constituted a constitutional violation, he is nonetheless entitled to qualified immunity, which insulates government officials from suit unless they violate a clearly established statutory or constitutional right. *Ashcroft v. al-Kidd,* 131 S. Ct. 2074 (2011). To be clearly established, the right must be

sufficiently clear that "every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2078 quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S.Ct. 548 (2017) (quotations omitted). To meet that burden, the plaintiff must identify "'closely analogous cases demonstrating that the conduct is unlawful or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution.'" *Green v. Butler*, 420 F.3d 689, 700 (7th Cir. 2005) quoting *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004). Clearly established law necessitates that it cannot be established at a "high level of generality." *White,* 137 S.Ct. at 552 quoting *Ashcroft*, 563 U.S. at 742. *See also, Canen v. Chapman*, --- F.3d ----, 2017 WL 382329 at *3 (7th Cir. 2017) ("the Supreme Court has stressed that the right at issue must be articulated at a meaningful level of particularity.") Significantly, Defendants were unable to locate a Seventh Circuit case proscribing the single use of a Taser against a subject who threatened the safety of an officer by assaulting him. Moreover, there was no clearly established right in 2011 to be free from a single Taser deployment when visibly under the influence of drugs and attempting to strike a police officer. Plaintiff has not raised a question of fact that survives the qualified immunity analysis, and Officer Vidljinovic is entitled to judgment as a matter of law.

> III. **Defendants Guettler, Valdovinos, Valenzuela, Gonzalez, Alamillo, DeMonica, Lopez, Kearns, Cheatham and Mendoza Are Entitled to Judgment as a Matter of Law on Plaintiff's Failure to Intervene Claim (Count III).**

Failure to intervene, as a derivative claim, requires an underlying constitutional violation under Counts I or Count II of the Fourth Amended Complaint. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there

8

must exist an underlying constitutional violation[.]") Even if the act of tasing Plaintiff amounted to a constitutional violation, all defendants other than Defendant Officer Vidljinovic are only liable as bystanders if Plaintiff can show that 1) they had reason to know that Defendant officers were committing a constitutional violation and 2) they had a realistic opportunity to intervene and prevent the act from occurring. *Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009); *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994). Plaintiff has no evidence of either.

While failure to intervene claims often implicate questions for the jury, if there is no evidence that knowledge of a violation or a reasonable opportunity to intervene existed, there is no question for the jury. *See, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (finding summary judgment was not proper on excessive force and failure to intervene claims where officer knelt on plaintiff for 35-40 seconds in presence of other officers after he had already been restrained, which plaintiff argued caused his death). In *Lewis*, three officers entered the plaintiff's jail cell in response to a believed suicide threat. After entrance, the commanding officer ordered that the inmate be tased and he was immediately. Summary judgment was granted on the failure to intervene claim against the officer who neither ordered the tasing nor fired the Taser. Even though he was in extremely close proximity - in the actual jail cell - at the time of the tasing and heard the order prior to the Taser being used, the Seventh Circuit affirmed summary judgment, finding the third officer did not "have a realistic opportunity to stop" the discharge of the Taser. *Lewis*, 581 F.3d at 472. *See also, Chavez v. Illinois State Police*, 251 F.3d 612, 651-652 (7th Cir. 2001) (affirming summary judgment on failure to intervene claim against officer who reviewed statistics regarding motorist stops in class action discrimination lawsuit, finding the officer unable to intervene where he is not present.);

9

*Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008) (affirming summary judgment on failure to intervene claim where defendant officer was a passenger and the officer driving was accused of driving erratically to intentionally hurt the plaintiffs). Here, none of the defendants had both 1) knowledge that Mr. Lopez was going to be tased and 2) a reasonable opportunity to prevent the tasing. Defendants' testimony describes a fluid scene where personnel was arriving at different times and took on different roles throughout this rapidly developing incident. The tase itself was a decision made and carried out within a matter of seconds, and there was no reasonable opportunity for any defendant on the scene to prevent the tasing.

First, there is no evidence that Defendant Officers DeMonica and Daniel Lopez ever came to the scene, let alone were at the scene when Plaintiff was tased. Both Defendant Officers testified that they have no memory of responding to this scene on July 22, 2011, and both testified that if they had, it would have been the first tasing they had witnessed (which undoubtedly would be a memorable event). Certainly, Plaintiff cannot maintain a failure to intervene claim against officers he has not demonstrated were even physically present for the alleged constitutional violation. *See*, *Chavez*, 251 F.3d at 651-652. Moreover, even if there was a question of fact as to whether Defendants Lopez and DeMonica were present, Plaintiff has established no evidence of any action taken by them or any evidence that they knew a Taser was going to be used and had an opportunity to intervene.

Defendant Paramedics Cheatham and Mendoza arrived before any police officers and testified that they remained by their ambulance, parked approximately one block away, while officers arrived and approached Mr. Lopez. Defendant Paramedic Cheatham testified that she was standing approximately one block away when she heard the Taser go off. There was no

testimony that Defendant Paramedic Cheatham was even aware that the Taser was going to be used prior to its deployment. Similarly, Defendant Paramedic Julio Mendoza testified that he also remained by the ambulance, approximately one block away from the tasing. Mendoza testified he was not watching what transpired while the police interacted with Plaintiff, rather he was speaking with Defendant Cheatham. At the time of the tasing, Mendoza did not even hear the officers yell "Taser," his back was to them, and he only first became aware of the tasing at the time he heard the actual Taser deployed. This testimony is unrebutted and demonstrates that neither Defendant Paramedic was aware a Taser was going to be used until it was being used, were not in close proximity under the circumstances, and had no opportunity to prevent the tasing from occurring.

Defendant Officers Armando Alamillo and Jose Valdovinos were the first police officers to arrive on the scene in response to CFD's request for assistance. Defendant Alamillo never approached Plaintiff because his partner, Valdovinos did. At the time of the tasing, Alamillo testified he was approximately 20-30 feet away in the street, and because he was working the rest of the scene, he did not witness the tasing, but rather heard it. Valdovinos testified that when Plaintiff walked away from him, he decided to let other officers try communicating with Plaintiff and he remained back. Valdovinos did not see the tasing, but rather only heard the officers yell "Taser, Taser, Taser" and at that point, there was no time to prevent the tasing even if he had wanted to. The facts testified to by Alamillo and Valdovinos were unrebutted.

Next to arrive on the scene were defendant Officers Manuel Gonzalez and Antonio Valenzuela. Officer Gonzalez testified that he tried unsuccessfully to communicate with Plaintiff and backed away when he was unable to. Shortly thereafter, Plaintiff was approached by Officers

11

Guettler and Vidljinovic. In the moments before the tasing, Gonzalez was not watching Plaintiff or Officers Guettler and Vidljinovic – he turned around only when he heard the actual tasing. Gonzalez testified that he did not see the Taser pointed at Plaintiff prior to hearing the Taser deployed and did not know Vidljinovic was going to tase Plaintiff. Defendant Valenzuela did not speak to Plaintiff and at no point prior to the tasing was he closer than a half a block from Plaintiff. Defendant Valenzuela testified that he did not know the Taser was going to be used until he heard an officer yell "Taser." The facts testified to by Gonzalez and Valenzuela were unrebutted.

The last beat officers to arrive on the scene were Defendant Officers Guettler and Vidljinovic. Defendant Guettler testified that he was not looking at Plaintiff at the time he heard "Taser" yelled and it was in that moment he first realized Vidljinovic intended to tase Plaintiff. Though Guettler was in a closer vicinity to Vidljinovic than the other defendants, at that point, the Taser was being deployed and similar to *Lewis*, there was no time to react. Finally, Sergeant Kearns testified he arrived on scene at some point while Lopez was pacing in the streets. At the time of the tasing, Sergeant Kearns testified he was not looking at Plaintiff when he was tased, and did not even hear the Taser deployed or any officer say "Taser, Taser, Taser." The facts testified to by Guettler and Sergeant Kearns were unrebutted.

Thus, the unrebutted evidence shows that no defendant was aware Officer Vidljinovic was going to use his Taser until, at the very earliest, when he yelled "Taser" immediately prior to deploying the Taser. At that point, the entire incident was over in a matter of seconds and there was no opportunity for any defendant to intervene or otherwise prevent the incident. Plaintiff has attempted to expand the timeframe in which Defendants could have reacted by questioning why

the Taser was requested. However, as Defendant Officers testified, the Taser was requested as a precaution and an option in a quickly developing situation – no one knew at that point that it would be used. Plaintiff failed to establish any question of fact for the jury. As such, Defendants Guettler, Valdovinos, Valenzuela, Gonzalez, Alamillo, DeMonica, Lopez, Kearns, Cheatham and Mendoza are entitled to a directed verdict on the failure to intervene claim.

IV. **Defendants are also entitled to Judgment as a Matter of Law on Plaintiff's State Law Claims (Counts IV and V).**

a. **Plaintiff has not established any question of fact concerning the claim of assault and battery**.

Assault is a reasonable apprehension of an imminent battery. *Censke v. United States*, 27 F.Supp.3d 920, 932 (N.D. Ill. 2014). More specifically, assault is a "threatening gesture," or non-threatening gesture made threatening by the corresponding words 'that creates a reasonable apprehension of an *imminent* battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (emphasis in original). Reasonable apprehension is "a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." (citing *Parrish by Bowker v. Donahue*, 443 N.E.2d 786, 788 (3d Dist.1982). Similarly, battery consists of an act "intending to cause harmful or offensive contact" with a person, or "an imminent apprehension of such a contact" and that "harmful contact [ ]directly or indirectly results." *Flores v. Santiago,* 986 N.E.2d 1216, 1219 (1st Dist. 2013) quoting *Bakes v. St. Alexius Medical Center,* 955 N.E.2d 78, 85–86 (1st Dist. 2011) (quoting Restatement (Second) of Torts § 13 (1965)). Here, there is simply no evidence that Plaintiff was assaulted or battered that night. Even if there were evidence of assault and battery, the defendants are entitled to immunity as they did not act willfully and wantonly. 745 ILCS 10/2-202.

There is no evidence that all of the defendants were on the scene that early morning, let alone assaulted or battered Plaintiff. It is unrebutted that Officers DeMonica and Lopez were not even on the scene that morning. It is also unrebutted that Sergeant Kearns and Officers Valenzuela and Valdovinos have never spoke to Plaintiff. Officers Gonzalez and Alamillo spoke to Plaintiff, but there is no evidence that those attempts to communicate were threatening, or could reasonably be construed as such. Paramedics Sandra Cheatham and Julio Mendoza never spoke to, or touched, Plaintiff prior to the time that he was tased. However, when the paramedics did speak to him and touch him, it was once he had been tased and as a result, needed medical treatment. Here, the touching was not threatening, harmful or with the intent to be harmful, as the paramedics were ensuring Plaintiff received appropriate medical care. Cheatham and Mendoza are also entitled to immunity under the Illinois EMS Act because their actions with respect to plaintiff were not willful and wanton. 210 ILCS 50/3.150.

While there is evidence that Officer Guettler spoke to Plaintiff and guided him toward an ambulance by placing his hand on his elbow, there is no evidence that Officer Guettler's words or actions were threatening to Plaintiff and further, there is no evidence that Officer Guettler's intent was to harm Plaintiff or engage in unjustified contact. Instead, Plaintiff's only witness, Ms. Guzman, testified that the people on scene were there to help Mr. Lopez and did not see the interaction between Plaintiff and Officer Guettler.

Lastly, while it is unclear whether Officer Vidljinovic's warning of "Taser, Taser, Taser" was solely meant as a warning for officers on scene, or as a warning for Plaintiff to desist his actions as well, the intent in yelling that warning was not to harm Plaintiff. Instead, the intent was to prevent Officer Vidljinovic's partner, Officer Guettler from injury by Plaintiff. Officer

14

Vidljinovic also subsequently tased Plaintiff to prevent him from striking Officer Guettler. As there is no evidence to rebut the fact that Plaintiff committed an aggravated assault of a police officer, Officer Vidljinovic would have been legally justified in tasing Plaintiff in order to prevent an aggravated assault or battery. As such, even if Officer Vidljinovic was found to have battered Plaintiff, he did not do so without legal justification and therefore, he is entitled to immunity. *Wilson v. City of Chicago*, 758 F.3d 875, 880 (7th Cir. 2014) (Officer is entitled to immunity unless Plaintiff can prove the officer acted "without legal justification," or in other words that the battery was willful and wanton). In summation, there is simply no question of fact as to whether Plaintiff was assaulted and battered by any of the defendants on scene that early morning and Defendants are entitled to judgment as a matter of law.

    **b. Plaintiff has not established a question of fact regarding his claim for Intentional Infliction of Emotional Distress.**

Three elements must be met in order to establish an intentional infliction of emotional distress claim: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (1988). Such conduct is not 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. Further, "the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Id*. (citing *see Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (1993). The third prong will not be addressed in this brief, as any evidence of such has not been presented at

15

this point in the trial. Still, there is no evidence that any conduct on behalf of Defendants in this case was extreme and outrageous, or intended to inflict severe emotional distress.

Once again, there is no evidence that all of the defendants were on the scene that early morning, let alone committed extreme and outrageous conduct. It is unrebutted that Officers DeMonica and Lopez were not even on the scene that morning. It is also unrebutted that Sergeant Kearns and Officers Valenzuela and Alamillo have never spoke to Plaintiff. If mere insults are insufficient, then not speaking to Plaintiff is certainly not extreme and outrageous behavior. Officers Gonzalez and Valdovinos spoke to Plaintiff, but there is no evidence that those attempts to communicate were beyond the realm of decency, or could be construed as such. Paramedics Sandra Cheatham and Julio Mendoza never spoke to, or touched, Plaintiff prior to the time that he was tased. However, when the paramedics did speak to him and touch him, it was once he had been tased and as a result, needed medical treatment. Here, their actions were not extreme or outrageous, as the paramedics were merely doing their job by ensuring Plaintiff received appropriate medical care. While there is evidence that Officer Guettler spoke to Plaintiff and attempted to guide him toward an ambulance by placing his hand on his elbow, there is no evidence that Officer Guettler's words or actions were extreme and outrageous. Instead, Plaintiff's only witness, Ms. Guzman testified that the people on scene were there to help Mr. Lopez and did not see the interaction between Plaintiff and Officer Guettler.

Lastly, Officer Vidljinov's use of the Taser was not extreme and outrageous here. Instead, the intent in doing so was to prevent Officer Vidljinovic's partner, Officer Guettler from injury by Plaintiff. In summation, there is simply no question of fact as to whether Plaintiff was

subjected to intentional infliction of emotional distress by any of the defendants on scene that early morning.

## **CONCLUSION**

Wherefore for the foregoing reasons, Defendants respectfully request that this Court grant their motion and enter judgment as a matter of law on all counts of the Fourth Amended Complaint.

Dated: February 16, 2017                                   Respectfully submitted,

James G. Sotos                                             /s/ Laura M. Ranum
Elizabeth A. Ekl                                           LAURA M. RANUM, Attorney No. 6300636
Joseph M. Polick                                           *One of the Attorneys for Defendants*
THE SOTOS LAW FIRM, P.C.
550 E. Devon Ave., Ste. 150
Itasca, IL 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
eekl@jsotoslaw.com

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C.A. § 1746, that I electronically filed a complete copy of the foregoing **Defendants' Rule 50 Motion for Judgment as a Matter of Law** with the Clerk of the Court on Thursday, February 16, 2017, using the CM/ECF system, which will send notification of such filing to the below service list.

*Plaintiff's Counsel*
John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

Franco N. Carone
Carone Law Offices
1559 North Mannheim Road
Suite 2A
Stone Park, Illinois 60665
(708) 856-8311
franco@caronelawoffices.com

*City of Chicago Counsel*
Kelly Bauer
Matthew A. Hurd
Jonathan C. Green
Raoul V. Mowatt
City of Chicago Department of Law
30 N. La Salle Street, Room 900
Chicago, Illinois 60602
kelly.bauer@cityofchicago.org
matthew.hurd@cityofchicago.org
jonthan.green@cityofchicago.org
raoul.mowatt@cityofchicago.org

/s/ Laura M. Ranum
LAURA M. RANUM, Attorney No. 6300636
*One of the Attorneys for Defendants*